2007 OK 22
IN RE: APPLICATION OF THE OKLAHOMA BAR ASSOCIATION TO AMEND THE OKLAHOMA RULES OF PROFESSIONAL CONDUCT AND TO AMEND RULE 1.4 OF THE RULES GOVERNING DISCIPLINARY PROCEEDINGS.
No. SCBD-5266.
Supreme Court of Oklahoma.
April 17, 2007.

ORDER
¶1 Upon application by the Oklahoma Bar Association, the Court approves the amendments to the Oklahoma Rules of Professional Conduct as set forth in Exhibit A filed herewith this Order.
¶2 The Court further approves the amendment of Rule 1.4 of the Rules Governing Disciplinary Proceedings as set forth in Exhibit B filed herewith this Order.
¶3 This order and the amended rules shall be released for official publication and shall be available online from the Oklahoma Bar Association's website, www.okbar.org.
¶4 The current rules shall remain in effect until January 1, 2008. The amendments to the Oklahoma Rules of Professional Conduct and the amendment to Rule 1.4 of the Rules Governing Disciplinary Proceedings shall be effective January 1, 2008.
DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 9th DAY OF APRIL, 2007.
CONCUR: WINCHESTER, C.J., EDMONDSON, V.C.J., LAVENDER, HARGRAVE, OPALA, KAUGER, TAYLOR, COLBERT, JJ.
CONCURS IN PART, DISSENTS IN PART: WATT, J.

PREAMBLE: A LAWYER'S RESPONSIBILITIES
[1] A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice.
[2] As a representative of clients, a lawyer performs various functions. As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system. As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others. As intermediary between clients, a lawyer seeks to reconcile their divergent interests as an advisor and, to a limited extent, as a spokesperson for each client. As an evaluator, a lawyer acts as evaluator by examining a client's legal affairs and reporting about them to the client or to others.
[3] In addition to these representational functions, a lawyer may serve as a third-party neutral, a nonrepresentational role helping the parties to resolve a dispute or other matter. Some of these Rules apply directly to lawyers who are or have served as third-party neutrals. See, e.g., Rules 1.12 and 2.4. In addition, there are Rules that apply to lawyers who are not active in the practice of law or to practicing lawyers even when they are acting in a nonprofessional capacity. For example, a lawyer who commits fraud in the conduct of a business is subject to discipline for engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. See Rule 8.4.
[4] In all professional functions a lawyer should be competent, prompt and diligent. A lawyer should maintain communication with a client concerning the representation. A lawyer should keep in confidence information relating to representation of a client except so far as disclosure is required or permitted by the Rules of Professional Conduct or other law.
[5] A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs. A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.
[6] As a public citizen, a lawyer should seek improvement of the law, access to the legal system, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law and work to strengthen legal education. In addition, a lawyer should further the public's understanding of and confidence in the rule of law and the justice system because legal institutions in a constitutional democracy depend on popular participation and support to maintain their authority. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, . Therefore, all lawyers and should therefore devote professional time or resources and use civic influence in their behalf to ensure equal access to our system of justice for all those who because of economic or social barriers cannot afford or secure adequate legal counsel. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.
[7] Many of a lawyer's professional responsibilities are prescribed in the Rules of Professional Conduct, as well as substantive and procedural law. However, a lawyer is also guided by personal conscience and the approbation of professional peers. A lawyer should strive to attain the highest level of skill, to improve the law and the legal profession and to exemplify the legal profession's ideals of public service.
[8] A lawyer's responsibilities as a representative of clients, an officer of the legal system and a public citizen are usually harmonious. Thus, when an opposing party is well represented, a lawyer can be a zealous advocate on behalf of a client and at the same time assume that justice is being done. So also, a lawyer can be sure that preserving client confidences ordinarily serves the public interest because people are more likely to seek legal advice, and thereby heed their legal obligations, when they know their communications will be private.
[9] In the nature of law practice, however, conflicting responsibilities are encountered. Virtually all difficult ethical problems arise from conflict between a lawyer's responsibilities to clients, to the legal system and to the lawyer's own interest in remaining an upright ethical person while earning a satisfactory living. The Rules of Professional Conduct often prescribe terms for resolving such conflicts. Within the framework of these Rules, however, many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules. These principles include the lawyer's obligation zealously to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system.
[10] The legal profession is largely self-governing. Although other professions also have been granted powers of self-government, the legal profession is unique in this respect because of the close relationship between the profession and the processes of government and law enforcement. This connection is manifested in the fact that ultimate authority over the legal profession is vested largely in the courts.
[11] To the extent that lawyers meet the obligations of their professional calling, the occasion for government regulations is obviated. Self-regulation also helps maintain the legal profession's independence from government domination. An independent legal profession is an important force in preserving government under law, for abuse of legal authority is more readily challenged by a profession whose members are not dependent on government for the right to practice.
[12] The legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar. Every lawyer is responsible for observance of the Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers. Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves.
[13] Lawyers play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship to our legal system. The Rules of Professional Conduct, when properly applied, serve to define that relationship.

SCOPE
[14] The Rules of Professional Conduct are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the law itself. Some of the Rules are imperatives, cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has professional discretion to exercise professional judgment. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other Rules define the nature of relationships between the lawyer and others. The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the term "should." Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules.
[15] The Rules presuppose a larger legal context shaping the lawyer's role. That context includes court rules and statutes relating to matters of licensure, laws defining specific obligations of lawyers and substantive and procedural law in general. The Comments are sometimes used to alert lawyers to their responsibilities under such other law.
[16] Compliance with the Rules, as with all law in an open society, depends primarily upon understanding and voluntary compliance, secondarily upon reinforcement by peer and public opinion and finally, when necessary, upon enforcement through disciplinary proceedings. The Rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The Rules simply provide a framework for the ethical practice of law.
[17] Furthermore, for purposes of determining the lawyer's authority and responsibility, principles of substantive law external to these Rules determine whether a client-lawyer relationship exists. Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so. But there are some duties, such as that of confidentiality under Rule 1.6, that may attach when the lawyer agrees to consider whether a client-lawyer relationship shall be established. See Rule 1.18. Whether a client-lawyer relationship exists for any specific purpose can depend on the circumstances and may be a question of fact.
[18] Under various legal provisions, including constitutional, statutory and common law, the responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships. For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement or whether to appeal from an adverse judgment. Such authority in various respects is generally vested in the attorney general and the state's attorney in state government, and their federal counterparts, and the same may be true of other government law officers. Also, lawyers under the supervision of these officers may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. They also may have authority to represent the "public interest" in circumstances where a private lawyer would not be authorized to do so. These Rules do not abrogate any such authority.
[19] Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process. The Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors and whether there have been previous violations.
[20] Violation of a Rule should not give rise to a cause of action nor should it create presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty. Moreover, these Rules are not intended to govern or affect judicial application of either the attorney-client or work product privilege. Those privileges were developed to promote compliance with law and fairness in litigation. In reliance on the attorney-client privilege, clients are entitled to expect that communications within the scope of the privilege will be protected against compelled disclosure. The attorney-client privilege is that of the client and not of the lawyer. The fact that in exceptional situations the lawyer under the Rules has limited discretion to disclose a client confidence does not vitiate the proposition that, as a general matter, the client has a reasonable expectation that information relating to the client will not be voluntarily disclosed and that disclosure of such information may be judicially compelled only in accordance with recognized exceptions to the attorney-client and work product privileges. The lawyer's exercise of discretion not to disclose information under Rule 1.6 should not be subject to reexamination. Permitting such reexamination would be incompatible with the general policy of promoting compliance with law through assurances that communications will be protected against disclosure.
[21] The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rules. The Preamble and this note on Scope provide general orientation. The Comments, which embody Oklahoma changes, are intended as guides to interpretation, but the text of each Rule is authoritative. The Code Comparison cross-references to the Code of Professional Responsibility as adopted in Oklahoma.
[22] Under the heading Oklahoma Modifications, changes from the ABA Model Rules of Professional Conduct and the related Comments and Code Comparisons are noted.

RULE 1.0 TERMINOLOGY
(a) "Belief" or "Believes" denotes that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances.
(b) "Confirmed in writing," when used in reference to the informed consent of a person, denotes informed consent that is given in writing by the person or a writing that a lawyer promptly transmits to the person confirming an oral informed consent. See paragraph (e) for the definition of "informed consent." If it is not feasible to obtain or transmit the writing at the time the person gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter.
"Consult" or "Consultation" denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question.
(c) "Firm" or "Law firm" denotes a lawyer or lawyers in a private firm law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in the a legal services department of a corporation or other organization or and lawyers employed in a legal services organization. the legal department of a corporation or other organization. See Comment, Rule 1.10.
(d) "Fraud" or "Fraudulent" denotes conduct that is fraudulent under the substantive or procedural law of the applicable jurisdiction and has having a purpose to deceive. and not merely negligent misrepresentation or failure to apprise another of relevant information.
(e) "Informed consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.
(f) "Knowingly," "known," or "knows" denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances.
(g) "Partner" denotes a member of a partnership, and a shareholder in a law firm organized as a professional corporation, or a member of an association authorized to practice law.
(h) "Reasonable" or "reasonably" when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.
(i) "Reasonable belief" or "reasonably believes" when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable.
(j) "Reasonably should know" when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question.
(k) "Screened" denotes the isolation of a lawyer from any participation in a matter through the timely imposition of procedures within a firm that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect under these Rules or other law.
(l) "Substantial" when used in reference to degree or extent denotes a material matter of clear and weighty importance.
(m) "Tribunal" denotes a court, an arbitrator in a binding arbitration proceeding or a legislative body, administrative agency or other body acting in an adjudicative capacity. A legislative body, administrative agency or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter.
(n) "Writing" or "written" denotes a tangible or electronic record of a communication or representation, including handwriting, typewriting, printing, photostating, photography, audio or video recording and e-mail. A "signed" writing includes an electronic sound, symbol or process attached to or logically associated with a writing and executed or adopted by a person with the intent to sign the writing.

Comment Confirmed in Writing
[1] If it is not feasible to obtain or transmit a written confirmation at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter. If a lawyer has obtained a client's informed consent, the lawyer may act in reliance on that consent so long as it is confirmed in writing within a reasonable time thereafter.
Firm
[2] Whether two or more lawyers constitute a firm within paragraph (c) can depend on the specific facts. For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way that suggests that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the Rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the Rule that is involved. A group of lawyers could be regarded as a firm for purposes of the Rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the Rule that information acquired by one lawyer is attributed to another.
[3] With respect to the law department of an organization, including the government, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. There can be uncertainty, however, as to the identity of the client. For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.
[4] Similar questions can also arise with respect to lawyers in legal aid and legal services organizations. Depending upon the structure of the organization, the entire organization or different components of it may constitute a firm or firms for purposes of these Rules.

Fraud
[5] When used in these Rules, the terms "fraud" or "fraudulent" refer to conduct that is characterized as such under the substantive or procedural law of the applicable jurisdiction and has a purpose to deceive. This does not include merely negligent misrepresentation or negligent failure to apprise another of relevant information. For purposes of these Rules, it is not necessary that anyone has suffered damages or relied on the misrepresentation or failure to inform.

Informed Consent
[6] Many of the Rules of Professional Conduct require the lawyer to obtain the informed consent of a client or other person (e.g., a former client or, under certain circumstances, a prospective client) before accepting or continuing representation or pursuing a course of conduct. See, e.g., Rules 1.2(c), 1.6(a) and 1.7(b). The communication necessary to obtain such consent will vary according to the Rule involved and the circumstances giving rise to the need to obtain informed consent. The lawyer must make reasonable efforts to ensure that the client or other person possesses information reasonably adequate to make an informed decision. Ordinarily, this will require communication that includes a disclosure of the facts and circumstances giving rise to the situation, any explanation reasonably necessary to inform the client or other person of the material advantages and disadvantages of the proposed course of conduct and a discussion of the client's or other person's options and alternatives. In some circumstances it may be appropriate for a lawyer to advise a client or other person to seek the advice of other counsel. A lawyer need not inform a client or other person of facts or implications already known to the client or other person; nevertheless, a lawyer who does not personally inform the client or other person assumes the risk that the client or other person is inadequately informed and the consent is invalid. In determining whether the information and explanation provided are reasonably adequate, relevant factors include whether the client or other person is experienced in legal matters generally and in making decisions of the type involved, and whether the client or other person is independently represented by other counsel in giving the consent. Normally, such persons need less information and explanation than others, and generally a client or other person who is independently represented by other counsel in giving the consent should be assumed to have given informed consent.
[7] Obtaining informed consent will usually require an affirmative response by the client or other person. In general, a lawyer may not assume consent from a client's or other person's silence. Consent may be inferred, however, from the conduct of a client or other person who has reasonably adequate information about the matter. A number of Rules require that a person's consent be confirmed in writing. See Rules 1.7(b) and 1.9(a). For a definition of "writing" and "confirmed in writing," see paragraphs (n) and (b). Other Rules require that a client's consent be obtained in a writing signed by the client. See, e.g., Rules 1.8(a) and (g). For a definition of "signed," see paragraph (n).

Screened
[8] This definition applies to situations where screening of a personally disqualified lawyer is permitted to remove imputation of a conflict of interest under Rules 1.11, 1.12 or 1.18.
[9] The purpose of screening is to assure the affected parties that confidential information known by the personally disqualified lawyer remains protected. The personally disqualified lawyer should acknowledge the obligation not to communicate with any of the other lawyers in the firm with respect to the matter. Similarly, other lawyers in the firm who are working on the matter should be informed that the screening is in place and that they may not communicate with the personally disqualified lawyer with respect to the matter. Additional screening measures that are appropriate for the particular matter will depend on the circumstances. To implement, reinforce and remind all affected lawyers of the presence of the screening, it may be appropriate for the firm to undertake such procedures as a written undertaking by the screened lawyer to avoid any communication with other firm personnel and any contact with any firm files or other materials relating to the matter, written notice and instructions to all other firm personnel forbidding any communication with the screened lawyer relating to the matter, denial of access by the screened lawyer to firm files or other materials relating to the matter and periodic reminders of the screen to the screened lawyer and all other firm personnel.
[10] In order to be effective, screening measures must be implemented as soon as practical after a lawyer or law firm knows or reasonably should know that there is a need for screening.

CLIENT-LAWYER RELATIONSHIP RULE 1.1 COMPETENCE
A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

Comment Legal Knowledge and Skill
[1] In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter, and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances, the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances.
[2] A lawyer need not necessarily have special training or prior experience to handle legal problems of a type with which the lawyer is unfamiliar. A newly admitted lawyer can be as competent as a practitioner with long experience. Some important legal skills, such as the analysis of precedent, the evaluation of evidence and legal drafting, are required in all legal problems. Perhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge. A lawyer can provide adequate representation in a wholly novel field through necessary study. Competent representation can also be provided through the association of a lawyer of established competence in the field in question.
[3] In an emergency a lawyer may give advice or assistance in a matter in which the lawyer does not have the skill ordinarily required where referral to or consultation or association with another lawyer would be impractical. Even in an emergency, however, assistance should be limited to that reasonably necessary in the circumstances, for ill considered action under emergency conditions can jeopardize the client's interest.
[4] A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person. See also Rule 6.2.

Thoroughness and Preparation
[5] Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more elaborate extensive treatment than matters of lesser complexity and consequence. An agreement between the lawyer and the client regarding the scope of the representation may limit the matters for which the lawyer is responsible. See Rule 1.2(c).

Maintaining Competence
[6] To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, engage in continuing study and education and comply with all continuing legal education requirements to which the lawyer is subject. If a system of peer review has been established, the lawyer should consider making use of it in appropriate circumstances.

RULE 1.2 SCOPE OF REPRESENTATION AND ALLOCATION OF AUTHORITY BETWEEN CLIENT AND LAWYER
(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, subject to paragraphs (b), (c), and (d) and shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.
(b) The substance of (b) is in modified Comment at [5]. A lawyers representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.
(c)(b) A lawyer may limit the scope objectives of the representation if the limitation is reasonable under the circumstances and the client consents after consultation gives informed consent.
(d)(c) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.
(d) When a lawyer knows that a client expects assistance not permitted by the Rules of Professional Conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

Comment

Scope of Representation.

Allocation of Authority between Client and Lawyer
[1] Paragraph (a) confers upon the client the ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. The decisions specified in paragraph (a), such as whether to settle a civil matter, must also be made by the client. See Rule 1.4(a)(1) for the lawyer's duty to communicate with the client about such decisions. With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client as required by Rule 1.4(a)(2) and may take such action as is impliedly authorized to carry out the representation.
[2] On occasion, however, a lawyer and a client may disagree about the means to be used to accomplish the client's objectives. Clients normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to accomplish their objectives, particularly with respect to technical, legal and tactical matters. Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. Within those limits, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives. At the same time, a A lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. Conversely, lawyers usually defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Because of the varied nature of the matters about which a lawyer and client might disagree and because the actions in question may implicate the interests of a tribunal or other persons, this Rule does not prescribe how such disagreements are to be resolved. Other law, however, may be applicable and should be consulted by the lawyer. The lawyer should also consult with the client and seek a mutually acceptable resolution of the disagreement. If such efforts are unavailing and the lawyer has a fundamental disagreement with the client, the lawyer may withdraw from the representation. See Rule 1.16(b)(4). Conversely, the client may resolve the disagreement by discharging the lawyer. See Rule 1.16(a)(3). A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking. In questions of means, the lawyer should assume responsibility for technical and legal tactical issues, but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Law defining the lawyer's scope of authority in litigation varies among jurisdictions.
[3] At the outset of a representation, the client may authorize the lawyer to take specific action on the client's behalf without further consultation. Absent a material change in circumstances and subject to Rule 1.4, a lawyer may rely on such an advance authorization. The client may, however, revoke such authority at any time.
[4] In a case in which the client appears to be suffering diminished capacity mental disability, the lawyer's duty to abide by the client's decisions is to be guided by reference to Rule 1.14.

Independence From Client's Views or Activities
[5] Legal representation should not be denied to people who are unable to afford legal services, or whose cause is controversial or the subject of popular disapproval. By the same token, representing a lawyer's representation of a client, including representation by appointment, does not constitute approval or an endorsement of the client's political, economic, social or moral views or activities.

Agreements Limiting Scope of Representation Services Limited in Objectives or Means
[6] The objectives or scope of services to be provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. For example, a retainer may be for a specifically defined purpose. Representation provided through a legal aid agency may be subject to limitations on the types of cases the agency handles. When a lawyer has been retained by an insurer to represent an insured, for example, the representation may be limited to matters related to the insurance coverage. A limited representation may be appropriate because the client has limited objectives for the representation. In addition, the terms upon which representation is undertaken may exclude specific objectives or means that might otherwise be used to accomplish the client's objectives. Such limitations may exclude actions that the client thinks are to costly or objectives or means that the lawyer regards as repugnant or imprudent.
[7] Although this Rule affords the lawyer and client substantial latitude to limit the representation, the limitation must be reasonable under the circumstances. If, for example, a client's objective is limited to securing general information about the law the client needs in order to handle a common and typically uncomplicated legal problem, the lawyer and client may agree that the lawyer's services will be limited to a brief telephone consultation. Such a limitation, however, would not be reasonable if the time allotted was not sufficient to yield advice upon which the client could rely. Although an agreement for a limited representation does not exempt a lawyer from the duty to provide competent representation, the limitation is a factor to be considered when determining the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation. See Rule 1.1.
[8] All agreements concerning a lawyer's representation of a client must accord with the Rules of Professional Conduct and other law. See, e.g., Rules 1.1, 1.8 and 5.6.
An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus, the client may not be asked to agree to representation so limited in scope as to violate Rule 1.1, or to surrender the right to terminate the lawyer's services or the right to settle litigation that the lawyer might wish to continue.

Criminal, Fraudulent and Prohibited Transactions
[9] Paragraph (d) prohibits a lawyer from knowingly counseling or assisting a client to commit a crime or fraud. This prohibition, however, does not preclude the A lawyer from giving is required to give an honest opinion about the actual consequences that appear likely to result from a client's conduct. Nor does the fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action. However, a lawyer may not knowingly assist a client in criminal or fraudulent conduct. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.
[10] When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer is required to avoid assisting the client, for example, by drafting or delivering documents that the lawyer knows are fraudulent or by suggesting how the wrongdoing might be concealed. The lawyer is not permitted to reveal the client's wrongdoing, except where permitted by Rule 1.6. However, the lawyer is required to avoid furthering the purpose, for example, by suggesting how it might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposed was s is legally proper but then discovers is criminal or fraudulent. The lawyer must, therefore, withdraw from the representation of the client in the matter. See Rule 1.16(a). In some cases, withdrawal alone might be insufficient. It may be necessary for the lawyer to give notice of the fact of withdrawal and to disaffirm any opinion, document, affirmation or the like. See Rule 4.1.Withdrawal from the representation, therefore, may be required.
[11] Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.
[12] Paragraph (d)(c) applies whether or not the defrauded party is a party to the transaction. Hence, a lawyer must should not participate in a sham transaction; for example, a transaction to effectuate criminal or fraudulent avoidance escape of tax liability. Paragraph (d)(c) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise. The last clause of paragraph (d)(c) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.
[13] If a lawyer comes to know or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or other law or if the lawyer intends to act contrary to the client's instructions, the lawyer must consult with the client regarding the limitations on the lawyer's conduct. See Rule 1.4(a)(5).

RULE 1.3 DILIGENCE
A lawyer shall act with reasonable diligence and promptness in representing a client.

Comment
[1] A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. However, a A lawyer is not bound, however, to press for every advantage that might be realized for a client. For example, a lawyer may have authority to exercise A buyer has professional discretion in determining the means by which a matter should be pursued. See Rule 1.2. The lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect.
[2] A lawyer's workload must should be controlled so that each matter can be handled competently. adequately.
[3] Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.A lawyer's duty to act with reasonable promptness, however, does not preclude the lawyer from agreeing to a reasonable request for a postponement that will not prejudice the lawyer's client.
[4] Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client and the lawyer and the client have not agreed that the lawyer will handle the matter on appeal, the lawyer must consult with the client about but has not been specifically instructed concerning pursuit of an appeal, the lawyer should advise the client of the possibility of appeal before relinquishing responsibility for the matter. See Rule 1.4(a)(2). Whether the lawyer is obligated to prosecute the appeal for the client depends on the scope of representation the lawyer has agreed to provide the client. See Rule 1.2.
[5] To prevent neglect of client matters in the event of a sole practitioner's death or disability, the duty of diligence may require that each sole practitioner prepare a plan, in conformity with applicable rules, that designates another competent lawyer to review client files, notify each client of the lawyer's death or disability, and determine whether there is a need for immediate protective action. Cf. Rule 28 of the American Bar Association Model Rules for Lawyer Disciplinary Enforcement (providing for court appointment of a lawyer to inventory files and take other protective action in absence of a plan providing for another lawyer to protect the interests of the clients of a deceased or disabled lawyer).

RULE 1.4 COMMUNICATION
(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep a the client reasonably informed about the status of the matter; and
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Comment
[1] Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation.

Communicating with Client
[2] If these Rules require that a particular decision about the representation be made by the client, paragraph (a)(1) requires that the lawyer promptly consult with and secure the client's consent prior to taking action unless prior discussions with the client have resolved what action the client wants the lawyer to take. For example, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer. See Rule 1.2(a).
[3] Paragraph (a)(2) requires the lawyer to reasonably consult with the client about the means to be used to accomplish the client's objectives. In some situations  depending on both the importance of the action under consideration and the feasibility of consulting with the client  this duty will require consultation prior to taking action. In other circumstances, such as during a trial when an immediate decision must be made, the exigency of the situation may require the lawyer to act without prior consultation. In such cases the lawyer must nonetheless act reasonably to inform the client of actions the lawyer has taken on the client's behalf. Additionally, paragraph (a)(3) requires that the lawyer keep the client reasonably informed about the status of the matter, such as significant developments affecting the timing or the substance of the representation.
[4] A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. When a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected. Client telephone calls should be promptly returned or acknowledged.

Explaining Matters
[5] The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party and take other reasonable steps that permit the client to make a decision regarding a serious offer from another party. A lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable. See Rule 1.2(a). Even when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter. Adequacy of communication depends in part on the kind of advice or assistance that is involved. For example, in negotiations where when there is time to explain a proposal made in a negotiation, the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might are likely to result in significant expense or to injure or coerce others. On the other hand, a lawyer ordinarily cannot will not be expected to describe trial or negotiation strategy in detail. The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation. In certain circumstances, such as when a lawyer asks a client to consent to a representation affected by a conflict of interest, the client must give informed consent, as defined in Rule 1.0(e).
[6] Ordinarily, the information to be provided is that appropriate for a client who is a comprehending and responsible adult. However, fully informing the client according to this standard may be impracticable, for example, where the client is a child or suffers from diminished capacity. mental disability. See Rule 1.14. When the client is an organization or group, it is often impossible or inappropriate to inform every one of its members about its legal affairs; ordinarily, the lawyer should address communications to the appropriate officials of the organization. See Rule 1.13. Where many routine matters are involved, a system of limited or occasional reporting may be arranged with the client. Practical exigency may also require a lawyer to act for a client without prior consultation.

Withholding Information
[7] In some circumstances, a lawyer may be justified in delaying transmission of information when the client would be likely to react imprudently to an immediate communication. Thus, a lawyer might withhold a psychiatric diagnosis of a client when the examining psychiatrist indicates that disclosure would harm the client. A lawyer may not withhold information to serve the lawyer's own interest or convenience or the interests or convenience of another person. Rules or court orders governing litigation may provide that information supplied to a lawyer may not be disclosed to the client. Rule 3.4(c) directs compliance with such rules or orders.

RULE 1.5 FEES
(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
(b) When the lawyer has not regularly represented the client The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.
(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; whether the client is to be liable for reimbursement of litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of determination.
(d) A lawyer shall not enter into an arrangement for, charge, or collect:
(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of result obtained, other than actions to collect past due alimony or child support, or property settlement in lieu thereof; or
(2) a contingent fee for representing a defendant in a criminal case.
(e) A division of a fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;
(2) the client agrees to the arrangement and the agreement is confirmed in writing; is advised of and does not object to the participation of all of the lawyers involved; and
(3) the total fee is reasonable.

Comment

Reasonableness of Fee and Expenses
[1] Paragraph (a) requires that lawyers charge fees that are reasonable under the circumstances. The factors specified in (1) through (8) are not exclusive. Nor will each factor be relevant in each instance. Paragraph (a) also requires that expenses for which the client will be charged must be reasonable. A lawyer may seek reimbursement for the cost of services performed in-house, such as copying, or for other expenses incurred in-house, such as telephone charges, either by charging a reasonable amount to which the client has agreed in advance or by charging an amount that reasonably reflects the cost incurred by the lawyer.

Basis or Rate of Fee
[2] When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee and the expenses for which the client will be responsible. In a new client-lawyer relationship, however, an understanding as to the fees and expenses must should be promptly established. Generally, it is desirable to furnish the client with at least a simple memorandum or copy of the lawyer's customary fee arrangements that states the general nature of the legal services to be provided, the basis, rate or total amount of the fee and whether and to what extent the client will be responsible for any costs, expenses or disbursements in the course of representation. It is not necessary to recite all the factors that underlie the basis of the fee, but only those that are directly involved in its computation. It is sufficient, for example, to state that the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the terms of the engagement fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth.
[3] Contingent fees, like any other fees, are subject to the reasonableness standard of paragraph (a) of this Rule. In determining whether a particular contingent fee is reasonable, or whether it is reasonable to charge any form of contingent fee, a lawyer must consider the factors that are relevant under the circumstances. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage allowable, or may require a lawyer to offer clients an alternative basis for the fee. Applicable law also may apply to situations other than a contingent fee, for example, government regulations regarding fees in certain tax matters.

Terms of Payment
[4] A lawyer may require advance payment of a fee, but is obliged to return any unearned portion. See Rule 1.16 (d). A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to Rule 1.8 ( i)(j). However, a fee paid in property instead of money may be subject to the requirements of Rule 1.8(a) because such fees often have the essential qualities of a business transaction with the client. special scrutiny because it involves questions concerning both the value of the services and the lawyer's special knowledge of the value of the property.
[5] An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client's best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.

Prohibited Contingent Fees
[6] Paragraph (d) prohibits a A lawyer from charging shall not charge a fee contingent fee in a domestic relations matter when payment is contingent upon the securing of a divorce or upon the amount of alimony or support or property settlement to be obtained. or obtaining custody of a child or children. This provision does not preclude a contract for a contingent fee for legal representation in connection with the recovery of post-judgment balances due under support, alimony or other financial orders because such contracts do not implicate the same policy concerns.
The statement that a lawyer's fee shall be reasonable prohibits only unreasonably high fees, and does not restrict lawyers from charging less than a reasonable fee or no fee at all. Regardless of the amount of the fee charged, Rule 1.1 remains applicable.

Division of Fee
[7] A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Paragraph (e) permits the lawyers to divide a fee on either on the basis of the proportion of services they render or if each lawyer by agreement between the participating lawyers if all assumes responsibility for the representation as a whole. and the client is advised and does not object. In addition, the client must agree to the arrangement and the agreement must be confirmed in writing. Contingent fee agreements must be in writing and signed by the client and must otherwise comply with paragraph (c) of this Rule. It does not require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails financial and ethical responsibility for the representation as if the lawyers were associated in a partnership. the obligations stated in Rule 5.1 for purposes of the matter involved. A lawyer should only refer a matter to a lawyer whom the referring lawyer reasonably believes is competent to handle the matter. See Rule 1.1.
[8] Paragraph (e) does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm.

Disputes Over Fees
[9] If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the bar, the lawyer must comply with the procedure when it is mandatory, and, even when it is voluntary, the lawyer should conscientiously consider submitting to it. Law may prescribe a procedure for determining a lawyer's fee, for example, in representation of an executor or administrator, a class or a person entitled to a reasonable fee as part of the measure of damages. The lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.

RULE 1.6 CONFIDENTIALITY OF INFORMATION
(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, s after consultation, except for the disclosures that are is impliedly authorized in order to carry out the representation or the disclosure is permitted by , and except as stated in paragraphs (b). and (c).
(b) A lawyer may reveal, to the extent the lawyer reasonably believes necessary, information relating to representation of a client to the extent the lawyer reasonably believes necessary:
(1) to prevent reasonably certain death or substantial bodily harm;
(1) to disclose the intention of the client to commit a crime and the information necessary to prevent the crime;
(2) to prevent the client from committing: (i) a crime; or
(ii) a fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services;
(3) (2) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services, the consequences of what the lawyer knows to be a client's criminal or fraudulent act in the commission of which the lawyer's services had been used, provided that the lawyer has first made reasonable efforts to contact the client so that the client can rectify such criminal or fraudulent act, but the lawyer has been unable to do so, or that the lawyer has contacted the client and called upon the client to rectify such criminal or fraudulent act and but the client has refused or has been is unable to do so;
(4) to secure legal advice about the lawyer's compliance with theses Rules;
(5)(3) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or(6)(4) or as otherwise permitted or required to comply with under these Rules, other law or a court order.
(c) A lawyer shall reveal such information when required by law or court order.

Comment
[1] This Rule governs the disclosure by a lawyer of information relating to the representation of a client during the lawyer's representation of the client. See Rule 1.18 for the lawyer's duties with respect to information provided to the lawyer by a prospective client, Rule 1.9(c)(2) for the lawyer's duty to not reveal information relating to the lawyer's prior representation of a former client and Rules 1.8(b) and 1.9(c)(1) for the lawyer's duties with respect to the use of such information to the disadvantage of clients and former clients.
The lawyer is part of a judicial system charged with upholding the law. One of the lawyer's functions is to advise clients so that they avoid any violation of the law in the proper exercise of their rights.
The observance of the ethical obligation of a lawyer to hold inviolate confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance.
Almost without exception, clients come to lawyers in order to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legal and correct. The common law recognizes that the client's confidences must be protected from disclosure. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.
[2] A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal maintain confidentiality of information relating to the representation. See Rule 1.0(e) for the definition of informed consent. This contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Almost without exception, clients come to lawyers in order to determine their rights and what is, in the complex maze of law and regulations deemed to be legal and correct. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.
[3] The principle of client-lawyer confidentiality is given effect by in two related bodies of law: the attorney-client privilege, (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege and work product doctrine apply applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law. See also Scope.
[4] Paragraph (a) prohibits a lawyer from revealing information relating to the representation of a client. This prohibition also applies to disclosures by a lawyer that do not in themselves reveal protected information but could reasonably lead to the discovery of such information by a third person. A lawyer's use of a hypothetical to discuss issues relating to the representation is permissible so long as there is no reasonable likelihood that the listener will be able to ascertain the identity of the client or the situation involved.
[4A] The requirement of maintaining confidentiality of information relating to representation applies to government lawyers who may disagree with the policy goals that their representation is designed to advance.

Authorized Disclosure
[5] Except to the extent that the client's instructions or special circumstances limit the authority, a lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation., except to the extent that the client's instructions or special circumstances limit that authority. In some situations, litigation, for example, a lawyer may be impliedly authorized to admit disclose information by admitting a fact that cannot properly be disputed or to make, or in negotiation by making a disclosure that facilitates a satisfactory conclusion to a matter. Lawyers in a firm may, in the course of the firm's practice, disclose to each other information relating to a client of the firm, unless the client has instructed that particular information be confined to specified lawyers.

Disclosure Adverse to Client
[6] Although the public interest is usually best served by a strict rule requiring lawyers to preserve the confidentiality of information relating to the representation of their clients, the confidentiality rule is subject to limited exceptions. In becoming privy to information about a client, a lawyer may foresee that the client intends serious harm to another person. However, to the extent a lawyer is required or permitted to disclose a client's purposes, the client will be inhibited from revealing facts which would enable the lawyer to counsel against a wrongful course of action. Since lawyers must advise against the commission of deliberately wrongful acts, the public is better protected if full and open communication by the client is encouraged than if it is inhibited. Paragraph (b)(1) recognizes the overriding value of life and physical integrity and permits disclosure reasonably necessary to prevent reasonably certain death or substantial bodily harm. Such harm is reasonably certain to occur if it will be suffered imminently or if there is a present and substantial threat that a person will suffer such harm at a later date if the lawyer fails to take action necessary to eliminate the threat. Thus, a lawyer who knows that a client has accidentally discharged toxic waste into a town's water supply may reveal this information to the authorities if there is a present and substantial risk that a person who drinks the water will contract a life-threatening disease or debilitating disease and the lawyer's disclosure is necessary to eliminate the threat or reduce the number of victims.
Several situations must be distinguished.
First, the lawyer may not counsel or assist a client in conduct that is criminal or fraudulent. See Rule 1.2 (c). Similarly, a lawyer has a duty under Rule 3.3 (a)(4) not to use false evidence. This duty is essentially a special instance of the duty prescribed in Rule 1.2 (c) to avoid assisting a client in criminal or fraudulent conduct.
Second, the lawyer may have been innocently involved in past conduct by the client that was criminal or fraudulent. In such a situation the lawyer has not violated Rule 1.2 (c), because to "counsel or assist" criminal or fraudulent conduct requires knowing that the conduct is of that character. Even if the involvement was innocent, however, the fact remains that the lawyer's professional services were made the instrument of the client's crime or fraud. The lawyer, therefore, has a legitimate interest in being able to rectify the consequences of such conduct, and has the professional right, although not a professional duty, to rectify the situation. Exercising that right may require revealing information relating to the representation. Paragraph (b)(2) gives the lawyer professional discretion to reveal such information to the extent necessary to accomplish rectification, provided that the lawyer first makes reasonable efforts to contact the client but is unable to do so, or if the lawyer is able to contact the client, the lawyer calls upon the client to rectify the criminal or fraudulent act and the client refuses or is unable to do so. However, the exercise of the lawyer's discretion in this regard must be guided by the potential for rectification of the consequences of the client's criminal or fraudulent conduct, and not considerations relating to the lawyer's own personal or professional reputation.
Third, the lawyer may learn that a client intends prospective conduct that is criminal. As stated in paragraph (b)(1), the lawyer has professional discretion to reveal information in order to prevent a crime. The lawyer's exercise of discretion requires consideration of such factors as the nature of the lawyer's relationship with the client and with those who might be injured by the client, the severity and likelihood of harm, whether the harm is physical or financial, the lawyer's own involvement in the transaction and factors that may extenuate the conduct in question. Where practical, the lawyer should seek to persuade the client to take suitable action. Where the conduct is likely to result in imminent death or substantial harm to the person or financial interests of another, doubts should be resolved in favor of disclosure. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to the purpose. A lawyer's decision not to make the disclosures permitted by paragraphs (b)(1) and (b)(2) does not violate this Rule.
Withdrawal. If the lawyer's services will be used by the client in materially furthering the course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in Rule 1.16 (a)(1).
After withdrawal the lawyer is required to refrain from making disclosure of the client's confidences, except as otherwise provided in Rule 1.6. Neither this Rule nor Rule 1.8 (b) nor Rule 1.16 (d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, document, affirmation, or the like.
Where the client is an organization, the lawyer may be in doubt whether contemplated conduct will actually be carried out by the organization. Where necessary to guide conduct in connection with this Rule, the lawyer may make inquiry within the organization as indicated in Rule 1.13 (b).
Paragraph (b)(2) does not apply where a lawyer is employed after a crime or fraud has been committed to represent the client in matters ensuing therefrom.
[7] Paragraph (b)(2) is a limited exception to the rule of confidentiality that permits the lawyer to reveal information to the extent necessary to enable affected persons or appropriate authorities to prevent the client from committing any crime, or a fraud as defined in Rule 1.0(d) that is reasonably certain to result in substantial injury to the financial or property interests of another and in furtherance of which the client has used or is using the lawyer's services. Such a serious abuse of the client-lawyer relationship by the client forfeits the protection of this Rule. The client can, of course, prevent such disclosure by refraining from the wrongful conduct. Although paragraph (b)(2) does not require the lawyer to reveal the client's misconduct, the lawyer may not counsel or assist the client in conduct the lawyer knows is criminal or fraudulent. See Rule 1.2(d). See also Rule 1.16 with respect to the lawyer's obligation or right to withdraw from the representation of the client in such circumstances, and Rule 1.13(c), which permits the lawyer, where the client is an organization, to reveal information relating to the representation in limited circumstances.
[8] Paragraph (b)(3) addresses the situation in which the lawyer does not learn of the client's crime or fraud until after it has been consummated. Although the client no longer has the option of preventing disclosure by refraining from the wrongful conduct, there will be situations in which the loss suffered by the affected person can be prevented, rectified or mitigated. In such situations, the lawyer may disclose information relating to the representation to the extent necessary to enable the affected persons to prevent or mitigate reasonably certain losses or to attempt to recoup their losses. Paragraph (b)(3) does not apply when a person who has committed a crime or fraud thereafter employs a lawyer for representation concerning that offense.
[8A] Before using or disclosing confidential information under paragraph (b)(3), the lawyer should, if practicable, inform the client of the lawyer's ability to use or disclose information as provided in this Rule and the consequences thereof. The exercise of the lawyer's discretion should be guided by the potential for rectification of the consequences of the client's criminal or fraudulent conduct, and not considerations relating to the lawyer's personal interests or professional reputation.
[9] A lawyer's confidentiality obligations do not preclude a lawyer from securing confidential legal advice about the lawyer's personal responsibility to comply with these Rules. In most situations, disclosing information to secure such advice will be impliedly authorized for the lawyer to carry out the representation. Even when the disclosure is not impliedly authorized, paragraph (b)(4) permits such disclosure because of the importance of a lawyer's compliance with the Rules of Professional Conduct.
[10] Dispute Concerning Lawyer's Conduct. Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. If the lawyer is charged with wrongdoing in which the client's conduct is implicated, the rule of confidentiality should not prevent the lawyer from defending against the charge. Such a charge can arise in a civil, criminal, or professional disciplinary or other proceeding and can be based on a wrong allegedly committed by the lawyer against the client or on a wrong alleged by a third person, for example, a person claiming to have been defrauded by the lawyer and client acting together. The lawyer's right to respond arises when an assertion of such complicity has been made. Paragraph (b)(5)(2) does not require the lawyer to await the commencement of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend also, of course, applies, of course, where a proceeding has been commenced. Where practicable and not prejudicial to the lawyer's ability to establish the defense, the lawyer should advise the client of the third party's assertion and request that the client respond appropriately. In any event, disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner which limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective order or other arrangements should be sought by the lawyer to the fullest extent practicable.
[11] A lawyer entitled to a fee is permitted by paragraph (b)(5)(2) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary. As stated above, the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure.
[12] Other law may require that a lawyer disclose information about a client. Whether such a law supersedes Rule 1.6 is a question of law beyond the scope of these Rules. When disclosure of information relating to the representation appears to be required by other law, the lawyer must discuss the matter with the client to the extent required by Rule 1.4. If, however, the other law supersedes this Rule and requires disclosure, paragraph (b)(6) permits the lawyer to make such disclosures as are necessary to comply with the law.
[13] A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent informed consent of the client to do otherwise, the lawyer should assert on behalf of the client all non-frivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (b)(6) permits the lawyer to comply with the court's order.
[14] Paragraph (b) permits disclosure only to the extent the lawyer reasonably believes the disclosure is necessary to accomplish one of the purposes specified. Where practicable, the lawyer should first seek to persuade the client to take suitable action to obviate the need for disclosure. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose. If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.
[15] Paragraph (b) permits but does not require the disclosure of information relating to a client's representation to accomplish the purposes specified in paragraphs (b)(1) through (b)(6). In exercising the discretion conferred by this Rule, the lawyer may consider such factors as the nature of the lawyer's relationship with the client and with those who might be injured by the client, the lawyer's own involvement in the transaction and factors that may extenuate the conduct in question. A lawyer's decision not to disclose as permitted by paragraph (b) does not violate this Rule. Disclosure may be required, however, by other Rules. Some Rules require disclosure only if such disclosure would be permitted by paragraph (b). See Rules 1.2(d), 4.1(b), 8.1 and 8.3. Rule 3.3, on the other hand, requires disclosure in some circumstances regardless of whether such disclosure is permitted by this Rule. See Rule 3.3(c).
Disclosures Otherwise Required or Authorized. The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, Rule 1.6 (a) requires the lawyer to invoke the privilege when it is applicable. The lawyer must comply with the final orders of a court or other tribunal of competent jurisdiction requiring a lawyer to give information about the client.
The Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation. See Rules 2.2, 2.3, 3.3 and 4.1. In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client. Whether another provision of law supersedes Rule 1.6 is a matter of interpretation beyond the scope of these Rules, but a presumption should exist against such a supersession.

Acting Competently to Preserve Confidentiality
[16] A lawyer must act competently to safeguard information relating to the representation of a client against inadvertent or unauthorized disclosure by the lawyer or other persons who are participating in the representation of the client or who are subject to the lawyer's supervision. See Rules 1.1, 5.1, and 5.3.
[17] When transmitting a communication that includes information relating to the representation of a client, the lawyer must take reasonable precautions to prevent the information from coming into the hands of unintended recipients. This duty, however, does not require that the lawyer use special security measures if the method of communication affords a reasonable expectation of privacy. Special circumstances, however, may warrant special precautions. Factors to be considered in determining the reasonableness of the lawyer's expectation of confidentiality include the sensitivity of the information and the extent to which privacy of the communication is protected by law or by a confidentiality agreement. A client may require the lawyer to implement special security measures not required by this Rule or may give informed consent to the use of a means of communication that would otherwise be prohibited by this Rule.

Former Client
[18] The duty of confidentiality continues after the client-lawyer relationship has terminated. See Rule 1.9(c)(2). See Rule 1.9 (c)(1) for the prohibition against using such information to the disadvantage of the former client.

RULE 1.7 CONFLICT OF INTEREST: CURRENT CLIENTS

GENERAL RULE
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: of that client will be directly adverse to another client, unless:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Comment

Loyalty to a Client General Principles
[1] Loyalty is an and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests. For specific Rules regarding certain concurrent conflicts of interest, see Rule 1.8. For former client conflicts of interest, see Rule 1.9. For conflicts of interest involving prospective clients, see Rule 1.18. For definitions of "informed consent" and "confirmed in writing," see Rule 1.0(e) and (b).
[2] Resolution of a conflict of interest problem under this Rule requires the lawyer to: 1) clearly identify the client or clients; 2) determine whether a conflict of interest exists; 3) decide whether the representation may be undertaken despite the existence of a conflict, i.e., whether the conflict is consentable; and 4) if so, consult with the clients affected under paragraph (a) and obtain their informed consent, confirmed in writing. The clients affected under paragraph (a) include both of the clients referred to in paragraph (a)(1) and the one or more clients whose representation might be materially limited under paragraph (a)(2).
[3] An impermissible A conflict of interest may exist before representation is undertaken, in which event the representation must should be declined, unless the lawyer obtains the informed consent of each client under the conditions of paragraph (b). To determine whether a conflict of interest exists, a The lawyer should adopt reasonable procedures appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the persons parties and issues involved. and to determine whether there are actual or potential conflicts of interest. See also Comment to Rule 5.1. Ignorance caused by a failure to institute such procedures will not excuse a lawyer's violation of this Rule. As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment to Rule 1.3 and Scope.
[4] If such a conflict arises after representation has been undertaken, the lawyer ordinarily must should withdraw from the representation, unless the lawyer has obtained the informed consent of the client under the conditions of paragraph (b). See Rule 1.16. Where more than one client is involved, and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined both by the lawyer's ability to comply with duties owed to the former client and by the lawyer's ability to represent adequately the remaining client or clients, given the lawyer's duties to the former client. See Rule 1.9. See also Comments [5] and [29]. Rule 2.2 (c). As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment to Rule 1.3 and Scope.
[5] Unforeseeable developments, such as changes in corporate and other organizational affiliations or the addition or realignment of parties in litigation, might create conflicts in the midst of a representation, as when a company sued by the lawyer on behalf of one client is bought by another client represented by the lawyer in an unrelated matter. Depending on the circumstances, the lawyer may have the option to withdraw from one of the representations in order to avoid the conflict. The lawyer must seek court approval where necessary and take steps to minimize harm to the clients. See Rule 1.16. The lawyer must continue to protect the confidences of the client from whose representation the lawyer has withdrawn. See Rule 1.9(c).

Identifying Conflicts of Interest: Directly Adverse
[6] As a general proposition, Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Paragraph (a) expresses that general rule. Thus, absent consent, a lawyer ordinarily may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are if it is wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client. Similarly, a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit. On the other hand, simultaneous representation in unrelated matters of clients whose interests are only economically generally adverse, such as representation of competing economic enterprises in unrelated litigation, does not ordinarily constitute a conflict of interest and thus may not require consent of the respective clients. Paragraph (a) applies only when the representation of one client would be directly adverse to the other.
[7] Directly adverse conflicts can also arise in transactional matters. For example, if a lawyer is asked to represent the seller of a business in negotiations with a buyer represented by the lawyer, not in the same transaction but in another, unrelated matter, the lawyer could not undertake the representation without the informed consent of each client.

Identifying Conflicts of Interest: Material Limitation
[8] Loyalty to a client is also impaired when Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to a lawyer cannot consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result because of the lawyer's other responsibilities or interests. For example, a lawyer asked to represent several individuals seeking to form a joint venture is likely to be materially limited in the lawyer's ability to recommend or advocate all possible positions that each might take because of the lawyer's duty of loyalty to the others. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does The mere possibility of subsequent harm does not itself preclude the representation. require disclosure and consent. The critical questions are the likelihood that a difference in interests conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.
Lawyer's Interests Responsibilities to Former Clients and Other Third Persons
[9] In addition to conflicts with other current clients, a lawyer's duties of loyalty and independence may be materially limited by responsibilities to former clients under Rule 1.9 or by the lawyer's responsibilities to other persons, such as fiduciary duties arising from a lawyer's service as a trustee, executor or corporate director.

Personal Interest Conflicts
[10] The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. For example, a lawyer's need for income should not lead the lawyer to undertake matters that cannot be handled competently and at a reasonable fee. See Rules 1.1 and 1.5. I if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice. Similarly, when a lawyer has discussions concerning possible employment with an opponent of the lawyer's client, or with a law firm representing the opponent, such discussions could materially limit the lawyer's representation of the client. In addition, A a lawyer may not allow related business interests to affect representation, for example, by referring clients to an enterprise in which the lawyer has an undisclosed financial interest. See Rule 1.8 for specific Rules pertaining to a number of personal interest conflicts, including business transactions with clients. See also Rule 1.10 (personal interest conflicts under Rule 1.7 ordinarily are not imputed to other lawyers in a law firm).
[11] When lawyers representing different clients in the same matter or in substantially related matters are closely related by blood or marriage, or are involved in a sexual relationship as defined by [12] of the Comment to this Rule, there may be a significant risk that client confidences will be revealed and that the lawyer's family will interfere with both loyalty and independent professional judgment. There are other relationships that may similarly interfere with the loyalty or independent professional judgment of the lawyer. As a result, each client is entitled to know of the existence and implications of the relationship between the lawyers before the lawyer agrees to undertake the representation. Thus, a lawyer related to another lawyer, e.g., as parent, child, sibling or spouse, ordinarily may not represent a client in a matter where that lawyer is representing another party, unless each client gives informed consent. The disqualification arising from a close family relationship is personal and ordinarily is not imputed to members of firms with whom the lawyers are associated. See Rule 1.10.
[12] A lawyer is prohibited from engaging in sexual relationships with a client unless the sexual relationship predates the formation of the client-lawyer relationship. See Rule 1.8(j). Sexual relations with a client presents a significant risk of violating Rule 1.7(a)(2) and one or more other Rules of Professional Conduct. See OBA Legal Ethics Op. No. 311 (1998) and ORPC Rules 1.1, 1.8(j), 1.7, 2.1, and 8.4. A lawyer should strictly scrutinize whether sexual relations with a client may result in harm to the client or impair the representation. The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence.
Sexual relations with a client is likely to present a substantial risk of a conflict of interest. Sexual relations may: (1) unfairly exploit the lawyer's fiduciary role; (2) interfere with the lawyer's independent professional judgment; and (3) impair the lawyer's ability to represent the client competently. Client confidences may lose the protection of the attorney/client evidentiary privilege because the privilege extends only to communications made in the context of the client/lawyer relationship. If the client and the lawyer were engaged in a consensual sexual relationship before the client/lawyer relationship commenced, then the lawyer may ordinarily undertake a representation provided it does not otherwise present an impermissible conflict under this Rule.
"Sexual relations" includes, but is not necessarily limited to, sexual intercourse or any touching of the sexual or other intimate parts of a client or causing such client to touch the sexual or other intimate parts of the lawyer for the purpose of arousing or gratifying the sexual desire of either party or to humiliate, harass, degrade, or exploit. "Sexual relationship" means an established course of sexual relations.

Interest of Person Paying for a Lawyer's Service
[13] A lawyer may be paid from a source other than the client, including a co-client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty or independent judgment to the client. See Rule 1.8 (f). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence. So also, when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for separate legal representation of the directors or employees, if the clients consent after consultation and the arrangement ensures the lawyer's professional independence. If acceptance of the payment from any other source presents a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's own interest in accommodating the person paying the lawyer's fee or by the lawyer's responsibilities to a payer who is also a co-client, then the lawyer must comply with the requirements of paragraph (b) before accepting the representation, including determining whether the conflict is consentable and, if so, that the client has adequate information about the material risks of the representation.

Consultation and Consent Prohibited Representations
[14] Ordinarily, A clients may consent to representation notwithstanding a conflict. However, as indicated in paragraph (b)(a)(1) with respect to representation directly adverse to a client, and paragraph (b)(1) with respect to material limitations on representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, some conflicts are nonconsentable, meaning that the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. When the lawyer is representing more than one client is involved, the question of consentability conflict must be resolved as to each client. Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.
[15] Consentability is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their informed consent to representation burdened by a conflict of interest. Thus, under paragraph (b)(1), representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation. See Rule 1.1 (competence) and Rule 1.3 (diligence).
[16] Paragraph (b)(2) describes conflicts that are nonconsentable because the representation is prohibited by applicable law. For example, in some states substantive law provides that the same lawyer may not represent more than one defendant in a capital case, even with the consent of the clients, and under federal criminal statutes certain representations by a former government lawyer are prohibited, despite the informed consent of the former client. In addition, decisional law in some states limits the ability of a governmental client, such as a municipality, to consent to a conflict of interest.
[17] Paragraph (b)(3) describes conflicts that are nonconsentable because of the institutional interest in vigorous development of each client's position when the clients are aligned directly against each other in the same litigation or other proceeding before a tribunal. Whether clients are aligned directly against each other within the meaning of this paragraph requires examination of the context of the proceeding. Although this paragraph does not preclude a lawyer's multiple representation of adverse parties to a mediation (because mediation is not a proceeding before a "tribunal" under Rule 1.0(m)), such representation may be precluded by paragraph (b)(1).

Informed Consent
[18] Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. See Rule 1.0(e) (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved. See Comments [30] and [31] (effect of common representation on confidentiality).
[19] Under some circumstances it may be impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent. In some cases the alternative to common representation can be that each party may have to obtain separate representation with the possibility of incurring additional costs. These costs, along with the benefits of securing separate representation, are factors that may be considered by the affected client in determining whether common representation is in the client's interests.

Consent Confirmed in Writing
[20] Paragraph (b) requires the lawyer to obtain the informed consent of the client, confirmed in writing. Such a writing may consist of a document executed by the client or one that the lawyer promptly records and transmits to the client following an oral consent. See Rule 1.0(b). See also Rule 1.0(n) (writing includes electronic transmission). If it is not feasible to obtain or transmit the writing at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter. See Rule 1.0(b). The requirement of a writing does not supplant the need in most cases for the lawyer to talk with the client, to explain the risks and advantages, if any, of representation burdened with a conflict of interest, as well as reasonably available alternatives, and to afford the client a reasonable opportunity to consider the risks and alternatives and to raise questions and concerns. Rather, the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing.

Revoking Consent
[21] A client who has given consent to a conflict may revoke the consent and, like any other client, may terminate the lawyer's representation at any time. Whether revoking consent to the client's own representation precludes the lawyer from continuing to represent other clients depends on the circumstances, including the nature of the conflict, whether the client revoked consent because of a material change in circumstances, the reasonable expectations of the other client and whether material detriment to the other clients or the lawyer would result.

Consent to Future Conflict
[22] Whether a lawyer may properly request a client to waive conflicts that might arise in the future is subject to the test of paragraph (b). The effectiveness of such waivers is generally determined by the extent to which the client reasonably understands the material risks that the waiver entails. The more comprehensive the explanation of the types of future representations that might arise and the actual and reasonably foreseeable adverse consequences of those representations, the greater the likelihood that the client will have the requisite understanding. Thus, if the client agrees to consent to a particular type of conflict with which the client is already familiar, then the consent ordinarily will be effective with regard to that type of conflict. If the consent is general and open-ended, then the consent ordinarily will be ineffective, because it is not reasonably likely that the client will have understood the material risks involved. On the other hand, if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that a conflict may arise, such consent is more likely to be effective, particularly if, e.g., the client is independently represented by other counsel in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation. In any case, advance consent cannot be effective if the circumstances that materialize in the future are such as would make the conflict nonconsentable under paragraph (b).

Conflicts in Litigation
[23] Paragraph (b)(3)(a) prohibits representation of opposing parties in the same litigation, regardless of the client's consent. On the other hand, Ssimultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraph (a)(2)(b). An impermissible A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one co-defendant. On the other hand, common representation of persons having similar interests in civil litigation is proper if the risk of adverse effect is minimal and the requirements of paragraph (b) are met. Compare Rule 2.2 involving intermediation between clients.
Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consent upon consultation. By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government agency is the opposing party. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.
A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases pending in different trial courts, but it may be improper to do so in cases pending at the same time in an appellate court.
[24] Ordinarily a lawyer may take inconsistent legal positions in different tribunals at different times on behalf of different clients. The mere fact that advocating a legal position on behalf of one client might create precedent adverse to the interests of a client represented by the lawyer in an unrelated matter does not create a conflict of interest. A conflict of interest exists, however, if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case; for example, when a decision favoring one client will create a precedent likely to seriously weaken the position taken on behalf of the other client. Factors relevant in determining whether the clients need to be advised of the risk include: where the cases are pending, whether the issue is substantive or procedural, the temporal relationship between the matters, the significance of the issue to the immediate and long-term interests of the clients involved and the clients' reasonable expectations in retaining the lawyer. If there is significant risk of material limitation, then absent informed consent of the affected clients, the lawyer must refuse one of the representations or withdraw from one or both matters.
[25] When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule. Thus, the lawyer does not typically need to get the consent of such a person before representing a client suing the person in an unrelated matter. Similarly, a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an unrelated matter.

Other Conflict Situations Nonlitigation Conflicts
[26] Conflicts of interest under paragraphs (a)(1) and (a)(2) arise in contexts other than litigation. sometimes may be difficult to assess. For a discussion of directly adverse conflicts in transactional matters, see Comment [7]. Relevant factors in determining whether there is significant potential for material limitation adverse effect include the duration and intimacy of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that disagreements actual conflict will arise and the likely prejudice to the client from the conflict. if it does arise. The question is often one of proximity and degree. See Comment [8].
[27] For example, C conflict questions may also arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may be present arise. In estate administration the identity of the client may be unclear under the law of a particular jurisdiction. Under one view, the client is the fiduciary; under another view the client is the estate or trust, including its beneficiaries. In order to comply with conflict of interest rules, the lawyer should make clear the lawyer's relationship to the parties involved.
[28] Whether a conflict is consentable depends on the circumstances. For example, a lawyer may not represent multiple parties to a negotiation whose interests are fundamentally antagonistic to each other, but common representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them. Thus, a lawyer may seek to establish or adjust a relationship between clients on an amicable and mutually advantageous basis; for example, in helping to organize a business in which two or more clients are entrepreneurs, working out the financial reorganization of an enterprise in which two or more clients have an interest or arranging a property distribution in settlement of an estate. The lawyer seeks to resolve potentially adverse interests by developing the parties' mutual interests. Otherwise, each party might have to obtain separate representation, with the possibility of incurring additional cost, complication or even litigation. Given these and other relevant factors, the clients may prefer that the lawyer act for all of them.

Special Considerations in Common Representation
[29] In considering whether to represent multiple clients in the same matter, a lawyer should be mindful that if the common representation fails because the potentially adverse interests cannot be reconciled, the result can be additional cost, embarrassment and recrimination. Ordinarily, the lawyer will be forced to withdraw from representing all of the clients if the common representation fails. In some situations, the risk of failure is so great that multiple representation is plainly impossible. For example, a lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated. Moreover, because the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained. Generally, if the relationship between the parties has already assumed antagonism, the possibility that the clients' interests can be adequately served by common representation is not very good. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the situation involves creating or terminating a relationship between the parties.
[30] A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege. With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.
[31] As to the duty of confidentiality, continued common representation will almost certainly be inadequate if one client asks the lawyer not to disclose to the other client information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect that client's interests and the right to expect that the lawyer will use that information to that client's benefit. See Rule 1.4. The lawyer should, at the outset of the common representation and as part of the process of obtaining each client's informed consent, advise each client that information will be shared and that the lawyer will have to withdraw if one client decides that some matter material to the representation should be kept from the other. In limited circumstances, it may be appropriate for the lawyer to proceed with the representation when the clients have agreed, after being properly informed, that the lawyer will keep certain information confidential. For example, the lawyer may reasonably conclude that failure to disclose one client's trade secrets to another client will not adversely affect representation involving a joint venture between the clients and agree to keep that information confidential with the informed consent of both clients.
[32] When seeking to establish or adjust a relationship between clients, the lawyer should make clear that the lawyer's role is not that of partisanship normally expected in other circumstances and, thus, that the clients may be required to assume greater responsibility for decisions than when each client is separately represented. Any limitations on the scope of the representation made necessary as a result of the common representation should be fully explained to the clients at the outset of the representation. See Rule 1.2(c).
[33] Subject to the above limitations, each client in the common representation has the right to loyal and diligent representation and the protection of Rule 1.9 concerning the obligations to a former client. The client also has the right to discharge the lawyer as stated in Rule 1.16.

Organizational Clients
[34] A lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary. See Rule 1.13(a). Thus, the lawyer for an organization is not barred from accepting representation adverse to an affiliate in an unrelated matter, unless the circumstances are such that the affiliate should also be considered a client of the lawyer, there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates, or the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's representation of the other client.
[35] A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the two roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer's resignation from the board and the possibility of the corporation's obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer's independence of professional judgment, the lawyer should not serve as a director or should cease to act as the corporation's lawyer when conflicts of interest arise. The lawyer should advise the other members of the board that in some circumstances matters discussed at board meetings while the lawyer is present in the capacity of director might not be protected by the attorney-client privilege and that conflict of interest considerations might require the lawyer's recusal as a director or might require the lawyer and the lawyer's firm to decline representation of the corporation in a matter.

Conflict Charged by an Opposing Party
Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call in question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment. See Scope.

RULE 1.8 CONFLICT OF INTEREST: CURRENT CLIENTS: SPECIFIC RULES PROHIBITED TRANSACTIONS
(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that which can be reasonably understood by the client;
(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on in the transaction; and
(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction. consents in writing thereto.
(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent s after consultation, except as permitted or required by these Rules. 1.6 or Rule 3.3.
(c) A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, for the lawyer or a person related to the lawyer. Nor shall the lawyer prepare on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, related persons include a spouse, child, grandchild, parent, grandparent or other relative. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.
(d) Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.
(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
(1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
(1) the client gives informed consents after consultation;
(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
(3) information relating to representation of a client is protected as required by Rule 1.6.
(g) A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consents after consultation, in a writing signed by the client. The lawyer's including disclosure shall include of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
(h) A lawyer shall not:
(1) make an agreement prospectively limiting the lawyer's liability to a client for the lawyer's personal malpractice; or
(2) settle a claim or potential claim for such liability with an unrepresented client or former client unless that person is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel without first advising that person in writing that independent representation is appropriate in connection therewith.
(i) A lawyer related to another lawyer as parent, child, sibling or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon consent by the client after consultation regarding the relationship.
(i) (j) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
(1) acquire a lien authorized granted by law or contract to secure the lawyer's fee or expenses; and
(2) contract with a client for a reasonable contingent fee in a civil case.
(j) A lawyer shall not have sexual relations with a client unless: (1) a consensual sexual relationship existed between them when the client-lawyer relationship commenced and (2) the relationship does not result in a violation of Rule 1.7(a)(2).
(k) While lawyers are associated in a firm, a prohibition in the foregoing paragraphs (a) through (i) that applies to any one of them shall apply to all of them.

Comment

Business Transactions Between Client and Lawyer
[1] As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. In such transactions a review by independent counsel on behalf of the client is often advisable. Furthermore, a lawyer may not exploit information relating to the representation to the client's disadvantage. For example, a lawyer who has learned that the client is investing in specific real estate may not, without the client's consent, seek to acquire nearby property where doing so would adversely affect the client's plan for investment. Paragraph (a) A lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property or financial transaction with a client, for example, a loan or sales transaction or a lawyer investment on behalf of a client. The requirements of paragraph (a) must be met even when the transaction is not closely related to the subject matter of the representation, as when a lawyer drafting a will for a client learns that the client needs money for unrelated expenses and offers to make a loan to the client. The Rule applies to lawyers engaged in the sale of goods or services related to the practice of law, for example, the sale of title insurance or investment services to existing clients of the lawyer's legal practice. See Rule 5.7. It also applies to lawyers purchasing property from estates they represent. It does not apply to ordinary fee arrangements between client and lawyer, which are governed by Rule 1.5, although its requirements must be met when the lawyer accepts an interest in the client's business or other nonmonetary property as payment of all or part of a fee. In addition, the Rule does not, however, apply to standard commercial transactions between the lawyer and the client for products or and services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions, the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable.
[2] Paragraph (a)(1) requires that the transaction itself be fair to the client and that its essential terms be communicated to the client, in writing, in a manner that can be reasonably understood. Paragraph (a)(2) requires that the client also be advised, in writing, of the desirability of seeking the advice of independent legal counsel. It also requires that the client be given a reasonable opportunity to obtain such advice. Paragraph (a)(3) requires that the lawyer obtain the client's informed consent, in a writing signed by the client, both to the essential terms of the transaction and to the lawyer's role. When necessary, the lawyer should discuss both the material risks of the proposed transaction, including any risk presented by the lawyer's involvement, and the existence of reasonably available alternatives and should explain why the advice of independent legal counsel is desirable. See Rule 1.0(e) (definition of informed consent).
[3] The risk to a client is greatest when the client expects the lawyer to represent the client in the transaction itself or when the lawyer's financial interest otherwise poses a significant risk that the lawyer's representation of the client will be materially limited by the lawyer's financial interest in the transaction. Here the lawyer's role requires that the lawyer must comply, not only with the requirements of paragraph (a), but also with the requirements of Rule 1.7. Under that Rule, the lawyer must disclose the risks associated with the lawyer's dual role as both legal adviser and participant in the transaction, such as the risk that the lawyer will structure the transaction or give legal advice in a way that favors the lawyer's interests at the expense of the client. Moreover, the lawyer must obtain the client's informed consent. In some cases, the lawyer's interest may be such that Rule 1.7 will preclude the lawyer from seeking the client's consent to the transaction.
[4] If the client is independently represented in the transaction, paragraph (a)(2) of this Rule is inapplicable, and the paragraph (a)(1) requirement for full disclosure is satisfied either by a written disclosure by the lawyer involved in the transaction or by the client's independent counsel. The fact that the client was independently represented in the transaction is relevant in determining whether the agreement was fair and reasonable to the client as paragraph (a)(1) further requires.

Use of Information Related to Representation
[5] Use of information relating to the representation to the disadvantage of the client violates the lawyer's duty of loyalty. Paragraph (b) applies when the information is used to benefit either the lawyer or a third person, such as another client or business associate of the lawyer. For example, if a lawyer learns that a client intends to purchase and develop several parcels of land, the lawyer may not use that information to purchase one of the parcels in competition with the client or to recommend that another client make such a purchase. The Rule does not prohibit uses that do not disadvantage the client. For example, a lawyer who learns a government agency's interpretation of trade legislation during the representation of one client may properly use that information to benefit other clients. Paragraph (b) prohibits disadvantageous use of client information unless the client gives informed consent, except as permitted or required by these Rules. See Rules 1.2(d), 1.6, 1.9(c), 3.3, 4.1(b), 8.1 and 8.3.

Gifts to Lawyers
[6] A lawyer may accept a gift from a client, if the transaction meets general standards of fairness. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If a client offers the lawyer a more substantial gift, paragraph (c) does not prohibit the lawyer from accepting it, although such a gift may be voidable by the client under the doctrine of undue influence, which treats client gifts as presumptively fraudulent. In any event, due to concerns about overreaching and imposition on clients, a lawyer may not suggest that a substantial gift be made to the lawyer or for the lawyer's benefit, except where the lawyer is related to the client as set forth in paragraph (c).
[7] If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide. The sole Paragraph (c) recognizes an exception to this Rule is where the client is a relative of the donee. or the gift is not substantial.
[8] This Rule does not prohibit a lawyer from seeking to have the lawyer or a partner or associate of the lawyer named as executor of the client's estate or to another potentially lucrative fiduciary position. Nevertheless, such appointments will be subject to the general conflict of interest provision in Rule 1.7 when there is a significant risk that the lawyer's interest in obtaining the appointment will materially limit the lawyer's independent professional judgment in advising the client concerning the choice of an executor or other fiduciary. In obtaining the client's informed consent to the conflict, the lawyer should advise the client concerning the nature and extent of the lawyer's financial interest in the appointment, as well as the availability of alternative candidates for the position.

Literary Rights
[9] An agreement by which a lawyer acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Paragraph (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer's fee shall consist of a share in ownership in the property, if the arrangement conforms to Rule 1.5 and paragraphs (a) and (i). (j).

Financial Assistance
[10] Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation. These dangers do not warrant a prohibition on a lawyer lending a client court costs and litigation expenses, including the expenses of medical examination and the costs of obtaining and presenting evidence, because these advances are virtually indistinguishable from contingent fees and help ensure access to the courts. Similarly, an exception allowing lawyers representing indigent clients to pay court costs and litigation expenses regardless of whether these funds will be repaid is warranted.

Person Paying for a Lawyer's Services
Rule 1.8 (f) requires disclosure of the fact that the lawyer's services are being paid for by a third party. Such an arrangement must also conform to the requirements of Rule 1.6 concerning confidentiality and Rule 1.7 concerning conflict of interest. Where the client is a class, consent may be obtained on behalf of the class by court-supervised procedure.
[11] Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part. The third person might be a relative or friend, an indemnitor (such as a liability insurance company) or a co-client (such as a corporation sued along with one or more of its employees). Because third-party payers frequently have interests that differ from those of the client, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing, lawyers are prohibited from accepting or continuing such representations unless the lawyer determines that there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client. See also Rule 5.4(c) (prohibiting interference with a lawyer's professional judgment by one who recommends, employs or pays the lawyer to render legal services for another).
[12] Sometimes, it will be sufficient for the lawyer to obtain the client's informed consent regarding the fact of the payment and the identity of the third-party payer. If, however, the fee arrangement creates a conflict of interest for the lawyer, then the lawyer must comply with Rule. 1.7. The lawyer must also conform to the requirements of Rule 1.6 concerning confidentiality. Under Rule 1.7(a), a conflict of interest exists if there is significant risk that the lawyer's representation of the client will be materially limited by the lawyer's own interest in the fee arrangement or by the lawyer's responsibilities to the third-party payer (for example, when the third-party payer is a co-client). Under Rule 1.7(b), the lawyer may accept or continue the representation with the informed consent of each affected client, unless the conflict is nonconsentable under that paragraph. Under Rule 1.7(b), the informed consent must be confirmed in writing.

Aggregate Settlements
[13] Differences in willingness to make or accept an offer of settlement are among the risks of common representation of multiple clients by a single lawyer. Under Rule 1.7, this is one of the risks that should be discussed before undertaking the representation, as part of the process of obtaining the clients' informed consent. In addition, Rule 1.2(a) protects each client's right to have the final say in deciding whether to accept or reject an offer of settlement and in deciding whether to enter a guilty or nolo contendere plea in a criminal case. The rule stated in this paragraph is a corollary of both these Rules and provides that, before any settlement offer or plea bargain is made or accepted on behalf of multiple clients, the lawyer must inform each of them about all the material terms of the settlement, including what the other clients will receive or pay if the settlement or plea offer is accepted. See also Rule 1.0(e) (definition of informed consent). Lawyers representing a class of plaintiffs or defendants, or those proceeding derivatively, may not have a full client-lawyer relationship with each member of the class; nevertheless, such lawyers must comply with applicable rules regulating notification of class members and other procedural requirements designed to ensure adequate protection of the entire class.
Limitation of Liability Limiting Liability and Settling Malpractice Claims
Rule 1.8 (h) is not intended to apply to customary qualification and limitations in legal opinions and memoranda.
[14] Agreements prospectively limiting a lawyer's liability for malpractice are prohibited. This paragraph does not, however, prohibit a lawyer from entering into an agreement with the client to arbitrate legal malpractice claims, provided such agreements are enforceable and the client is fully informed of the scope and effect of the agreement. Nor does this paragraph limit the ability of lawyers to practice in the form of a limited-liability entity, where permitted by law, provided that each lawyer remains personally liable to the client for his or her own conduct and the firm complies with any conditions required by law, such as provisions requiring client notification or maintenance of adequate liability insurance. Nor does it prohibit an agreement in accordance with Rule 1.2 that defines the scope of the representation, although a definition of scope that makes the obligations of representation illusory will amount to an attempt to limit liability.
[15] Agreements settling a claim or a potential claim for malpractice are not prohibited by this Rule. Nevertheless, in view of the danger that a lawyer will take unfair advantage of an unrepresented client or former client, the lawyer must first advise such a person in writing of the appropriateness of independent representation in connection with such a settlement. In addition, the lawyer must give the client or former client a reasonable opportunity to find and consult independent counsel. Family Relationships Between Lawyers. Rule 1.8 (i) applies to related lawyers who are in different firms. Related lawyers in the same firm are governed by Rules 1.7, 1.9, and 1.10.

Acquisition of Acquiring Proprietary Interest in Litigation
[16] Paragraph (i)(j) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. Like paragraph (e), the This general rule, which has its basis in common law champerty and maintenance, and is designed to avoid giving the lawyer too great an interest in the representation. In addition, when the lawyer acquires an ownership interest in the subject of the representation, it will be more difficult for a client to discharge the lawyer if the client so desires. The Rule is subject to specific exceptions developed in decisional law and continued in these Rules., such as the exception for reasonable contingent fees set forth in Rule 1.5, and the exception for certain advances of the costs of litigation set forth in paragraph (e). The exception for certain advances of the costs of litigation is set forth in paragraph (e). In addition, paragraph (i) sets forth exceptions for liens authorized by law to secure the lawyer's fees or expenses and contracts for reasonable contingent fees. The law of each jurisdiction determines which liens are authorized by law. These may include liens granted by statute, liens originating in common law and liens acquired by contract with the client. When a lawyer acquires by contract a security interest in property other than that recovered through the lawyer's efforts in the litigation, such an acquisition is a business or financial transaction with a client and is governed by the requirements of paragraph (a). Contracts for contingent fees in civil cases are governed by Rule 1.5.

Client-Lawyer Sexual Relationships
[17] The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence. The relationship is almost always unequal; thus, a sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role, in violation of the lawyer's basic ethical obligation not to use the trust of the client to the client's disadvantage. In addition, such a relationship presents a significant danger that, because of the lawyer's emotional involvement, the lawyer will be unable to represent the client without impairment of the exercise of independent professional judgment. Moreover, a blurred line between the professional and personal relationships may make it difficult to predict to what extent client confidences will be protected by the attorney-client evidentiary privilege, since client confidences are protected by privilege only when they are imparted in the context of the client-lawyer relationship. Because of the significant danger of harm to client interests and because the client's own emotional involvement renders it unlikely that the client could give adequate informed consent, this Rule prohibits the lawyer from having sexual relations with a client regardless of whether the relationship is consensual and regardless of the absence of prejudice to the client.
[18] Sexual relationships that predate the client-lawyer relationship are not prohibited. Issues relating to the exploitation of the fiduciary relationship and client dependency are diminished when the sexual relationship existed prior to the commencement of the client-lawyer relationship. However, before proceeding with the representation in these circumstances, the lawyer should consider whether the lawyer's ability to represent the client will be materially limited by the relationship. See Rule 1.7(a)(2).
[19] When the client is an organization, paragraph (j) of this Rule prohibits a lawyer for the organization (whether inside counsel or outside counsel) from having a sexual relationship with a constituent of the organization who supervises, directs or regularly consults with that lawyer concerning the organization's legal matters.

Imputation of Prohibitions
[20] Under paragraph (k), a prohibition on conduct by an individual lawyer in paragraphs (a) through (i) also applies to all lawyers associated in a firm with the personally prohibited lawyer. For example, one lawyer in a firm may not enter into a business transaction with a client of another member of the firm without complying with paragraph (a), even if the first lawyer is not personally involved in the representation of the client. The prohibition set forth in paragraph (j) is personal and is not applied to associated lawyers.

Oklahoma Modification
The black letter text of Rule 1.8(a) made explicit that the client be given written notice on all relevant aspects of the transaction. Subsection (c) struck the ABA language that expanded the definition of "related persons". Contrary to the ABA rule, subsection (h) flatly prohibits agreements that prospectively limit a lawyer's liability for malpractice.

RULE 1.9 CONFLICT OF INTEREST: DUTIES TO FORMER CLIENTS
(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing. consents after consultation.
(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter;
unless the former client gives informed consent, confirmed in writing. consents after consultation.
(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as these Rules Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has been generally known; or
(2) reveal information relating to the representation except as these Rules Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

Comment
[1] After termination of a client-lawyer relationship, a lawyer has certain continuing duties with respect to confidentiality and conflicts of interest and thus may not represent another client except in conformity with this Rule. The principles in Rule 1.7 determine whether the interests of the present and former client are adverse. Thus, Under this Rule, for example, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction. Nor could a lawyer who has represented multiple clients in a matter represent one of the clients against the others in the same or a substantially related matter after a dispute arose among the clients in that matter, unless all affected clients give informed consent. See Comment [9]. Current and former government lawyers must comply with this Rule to the extent required by Rule 1.11.
[2] The scope of a "matter" for purposes of this Rule may depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdictions. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.
[3] Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce. Similarly, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent. Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related. In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

Lawyers Moving Between Firms
[4] When lawyers have been associated within a firm but then end their association, the question of whether a lawyer should undertake representation is more complicated. There are several competing considerations. First, the client previously represented by the former firm must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many lawyers to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers. If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.
Reconciliation of these competing principles in the past has been attempted under two rubrics. One approach has been to seek per se rules of disqualification. For example, it has been held that a partner in a law firm is conclusively presumed to have access to all confidences concerning all clients of the firm. Under this analysis, if a lawyer has been a partner in one law firm and then becomes a partner in another law firm, there may be a presumption that all confidences known by the partner in the first firm are known to all partners in the second firm. This presumption might properly be applied to some circumstances, especially where the client has been extensively represented, but may be unrealistic where the client was represented only for limited purposes. Furthermore, such a rigid rule exaggerates the difference between a partner and an associate in modern law firms.
The other rubric formerly used for dealing with disqualification is the appearance of impropriety proscribed in Canon 9 of the ABA Model Code of Professional Responsibility. This rubric has a two fold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" is question-begging. It therefore has to be recognized that the problem of disqualification cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.
[5]Paragraph (b) operates to disqualify the lawyer only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(c)(b). Thus, if a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict. See Rule 1.10(b) for the restrictions on a firm once a lawyer has terminated association with the firm.
[6] Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in Application of paragraph (b) depends on a situation's particular facts, circumstances aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussions of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients. In such an inquiry, the burden of proof should rest upon the firm whose disqualification is sought.
Application of paragraph (b) depends on a situation's particular facts. In such an inquiry, the burden of proof should rest upon the firm whose disqualification is sought.
[7]Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See Rules 1.6 and 1.9.
Adverse Positions. The second aspect of loyalty to a client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by Rule 1.9(a). Thus, if a lawyer left one firm for another, the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters, so long as the conditions of paragraphs (b) and (c) concerning confidentiality have been met.
[8] Paragraph (c) provides that information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information about that client when later representing another client.
[9] The provisions of this Rule are for the protection of former clients and can be waived if the client gives informed consent, which consent must be confirmed in writing under paragraphs (a) and (b). See Rule 1.0(e). With regard to the effectiveness of an advance waiver, see Comment [22] to Rule 1.7. With regard to disqualification of a firm with which a lawyer is or was formerly associated, see Rule 1.10.
Disqualification from subsequent representation is for the protection of former clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer's intended role in behalf of the new client.
With regard to an opposing party's raising a question of conflict of interest, see Comment to Rule 1.7. With regard to disqualification of a firm with which a lawyer is or was formerly associated, see Rule 1.10.

RULE 1.10 IMPUTATION IMPUTED OF CONFLICTS OF INTEREST: DISQUALIFICATION GENERAL RULE
(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8, or 1.9 or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
(b)When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer and not currently represented by the firm, unless:
(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9 (c) that is material to the matter.
(c) A disqualification prescribed by this rule may be waived in writing by the affected client under the conditions stated in Rule 1.7.
(d) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11.
(e) Where a lawyer is prohibited from engaging in certain transactions under Rule 1.8, paragraph (k) of that Rule, and not this Rule, determines whether that prohibition also applies to other lawyers associated in a firm with the personally prohibited lawyer.

Comment

Definition of "Firm"
[1] For purposes of the Rules of Professional Conduct, the term "firm" denotes includes lawyers in a partnership, professional corporation, sole proprietorship, or other association authorized to practice law; or lawyers employed private firm, and lawyers in the legal department of a corporation or other organization, or in a legal services organization or the legal department of a corporation or other organization. See Rule 1.0(c). Whether two or more lawyers constitute a firm within this definition can depend on the specific facts. See Rule 1.0, Comments [2]-[4]. For example, two practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for the purposes of the Rules. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as in the fact that they have mutual access to information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the Rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to the other.
With respect to the law department of an organization, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct. However, there can be uncertainty as to the identity of the client. For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed. A similar question can arise concerning an unincorporated association and its local affiliates.
Similar questions can also arise with respect to lawyers in legal aid. Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units. As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved, and on the specific facts of the situation.
Different provisions are thus made for movement of a lawyer from one private firm to another and for movement of a lawyer between a private firm and the government. The government is entitled to protection of its client confidences and, therefore to the protection provided in Rules 1.6, 1.9 and 1.11. However, if the more extensive disqualification in Rule 1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome. The government deals with all private citizens and organizations and, thus, has a much wider circle of adverse legal interests than does any private law firm. In these circumstances, the government's recruitment of lawyers would be seriously impaired if Rule 1.10 were applied to the government. On balance, therefore, the government is better served in the long run by the protections stated in Rule 1.11.

Principles of Imputed Disqualification
[2] The rule of imputed disqualification stated in paragraph (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated. Paragraph (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another, the situation is governed by Rules 1.9(b) and 1.10(b).
[3] The rule in paragraph (a) does not prohibit representation where neither questions of client loyalty nor protection of confidential information are presented. Where one lawyer in a firm could not effectively represent a given client because of strong political beliefs, for example, but that lawyer will do no work on the case and the personal beliefs of the lawyer will not materially limit the representation by others in the firm, the firm should not be disqualified. On the other hand, if an opposing party in a case were owned by a lawyer in the law firm, and others in the firm would be materially limited in pursuing the matter because of loyalty to that lawyer, the personal disqualification of the lawyer would be imputed to all others in the firm.
[4] The rule in paragraph (a) also does not prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a nonlawyer, such as a paralegal or legal secretary. Nor does paragraph (a) prohibit representation if the lawyer is prohibited from acting because of events before the person became a lawyer, for example, work that the person did while a law student. Such persons, however, ordinarily must be screened from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyers and the firm have a legal duty to protect. See Rules 1.0(k) and 5.3.
[5] Rule 1.10(b) operates to permit a law firm, under certain circumstances, to represent a person with interests directly adverse to those of a client represented by a lawyer who formerly was associated with the firm. The Rule applies regardless of when the formerly associated lawyer represented the client. However, the law firm may not represent a person with interests adverse to those of a present client of the firm, which would violate Rule 1.7. Moreover, the firm may not represent the person where the matter is the same or substantially related to that in which the formerly associated lawyer represented the client and any other lawyer currently in the firm has material information protected by Rules 1.6 and 1.9(c).
[6] Rule 1.10(c) removes imputation with the informed consent of the affected client or former client under the conditions stated in Rule 1.7. The conditions stated in Rule 1.7 require the lawyer to determine that the representation is not prohibited by Rule 1.7(b) and that each affected client or former client has given informed consent to the representation, confirmed in writing. In some cases, the risk may be so severe that the conflict may not be cured by client consent. For a discussion of the effectiveness of client waivers of conflicts that might arise in the future, see Rule 1.7, Comment [22]. For a definition of informed consent, see Rule 1.0(e).
[7] Where a lawyer has joined a private firm after having represented the government, imputation the situation is governed by Rule 1.11 (b)(a) and (c)(b), not this Rule. Under Rule 1.11(d), where a lawyer represents the government after having served private clients in private practice, nongovernmental employment or in another government agency, former-client conflicts are not imputed to government associated with the individually disqualified lawyer., the situation is governed by Rule 1.11 (c)(1). The individual lawyer involved is bound by the Rules generally, including Rules 1.6, 1.7 and 1.9.
[8]  removed to 1.8(e)

RULE 1.11 SPECIAL CONFLICTS OF INTEREST FOR FORMER AND CURRENT GOVERNMENT OFFICERS AND EMPLOYEES SUCCESSIVE GOVERNMENT AND PRIVATE EMPLOYMENT
(a) Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government:
(1) is subject to Rule 1.9(c); and
(2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation.
(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
(b) When a lawyer is disqualified from representation under paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
(1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule.
(c)(b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. As used in this Rule, the term "confidential government information" means information that has been obtained under the governmental authority and which, at the time this Rule applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom.
(d)(c) Except as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee shall not:
(1) is subject to Rules 1.7 and 1.9; and
(2) shall not:
(i)(1) participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent, confirmed in writing; under applicable law no one is, or by lawful delegation may be, authorized to act in the lawyer's stead in the matter; or
(ii)(2) negotiate for private employment with any person who is involved as a party or as lawyer attorney for a party in a matter in which the lawyer is participating personally and substantially, except that a lawyer serving as a law clerk to a judge, other adjudicative officer or arbitrator may negotiate for private employment as permitted by Rule 1.12 (b) and subject to the conditions stated in Rule 1.12 (b).
(e)(d) As used in this Rule, the term "matter" includes:
(1) any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties; and
(2) any other matter covered by the conflict of interest rules of the appropriate government agency.
(e) As used in this Rule, the term "confidential government information" means information which has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public.

Comment
This Rule prevents a lawyer from exploiting public office for the advantage of a private client. It is a counterpart of Rule 1.10 (b), which applies to lawyers moving from one firm to another.
[1] A lawyer who has served or is currently serving as a public officer or employee is personally representing a government agency, whether employed or specially retained by the government, is subject to the Rules of Professional Conduct, including the prohibition against concurrent conflicts of representing adverse interests stated in Rule 1.7. and the protections afforded former clients in Rule 1.9. In addition, such a lawyer may be is subject to Rule 1.11 and to statutes and government regulations regarding conflict of interest. Such statutes and regulations may circumscribe the extent to which the government agency may give consent under this Rule. See Rule 1.0(e) for the definition of informed consent.
[2] Paragraphs (a)(1), (a)(2) and (d)(1) restate the obligations of an individual lawyer who has served or is currently serving as an officer or employee of the government toward a former government or private client. Rule 1.10 is not applicable to the conflicts of interest addressed by this Rule. Rather, paragraph (b) sets forth a special imputation rule for former government lawyers that provides for screening and notice. Because of the special problems raised by imputation within a government agency, paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers.
[3] Paragraphs (a)(2) and (d)(2) apply regardless of whether a lawyer is adverse to a former client and are thus designed not only to protect the former client, but also to prevent a lawyer from exploiting public office for the advantage of another client. For example, a lawyer who has pursued a claim on behalf of the government may not pursue the same claim on behalf of a later private client after the lawyer has left government service, except when authorized to do so by the government agency under paragraph (a). Similarly, a lawyer who has pursued a claim on behalf of a private client may not pursue the claim on behalf of the government, except when authorized to do so by paragraph (d). As with paragraphs (a)(1) and (d)(1), Rule 1.10 is not applicable to the conflicts of interest addressed by these paragraphs.
[4] This Rule represents a balancing of interests. On the one hand, where the successive clients are a government public agency and another a private client, public or private, the risk exists that power or discretion vested in that agency public authority might be used for the special benefit of the other a private client. A lawyer should not be in a position where benefit to the other a private client might affect performance of the lawyer's professional functions on behalf of the government. public authority. Also, unfair advantage could accrue to the other private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service. On the other hand, However, the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards. Thus a former government lawyer is disqualified only from particular matters in which the lawyer has participated personally and substantially. The provisions for screening and waiver in paragraph (b) are necessary to prevent the disqualification rule from imposing too severe a deterrent against entering public service. The limitation of disqualification in paragraphs (a)(2) and (d)(2) to matters involving a specific party or parties, rather than extending disqualification to all substantive issues on which the lawyer worked, serves a similar function.
[5] When a lawyer has been employed by the client is an agency of one government agency and then moves to a second government agency, it may be appropriate to treat that second that agency should be treated as another a private client for purposes of this Rule if the lawyer thereafter represents an agency of another government, as when a lawyer represents is employed by a city and subsequently is employed by a federal agency. However, because the conflict of interest is governed by paragraph (d), the latter agency is not required to screen the lawyer as paragraph (b) requires a law firm to do. The question of whether two government agencies should be regarded as the same or different clients for conflict of interest purposes is beyond the scope of these Rules. See Rule 1.13 Comment [9].
[6]Paragraphs (a)(1) and (b) and (c) contemplate a screening arrangement. See Rule 1.0(k)(requirements for screening procedures). These paragraphs do not prohibit a lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation They prohibit directly relating the lawyer's attorney's compensation to the fee in the matter in which the lawyer is disqualified.
[7] Notice, including a description of the screened lawyer's prior representation and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.
Paragraph (a)(2) does not require that a lawyer give notice to the government agency at a time when premature disclosure would injure the client; a requirement for premature disclosure might preclude engagement of the lawyer. Such notice is, however, required to be given as soon as practicable in order that the government agency will have a reasonable opportunity to ascertain that the lawyer is complying with Rule 1.11 and to take appropriate action if it believes the lawyer is not complying.
[8] Paragraph (c)(b) operates only when the lawyer in question has knowledge of the information, which Rule means actual knowledge; it does not operate with respect to information that merely could be imputed to the lawyer.
[9] Paragraphs (a) and (d)(c) do not prohibit a lawyer from jointly representing a private party and a government agency when doing so is permitted by Rule 1.7 and is not otherwise prohibited by law.
Paragraph (c) does not disqualify other lawyers in the agency with which the lawyer in question has become associated.
[10] For purposes of paragraph (e) of this Rule, a "matter" may continue in another form. In determining whether two particular matters are the same, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed.

RULE 1.12 FORMER JUDGE, OR ARBITRATOR, MEDIATOR OR OTHER THIRD-PARTY NEUTRAL
(a) Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, or law clerk to such a person, or as a mediator or other third-party neutral, unless all parties to the proceeding give informed consent, confirmed in writing. unless all parties to the proceeding consent after consultation.
(b) A lawyer shall not negotiate for employment with any person who is involved as a party or as lawyer attorney for a party in a matter in which the lawyer is participating personally and substantially as a judge or other adjudicative officer, or as an arbitrator, mediator or other third-party neutral. A lawyer serving as a law clerk to a judge or other adjudicative officer or arbitrator may negotiate for employment with a party or lawyer attorney involved in a matter in which the clerk is participating personally and substantially, but only after the lawyer has notified prior notice to the judge, or other adjudicative officer or arbitrator., and opposing counsel.
(c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
(1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the parties and any the appropriate tribunal to enable them it to ascertain compliance with the provisions of this rule.
(d) An arbitrator selected as a partisan of a party in a multimember arbitration panel is not prohibited from subsequently representing that party.

Comment
[1] This Rule generally parallels Rule 1.11. The term "personally and substantially" signifies that a judge who was a member of a multimember court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate. So also the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits. Compare the Comment to Rule 1.11. The term "adjudicative officer" includes such officials as judges pro tempore, referees, special masters, hearing officers and other parajudicial officers, and also lawyers who serve as part-time judges. Compliance Canons A(2), B(2) and C of the Model Code of Judicial Conduct provides that a part-time judge, judge pro tempore or retired judge recalled to active service, may not "act as a lawyer in any proceeding in which he served as a judge or in any other proceeding related thereto." Although phrased differently from this Rule, those Rules correspond in meaning.
[2] Like former judges, lawyers who have served as arbitrators, mediators or other third-party neutrals may be asked to represent a client in a matter in which the lawyer participated personally and substantially. This Rule forbids such representation unless all of the parties to the proceedings give their informed consent, confirmed in writing. See Rule 1.0(e) and (b). Other law or codes of ethics governing third-party neutrals may impose more stringent standards of personal or imputed disqualification. See Rule 2.4.
[3] Although lawyers who serve as third-party neutrals do not have information concerning the parties that is protected under Rule 1.6, they typically owe the parties an obligation of confidentiality under law or codes of ethics governing third-party neutrals. Thus, paragraph (c) provides that conflicts of the personally disqualified lawyer will be imputed to other lawyers in a law firm unless the conditions of this paragraph are met.
[4] Requirements for screening procedures are stated in Rule 1.0(k). Paragraph (c)(1) does not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified.
[5] Notice, including a description of the screened lawyer's prior representation and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.

RULE 1.13 ORGANIZATION AS CLIENT
(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.
(b) If a lawyer for an organization knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law that which reasonably might be imputed to the organization, and that is likely to result in substantial injury to the organization, then the lawyer shall proceed as is reasonably necessary in the best interest of the organization. Unless the lawyer reasonably believes that it is not necessary in the best interests of the organization to do so, the lawyer shall ( 3) refer ring the matter to higher authority in the organization, including, if warranted by the circumstances, seriousness of the matter, referral to the highest authority that can act on in behalf of the organization as determined by applicable law. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters and any other relevant considerations. Any measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization. Such measures may include among others:
(1) asking reconsideration of the matter;
(2) advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and
(c) Except as provided in paragraph (d), if:
(1)(c) If, despite the lawyer's efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon or fails to address in a timely and appropriate manner an action, or a refusal to act, that is clearly a violation of law, and
(2) the lawyer reasonably believes that the violation is reasonably certain is likely to result in substantial injury to the organization, the lawyer may resign in accordance with Rule 1.16.
then the lawyer may reveal information relating to the representation whether or not Rule 1.6 permits such disclosure, but only if and to the extent the lawyer reasonably believes necessary to prevent substantial injury to the organization.
(d) Paragraph (c) shall not apply with respect to information relating to a lawyer's representation of an organization to investigate an alleged violation of law, or to defend the organization or an officer, employee or other constituent associated with the organization against a claim arising out of an alleged violation of law.
(e) A lawyer who reasonably believes that he or she has been discharged because of the lawyer's actions taken pursuant to paragraphs (b) or (c), or who withdraws under circumstances that require or permit the lawyer to take action under either of those paragraphs, shall proceed as the lawyer reasonably believes necessary to assure that the organization's highest authority is informed of the lawyer's discharge or withdrawal.
(f)(d) In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know it is apparent that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.
(g)(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

Comment

The Entity as the Client
[1] An organizational client is a legal entity, but it cannot act except through its officers, directors, employees, shareholders and other constituents. Officers, directors, employees and shareholders are the constituents of the corporate organizational client. The duties defined in this Comment apply equally to unincorporated associations. "Other constituents" as used in this Comment means the positions equivalent to officers, directors, employees and shareholders held by persons acting for organizational clients that are not corporations.
[2] When one of the constituents of an organizational client communicates with the organization's lawyer in that person's organizational capacity, the communication is protected by Rule 1.6. Thus, by way of example, if an organizational client requests its lawyer to investigate allegations of wrongdoing, interviews made in the course of that investigation between the lawyer and the client's employees or other constituents are covered by Rule 1.6. This does not mean, however, that constituents of an organizational client are the clients of the lawyer. The lawyer may not disclose to such constituents information relating to the representation except for disclosures explicitly or impliedly authorized by the organizational client in order to carry out the representation or as otherwise permitted by Rule 1.6.
[3] When constituents of the organization make decisions for it, the decisions ordinarily must be accepted by the lawyer even if their utility or prudence is doubtful. Decisions concerning policy and operations, including ones entailing serious risk, are not as such in the lawyer's province. Paragraph (b) makes clear, however that when the lawyer knows that the organization is likely to be substantially injured by the action of an officer or other constituent that violates a legal obligation to the organization or is in violation of law that might be imputed to the organization, the lawyer must proceed as is reasonably necessary in the best interest of the organization. As defined in Rule 1.0(f), knowledge can be inferred from circumstances, and a lawyer cannot ignore the obvious. However, different considerations arise when the lawyer knows that the organization may be substantially injured by action of a constituent that is in violation of law. In such a circumstance, it may be reasonably necessary for the lawyer to ask the constituent to reconsider the matter. If that fails, or if the matter is of sufficient seriousness and importance to the organization, it may be reasonably necessary for the lawyer to take steps to have the matter reviewed by a higher authority in the organization. Clear justification should exist for seeking review over the head of the constituent normally responsible for it. The stated policy of the organization may define circumstances and prescribe channels for such review, and a lawyer should encourage the formulation of such a policy. Even in the absence of organization policy, however, the lawyer may have an obligation to refer a matter to higher authority, depending on the seriousness of the matter and whether the constituent in question has apparent motives to act at variance with the organization's interest. Review by the chief executive officer or by the board of directors may be required when the matter is of importance commensurate with their authority. At some point it may be useful or essential to obtain an independent legal opinion.
In an extreme case, it may be reasonably necessary for the lawyer to refer the matter to the organization's highest authority. Ordinarily, that is the board of directors or similar governing body. However, applicable law may prescribe that under certain conditions highest authority reposes elsewhere; for example, in the independent directors of a corporation.
[4] In determining how to proceed under paragraph (b), the lawyer should give due consideration to the seriousness of the violation and its consequences, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters, and any other relevant considerations. Ordinarily, referral to a higher authority would be necessary. In some circumstances, however, it may be appropriate for the lawyer to ask the constituent to reconsider the matter or advise that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization. For example, if the circumstances involve a constituent's innocent misunderstanding of law and subsequent acceptance of the lawyer's advice, the lawyer may reasonably conclude that the best interest of the organization does not require that the matter be referred to higher authority. If a constituent persists in conduct contrary to the lawyer's advice, it will be necessary for the lawyer to take steps to have the matter reviewed by a higher authority in the organization. If the matter is of sufficient seriousness and importance or urgency to the organization, referral to higher authority in the organization may be necessary even if the lawyer has not communicated with the constituent. Any measures taken should, to the extent practicable, minimize the risk of revealing information relating to the representation to persons outside the organization. Even in circumstances where a lawyer is not obligated by Rule 1.13 to proceed, a lawyer may bring to the attention of an organizational client, including its highest authority, matters that the lawyer reasonably believes to be of sufficient importance to warrant doing so in the best interest of the organization.
[5] Paragraph (b) also makes clear that when it is reasonably necessary to enable the organization to address the matter in a timely and appropriate manner, the lawyer must refer the matter to higher authority, including, if warranted by the circumstances, the highest authority that can act on behalf of the organization under applicable law. The organization's highest authority to whom a matter may be referred ordinarily will be the board of directors or similar governing body. However, applicable law may prescribe that under certain conditions the highest authority reposes elsewhere, for example, in the independent directors of a corporation.

Relation to Other Rules
[6] The authority and responsibility provided in this Rule paragraph (b) are concurrent with the authority and responsibility provided in other Rules. In particular, this Rule does not limit or expand the lawyer's responsibility under Rules 1.6, 1.8, and 1.16, 3.3 or 4.1. Paragraph (c) of this Rule supplements Rule 1.6(b) by providing an additional basis upon which the lawyer may reveal information relating to the representation, but does not modify, restrict, or limit the provisions of Rule 1.6(b)(1)-(6). Under paragraph (c) the lawyer may reveal such information only when the organization's highest authority insists upon or fails to address threatened or ongoing action that is clearly a violation of law, and then only to the extent the lawyer reasonably believes necessary to prevent reasonably certain substantial injury to the organization. It is not necessary that the lawyer's services be used in furtherance of the violation, but it is required that the matter be related to the lawyer's representation of the organization. If the lawyer's services are being used by an organization to further a crime or fraud by the organization, Rules 1.6(b)(2) and 1.6(b)(3) may permit the lawyer to disclose confidential information. In such circumstances 1.2 (d)(c) may also can be applicable, in which event, withdrawal from the representation under 1.16(a)(1) may be required.
[7] Paragraph (d) makes clear that the authority of a lawyer to disclose information relating to a representation in circumstances described in paragraph (c) does not apply with respect to information relating to a lawyer's engagement by an organization to investigate an alleged violation of law or to defend the organization or an officer, employee or other person associated with the organization against a claim arising out of an alleged violation of law. This is necessary in order to enable organizational clients to enjoy the full benefits of legal counsel in conducting an investigation or defending against a claim.
[8] A lawyer who reasonably believes that he or she has been discharged because of the lawyer's actions taken pursuant to paragraph (b) or (c), or who withdraws in circumstances that require or permit the lawyer to take action under either of these paragraphs, must proceed as the lawyer reasonably believes necessary to assure that the organization's highest authority is informed of the lawyer's discharge or withdrawal.

Government Agency
[9] The duty defined in this Rule applies to governmental organizations. However, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful official act is prevented or rectified, for public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. Therefore, d Defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context and is a matter beyond the scope of these Rules. See Scope [18]. Although in some circumstances the client may be a specific agency, it may also be a branch of government, such as the executive branch, or is generally the government as a whole. For example, if the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the relevant branch of the government as a whole may be the client for purpose of this Rule. Moreover, in a matter involving the conduct of government officials, a government lawyer may have authority under applicable law to question such conduct more extensively than that of a lawyer for a private organization in similar circumstances. Thus, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful act is prevented or rectified, for the public business is involved. In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. This Rule does not limit that authority. See note on Scope.

Clarifying the Lawyer's Role
[10] There are times when the organization's interest may be or become adverse to those of one or more of its constituents. In such circumstances the lawyer should advise any constituent, whose interest the lawyer finds adverse to that of the organization of the conflict or potential conflict of interest, that the lawyer cannot represent such constituent, and that such person may wish to obtain independent representation. Care must be taken to assure that the individual understands that, when there is such adversity of interest, the lawyer for the organization cannot provide legal representation for that constituent individual, and that discussions between the lawyer for the organization and the individual may not be privileged.
[11] Whether such a warning should be given by the lawyer for the organization to any constituent individual may turn on the facts of each case.

Dual Representation
[12] Paragraph (g)(e) recognizes that a lawyer for an organization may also represent a principal office or major shareholder.

Derivative Actions
[13] Under generally prevailing law, the shareholders or members of a corporation may bring suit to compel the directors to perform their legal obligations in the supervision of the organization. Members of unincorporated associations have essentially the same right. Such an action may be brought nominally by the organization, but usually is, in fact, a legal controversy over management of the organization.
[14] The question can arise whether counsel for the organization may defend such an action. The proposition that the organization is the lawyer's client does not alone resolve the issue. Most derivative actions are a normal incident of an organization's affairs, to be defended by the organization's lawyer like any other suit. However, if the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, Rule 1.7 governs who should represent the directors and the organization.

RULE 1.14 CLIENT WITH DIMINISHED CAPACITY UNDER A DISABILITY
(a) When a client's capacity ability to make adequately considered decisions in connection with a the representation is diminished impaired, whether because of minority, mental impairment disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.
(b) When the lawyer reasonably believes that the client has diminished capacity, is at risk of substantial physical, financial or other harm unless action is taken and cannot adequately act in the client's own interest, the lawyer may take reasonably necessary protective action, including consulting with individuals or entities that have the ability to take action to protect the client and, in appropriate cases, seeking the appointment of a guardian ad litem, conservator or guardian.
(b) A lawyer may seek the appointment of a guardian or take other protective action with respect to a client only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest.
(c) Information relating to the representation of a client with diminished capacity is protected by Rule 1.6. When taking protective action pursuant to paragraph (b), the lawyer is impliedly authorized under Rule 1.6(a) to reveal information about the client, but only to the extent reasonably necessary to protect the client's interests.

Comment
[1] The normal client-lawyer relationship is based on the assumption that the client, when properly advised and assisted, is capable of making decisions about important matters. When the client is a minor or suffers from a diminished mental capacity disorder or disability, however, maintaining the ordinary client-lawyer relationship may not be possible in all respects. In particular, a n severely incapacitated person may have no power to make legally binding decisions. Nevertheless, a client with diminished capacity lacking legal competence often has the ability to understand, deliberate upon, and reach conclusions about matters affecting the client's own well-being. Furthermore, to an increasing extent the law recognizes intermediate degrees of competence. For example, children as young as five or six years of age, and certainly those of ten or twelve, are regarded as having opinions that are entitled to weight in legal proceedings concerning their custody. So also, it is recognized that some persons of advanced age can be quite capable of handling routine financial matters while needing special legal protection concerning major transactions.
[2] The fact that a client suffers a disability does not diminish the lawyer's obligation to treat the client with attention and respect. Even if the person has a no guardian or legal representative, the lawyer often must act as de facto guardian. Even if the person does have a legal representative, the lawyer should as far as possible accord the represented person the status of client, particularly in maintaining communication.
[3] The client may wish to have family members or other persons participate in discussions with the lawyer. When necessary to assist in the representation, the presence of such persons generally does not affect the applicability of the attorney-client evidentiary privilege. Nevertheless, the lawyer must keep the client's interests foremost and, except for protective action authorized under paragraph (b), must to look to the client, and not family members, to make decisions on the client's behalf.
[4] If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client. In matters involving a minor, whether the lawyer should look to the parents as natural guardians may depend on the type of proceeding or matter in which the lawyer is representing the minor. If a legal representative has not been appointed, the lawyer should see to such an appointment where it would serve the client's best interests. Thus, if a disabled client has substantial property that should be sold for the client's benefit, effective completion of the transaction ordinarily requires appointment of a legal representative. In many circumstances, however, appointment of a legal representative may be expensive or traumatic for the client. Evaluation of these considerations is a matter of professional judgment on the lawyer's part. If the lawyer represents the guardian as distinct from the ward, and is aware that the guardian is acting adversely to the ward's interest, the lawyer may have an obligation to prevent or rectify the guardian's misconduct. See Rule 1.2(d)(c).

Taking Protective Action
[5] If a lawyer reasonably believes that a client is at risk of substantial physical, financial or other harm unless action is taken, and that a normal client-lawyer relationship cannot be maintained as provided in paragraph (a) because the client lacks sufficient capacity to communicate or to make adequately considered decisions in connection with the representation, then paragraph (b) permits the lawyer to take protective measures deemed necessary. Such measures could include: consulting with family members, using a reconsideration period to permit clarification or improvement of circumstances, using voluntary surrogate decisionmaking tools such as durable powers of attorney or consulting with support groups, professional services, adult-protective agencies or other individuals or entities that have the ability to protect the client. In taking any protective action, the lawyer should be guided by such factors as the wishes and values of the client to the extent known, the client's best interests and the goals of intruding into the client's decisionmaking autonomy to the least extent feasible, maximizing client capacities and respecting the client's family and social connections.
[6] In determining the extent of the client's diminished capacity, the lawyer should consider and balance such factors as: the client's ability to articulate reasoning leading to a decision, variability of state of mind and ability to appreciate consequences of a decision; the substantive fairness of a decision; and the consistency of a decision with the known long-term commitments and values of the client. In appropriate circumstances, the lawyer may seek guidance from an appropriate diagnostician.
[7] If a legal representative has not been appointed, the lawyer should consider whether appointment of a guardian ad litem, conservator or guardian is necessary to protect the client's interests. Thus, if a client with diminished capacity has substantial property that should be sold for the client's benefit, effective completion of the transaction may require appointment of a legal representative. In addition, rules of procedure in litigation sometimes provide that minors or persons with diminished capacity must be represented by a guardian or next friend if they do not have a general guardian. In many circumstances, however, appointment of a legal representative may be more expensive or traumatic for the client than circumstances in fact require. Evaluation of such circumstances is a matter entrusted to the professional judgment of the lawyer. In considering alternatives, however, the lawyer should be aware of any law that requires the lawyer to advocate the least restrictive action on behalf of the client.

Disclosure of the Client's Condition
[8] Rules of procedure in litigation generally provide that minors or persons suffering mental disability shall be represented by a guardian or next friend if they do not have a general guardian. However, d Disclosure of the client's diminished capacity could disability can adversely affect the client's interests. For example, raising the question of disability could, in some circumstances, lead to proceedings for involuntary commitment. Information relating to the representation is protected by Rule 1.6. Therefore, unless authorized to do so, the lawyer may not disclose such information. When taking protective action pursuant to paragraph (b), the lawyer is impliedly authorized to make the necessary disclosures, even when the client directs the lawyer to the contrary. Nevertheless, given the risks of disclosure, paragraph (c) limits what the lawyer may disclose in consulting with other individuals or entities or seeking the appointment of a legal representative. At the very least, the lawyer should determine whether it is likely that the person or entity consulted with will act adversely to the client's interests before discussing matters related to the client. The lawyer's position in such cases is an unavoidably difficult one. The lawyer may seek guidance from an appropriate diagnostician.

Emergency Legal Assistance
[9] In an emergency where the health, safety or a financial interest of a person with seriously diminished capacity is threatened with imminent and irreparable harm, a lawyer may take legal action on behalf of such a person even though the person is unable to establish a client-lawyer relationship or to make or express considered judgments about the matter, when the person or another acting in good faith on that person's behalf has consulted with the lawyer. Even in such an emergency, however, the lawyer should not act unless the lawyer reasonably believes that the person has no other lawyer, agent or other representative available. The lawyer should take legal action on behalf of the person only to the extent reasonably necessary to maintain the status quo or otherwise avoid imminent and irreparable harm. A lawyer who undertakes to represent a person in such an exigent situation has the same duties under these Rules as the lawyer would with respect to a client.
[10] A lawyer who acts on behalf of a person with seriously diminished capacity in an emergency should keep the confidences of the person as if dealing with a client, disclosing them only to the extent necessary to accomplish the intended protective action. The lawyer should disclose to any tribunal involved and to any other counsel involved the nature of his or her relationship with the person. The lawyer should take steps to regularize the relationship or implement other protective solutions as soon as possible. Normally, a lawyer would not seek compensation for such emergency actions taken.

RULE 1.15 SAFEKEEPING PROPERTY
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account but only in an amount necessary for that purpose.
(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.
(d)(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
(e)(c) When in connection with the course of representation a lawyer is a representation, a lawyer possesses in possession of funds or other property in which both the lawyer and another person claim interests, the funds or other property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved, and the undisputed portion of the funds shall be promptly distributed.
(f)(c) Where money funds or other items of property has been entrusted to any attorney a lawyer have been impressed with for a specific purpose, as to their use, he must apply it to that purpose they shall retain that specific character unless otherwise authorized by a client or third person or prohibited by law. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise comint into the hands of a lawyer and upon which the lawyer has a valid lien for his services. Where funds are impressed with a specific purpose, a lawyer may not subject them to a counterclaim, set off for fees, or subject them to a lien.
(f) All members of the Oklahoma Bar Association who are required to maintain a trust account under this Rule may create and maintain interest bearing or non-interest bearing demand trust account(s). Except as stated in paragraph (h) above (g) below, any interest earned by the funds in an interest bearing account belongs to the client, shall be distributed according to the client's instructions and shall not be used by the lawyer for any purpose without the express consent of the client. Non-client funds reasonably sufficient to pay bank charges may be deposited in the interest bearing or non-interest bearing trust accounts.
(g)(e) All members of the Bar who are required under the Oklahoma Rules of Professional Conduct, Rule 1.15,to maintain a trust account for the deposit of clients' funds entrusted to said attorneylawyer, shall do so and furnish evidence thereof as hereinafter provided. The Executive Director of the Oklahoma Bar Association shall annually mail a card to each lawyer requesting the name of the bank or banks in which the lawyer carries any trust account, the name under which the account is carried and the account number. Provision will be made on the card for a response by lawyers who do not maintain a trust account and the reason for not maintaining said account. Lawyers shall have thirty days from the receipt of said inquiry to respond. Information received by the Association as a result of such this inquiry shall remain confidential unless a grievance is filed against a lawyer which, in the opinion of the Professional Responsibility Commission, may warrant disciplinary action in regard to the handling of said trust account subject to except as provided by the Rules Governing Disciplinary Proceedings. Failure of any lawyer to respond giving the information requested by the Oklahoma Bar Association, Oklahoma Bar Foundation or the Office of the General Counsel of the Oklahoma Bar Association will be grounds for appropriate discipline.
(h)(d) Beginning July 1, 2004, a A lawyer or law firm that holds funds of clients or third parties in connection with a representation shall create and maintain an interest-bearing demand trust account and shall deposit therein all such funds to the extent permitted by applicable banking laws, that are nominal in amount or to be held for a short period of time in compliance with the following provisions:
(1) the account may be established with any bank or savings and loan association authorized by federal or state law to do business in Oklahoma and insured by the Federal Deposit Insurance Corporation;
(2) the rate of interest payable on the account shall not be less than the rate paid by the depository institution to regular, non-lawyer depositors. Higher rates offered by the institution to customers whose deposits exceed certain time or quantity minimums, such as those offered in the form of certificates of deposit, may be obtained by a lawyer or law firm so long as there is no impairment of the right to withdraw or transfer principal immediately (except as accounts generally may be subject to statutory notification requirements), even though interest may be sacrificed thereby;
(3) the depository institution shall be directed:
(i) to remit interest or dividends, as the case may be, on the average monthly balance in the account, at least quarterly, to the Oklahoma Bar Foundation, Inc. ("Foundation"); and
(ii) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or the law firm for whom the remittance is sent, the account number, the period of time covered by the statement, the rate of interest applied and the average daily balance of the account;
(4) the lawyer or law firm shall not deposit funds belonging to the lawyer or law firm in the account, except that funds necessary to comply with the depository institution's minimum balance requirements for the maintenance of the account or funds needed to pay applicable fees and service charges may be deposited therein;
(5) in determining whether to use the interest-bearing account herein specified, the lawyer shall consider whether the funds to be invested could be utilized to provide a positive net return to the client, taking into consideration the following factors:
(i) the amount of interest that the funds would earn during the period they are expected to be deposited;
(ii) the cost of establishing and administering the account, including the cost of the lawyer's services and the cost of preparing any tax reports required for interest accruing to a client's benefit; and
(iii) the capability of financial institutions to calculate and pay interest to individual clients;
(6) in the event that any client asserts a claim against a lawyer based upon such lawyer's determination to place client advances in the account because such balance is nominal in amount or to be held for a short period of time, the Foundation shall, upon written request by such lawyer, review such claim and either:
(i) approve such claim (if such balances are found not to be nominal in amount or short in duration) and remit directly to the claimant any sum of interest remitted to the Foundation on account of such funds; or
(ii) reject such a claim (if such balances are found to be nominal in amount or short in duration) and advise the claimant in writing of the grounds therefor. In the event of any subsequent litigation involving such a claim, the Foundation shall interplead any such sum of interest and shall assume the defense of the action;
(7) The requirements of subparagraph (h)(d) shall not apply if:
(i) it is not feasible for the lawyer or law firm to establish an interest-bearing trust account for reasons beyond the control of the lawyer or law firm, such as the unavailability of a financial institution which offers such an account in the community where the principal office of the lawyer or law firm is situated, or
() those financial institutions which offer such an account in the community where the principal office of the lawyer or law firm is situated impose fees and service charges that routinely exceed the interest generated by the account; and
(8) Information necessary to determine compliance or justifiable reason for noncompliance with the requirements of subparagraph (h)(d) shall be included in the annual statement or response required by Rule 1.4(a) of the Rules Governing Disciplinary Proceedings (5 O.S. 2001, Ch. 1, App. 1-A). If it appears that a lawyer or law firm has not complied where it is feasible to do so, the matter may be referred to the office of the General Counsel of the Oklahoma Bar Association for appropriate investigation and proceedings.
(i) When a lawyer receives funds subject to this rule that are not required to be deposited in an interest bearing account payable to the Oklahoma Bar Foundation pursuant to (h), the lawyer may create and maintain either an interest bearing or a noninterest bearing account, provided that any interest earned by the funds belongs to the client, shall be distributed according to the client's instructions, and shall not be used by the lawyer for any purpose without the client's express consent.
(j) Beginning [January 1, 2008] and in addition to the requirements previously set forth in this Rule, lawyers trust accounts shall be maintained only in financial institutions approved by the Office of the General Counsel. The Office shall establish rules governing approval and termination of approved status for financial institutions, and shall annually publish a list of approved financial institutions.
(k) A financial institution may be approved as a depository for lawyer trust accounts if it files with the Office of the General Counsel an agreement, a Trust Account Overdraft Reporting Agreement (TAORA) form provided by the Office, to report to the Office in the event any properly payable instrument is presented against a lawyer trust account containing insufficient funds, irrespective of whether or not the instrument is honored. No trust account shall be maintained in any financial institution which does not agree to make such reports. Any such agreement shall apply to all branches of the financial institution and shall not be cancelled except upon thirty (30) days notice in writing to the Office.
(l) The Trust Account Overdraft Reporting Agreement shall provide that all reports made by the financial institution shall be in the following format:
(1) In the case of a dishonored instrument, the report shall be identical to the overdraft notice customarily forwarded to the depositor, and should include a copy of the dishonored instrument, if such a copy is normally provided to depositors.
(2) In the case of instruments that are presented against insufficient funds but which instruments are honored, the report shall identify the financial institution, the lawyer or law firm, the account number, the date of presentation for payment and the date paid, as well as the amount of overdraft created thereby.
(3) Such reports shall be made simultaneously with, and within the time provided by law for notice of dishonor, if any. If an instrument presented against insufficient funds is honored, then the report shall be made within five (5) banking days of the date of presentation for payment against insufficient funds.
(m) Every lawyer practicing or admitted to practice in this jurisdiction shall be deemed to have consented to the reporting and production requirements mandated by this rule.
(n) Nothing herein shall preclude a financial institution from charging a particular lawyer or law firm for the reasonable cost of producing the reports and records required by this rule.
(o) Definitions
"Financial Institution"  includes banks, savings and loan associations, savings banks and any other business or person which accepts for deposit funds held in trust by lawyers.
"Properly payable"  refers to an instrument which, if presented in the normal course of business, is in a form requiring payment under the laws of this jurisdiction.
"Notice of dishonor"  refers to the notice, which a financial institution is required to give, under the laws of this jurisdiction, upon presentation of an instrument, which the institution dishonors.

Comment
[1] A lawyer should hold property of others with the care required of a professional fiduciary. Securities should be kept in a safe deposit box, except when some other form of safekeeping is warranted by special circumstances. All property that which is the property of clients or third persons, including prospective clients, must should be kept separate from the lawyer's business and personal property and, if monies, in one or more trust accounts. Separate trust accounts may be warranted when administering estate monies or acting in similar fiduciary capacities. A lawyer should maintain on a current basis books and records in accordance with generally accepted accounting practice and comply with any recordkeeping rules established by law or court order.
[2] While normally it is impermissible to commingle the lawyer's own funds with client funds, paragraph (b) provides that it is permissible when necessary to pay bank service charges on that account. Accurate records must be kept regarding which part of the funds are the lawyer's.
[3] Lawyers often receive funds from third parties from which the lawyer's fee will be paid. The lawyer is not required to remit to the client funds that the lawyer reasonably believes represent fees owed. If there is risk that the client may divert the funds without paying the fee, the lawyer is not required to remit the portion from which the fee is to be paid. However, a lawyer may not hold funds to coerce a client into accepting the lawyer's contention. The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly distributed.
[4] Paragraph (e) also recognizes that third parties may have lawful claims against specific funds or other property in a lawyer's custody, such as a client's creditor who has a lien on funds recovered in a personal injury action. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client. In such cases, when the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved. A lawyer should not unilaterally assume to arbitrate a dispute between a client and the third party, but, when there are substantial grounds for dispute as to the person entitled to the funds, the lawyer may file an action to have a court resolve the dispute.
Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client, and accordingly may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party.
[4A] With respect to paragraph (f)(c), where the lawyer receives funds or other property for the execution of some purpose specifically pointed out, the lawyer is not, as in the case of a simple trust, a passive depository. The lawyer is required to use the funds or other property to carry out the expressed intentions of the client or other depositor. This commonly involves funds or other property being entrusted to a lawyer specifically for payment to a third party on behalf of the client or other depositor. Examples include funds entrusted to the lawyer specifically for the payment of client's taxes, or for the payment of litigation expenses, or to be tendered as an offer of settlement in a pending dispute, or to be tendered as a down payment on a contract to purchase property. If the lawyer is unable to carry out the stated intentions of the client or other depositor, the funds or other property must be returned to the depositor unless otherwise instructed or unless the law provides otherwise. The lawyer is not free to unilaterally change the purpose of the funds or other property which may not be applied for the lawyers own purposes or for any other purpose.
[5] The obligations of a lawyer under this Rule are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves only as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction and is not governed by this Rule.
[6] A "client's security fund" provides a means through the collective efforts of the bar to reimburse persons who have lost money or property as a result of dishonest conduct of a lawyer. Where such a fund has been established, a lawyer should participate.

RULE 1.16 DECLINING OR TERMINATING REPRESENTATION
(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
(1) the representation will result in violation of the Rules of Professional Conduct or other law;
(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
(3)(5) the lawyer is discharged.
(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:
(1) withdrawal can be accomplished without material adverse effect on the interests of the client; or if
(2)(3) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;
(3)(4) the client has used the lawyer's services to perpetrate a crime or fraud;
(4)(1) the a client insists upon taking action pursuing an objective that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement; imprudent to the extent that it is likely to impair the client-lawyer relationship or the lawyer's ability to represent the client.
(5)(2) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
(6)(3) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
(7)(4) other good cause for withdrawal exists.
(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expenses that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Comment
[1] A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion. Ordinarily, a representation in a matter is completed when the agreed-upon assistance has been concluded. See Rules 1.2(c) and 6.5. See also Rule 1.3, Comment [4].

Mandatory Withdrawal
[2] A lawyer ordinarily must decline or withdraw from representation if the client demands that the lawyer engage in conduct that is illegal or violates the Rules of Professional Conduct or other law. The lawyer is not obliged to decline or withdraw simply because the client suggests such a course of conduct; a client may make such a suggestion in the hope that a lawyer will not be constrained by a professional obligation.
[3] When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. See also Rule 6.2. Similarly, court approval or notice to the court is often required by applicable law before a lawyer withdraws from pending litigation. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The court may request wish an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient. Lawyers should be mindful of their obligations to both clients and the court under Rules 1.6 and 3.3.

Discharge
[4] A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services. Where future dispute about the withdrawal may be anticipated, it may be advisable to prepare a written statement reciting the circumstances.
[5] Whether a client can discharge appointed counsel may depend on applicable law. A client seeking to do so should be given a full explanation of the consequences. These consequences may include a decision by the appointing authority that appointment of successor counsel is unjustified, thus requiring self representation by the client. to represent himself.
[6] If the client has severely diminished capacity is mentally incompetent, the client may lack the legal capacity to discharge the lawyer, and in any event the discharge may be seriously adverse to the client's interests. The lawyer should make special effort to help the client consider the consequences and may take reasonably necessary protective action as provided in , in an extreme case, may initiate proceedings for a conservatorship or similar protection of the client. See Rule 1.14.

Optional Withdrawal
[7] A lawyer may withdraw from representation in some circumstances. The lawyer has the option to withdraw if it can be accomplished without material adverse effect on the client's interests. Withdrawal is also justified required if the client persists in a course of action that the lawyer reasonably believes is criminal or fraudulent, for a lawyer is not required to be associated with such conduct even if the lawyer does not further it. Withdrawal is also permitted required if the lawyer's services were misused in the past even if that would materially prejudice the client.
The lawyer also may withdraw where the client insists on taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement. imprudent objective.
[8] A lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs or an agreement limiting the objectives of the representation.

Assisting the Client Upon Withdrawal
[9] Even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client. The lawyer may retain papers as security for a fee only to the extent permitted by law. See Rule 1.15. Whether or not a lawyer for an organization may under certain unusual circumstances have a legal obligation to the organization after withdrawing or being discharged by the organization's highest authority is beyond the scope of these Rules.

RULE 1.17 SALE OF LAW PRACTICE
A lawyer or a law firm (or the authorized representative of a lawyer or a law firm) may sell or purchase a law practice, or an area of practice, including good will, who ceases to engage in the private practice of law in Oklahoma may sell the law practice of such a lawyer to a lawyer or law firm, and a lawyer or law firm may purchase that law practice, if the following conditions are satisfied:
(a) The seller ceases to engage in the private practice of law, or in the area of practice that has been sold, in the geographic area in Oklahoma in which the practice has been conducted; and
(b)(a) The entire practice, or the entire area of practice, is sold to one or more lawyers or law firms in its entirety, except that
(1) the representation of any client who does not affirmatively consent as provided in paragraph (c) shall not be transferred;
(2) matters shall not be transferred to a purchaser unless the seller has a reasonable basis to believe that the purchaser has the requisite knowledge and skill to handle such matters, or reasonable assurances are obtained that such purchaser will either acquire such knowledge and skill or associate with another lawyer having such competence;
(3) matters shall not be transferred to a purchaser who would not be permitted to assume such representation by reason of restrictions contained in Rules 1.7 through 1.102 or other Rules; and
(4) where matters in litigation are involved, any necessary judicial approvals of the transfer of representation must be obtained.
(c)(b) The seller or the seller's representative shall give written notice to each client whose representation is proposed to be transferred, stating:
(1) a sale of the entire practice, or the entire area of practice, is proposed; The lawyer is ceasing to engage in the private practice of law in Oklahoma:
(2)(3) a transfer of the representation of such client to a specified lawyer, lawyers, or law firm is contemplated proposed; the practice of the lawyer is to be sold;
(3)(4) the client has the right to take possession of the file and retain other counsel;
(4)(5) the existence and status of any funds or property held for the client, including but not limited to retainers or other prepayments; and
(5) the fact that the client's consent to the transfer of the client's files will be presumed if the client does not take any action or does not otherwise object within ninety (90) days of the date of the notice.
(6) the terms of any proposed change in the fee arrangement within the limits authorized by paragraph (e).
(c) The signed written consent of each client whose representation is proposed to be transferred to a purchaser must be obtained; provided that the client's consent to the transfer of the client's files shall be presumed if the client does not take any action or does not otherwise object within ninety (90) days of the date of the notice. on a copy of the written notice provided for in paragraph (b), and such form of written notice shall also provide a space for the client to direct another disposition of the file.
If a client cannot be given notice, the representation of that client may be transferred to the purchaser only upon entry of an order so authorizing by a court having jurisdiction. The seller may disclose to the court in camera information relating to the representation only to the extent necessary to obtain an order authorizing the transfer of a file.
(d) No attorney-client communications or other confidential information protected by Rule 1.6 shall be revealed to a purchaser or prospective purchaser unless the client's consent to the transfer of representation has first been obtained as provided in paragraphs (b) and (c).
(d)(e) The fees charged clients shall not be increased by reason of the sale. The purchaser may, however, refuse to undertake the representation unless the client consents to pay the purchaser fees at a rate not exceeding the fees charged by the purchaser for rendering substantially similar services prior to the initiation of the purchase negotiations.
(f) A reasonable effort shall be made to locate each client whose representation is proposed to be transferred, but if such client cannot be located, then the seller of the practice must make appropriate arrangements with another lawyer or law firm who would be qualified to assume such representation, who need not be the purchaser of the practice. Any such files shall be segregated by the receiving lawyer or law firm for safekeeping and held for disposition as the client may direct when located.
(g) The custody of inactive files representing matters which have been concluded, or with respect to which no current activities are occurring or contemplated, shall only be transferred in accordance with the applicable provisions of paragraphs (b) and (c) or (f), as the case may be.

Comment

Introduction
This Rule is primarily intended to address a serious problem affecting the large number of sole practitioner lawyers in Oklahoma. The purchase and sale of law practices has been occurring in the context of law partnerships (and more recently, professional corporations) almost since the dawn of the modern profession. However, sole practitioners, and perhaps more significantly, the heirs of deceased sole practitioners, have remained subject to a prohibition against the sale of their law practices.
[1] The practice of law is a profession, not merely a business. Clients are not commodities that can be purchased and sold at will. However, under the conditions and requirements set forth in this Rule, a practice or an area of practice may be sold. However, as in the case of medical, dental and other professional practices, a prospective purchaser may regard a law practice as possessing independent value, even though each client must expressly consent to the transfer of the representation of that client. Therefore, pursuant to this Rule, when a lawyer ceases to practice in Oklahoma and, with the consent of the clients affected, another lawyer or firm takes over the representation, the selling lawyer may obtain compensation for the reasonable value of the practice, just as in the case of withdrawing partners of law firms. See Rules 5.4 and 5.6.
It is believed that the availability of appropriate, optional contractual arrangements in the case of law firms makes it unnecessary to permit the sale of a practice by a law firm as such. In the limited number of cases where no equity owner of the law firm will continue to practice in Oklahoma, the Rule would permit the equity owners, acting as individuals, to sell the Oklahoma practice formerly conducted by the firm.

Termination of Practice by the Seller
[2] The requirement that all of the private practice, or all of an area of practice, be sold is satisfied if the seller in good faith makes the entire practice, or area of practice, available for sale to the purchaser. The fact that a number Although some of the seller's clients may decide not to be represented by the purchaser but take their matters elsewhere, therefore, does or ethical considerations may prevent the transfer of particular matters to that purchaser, this will not result in a violation. Neither does a Return to private practice as a result of an unanticipated change in circumstances does not necessarily result in a violation. For example, a lawyer who has sold the a practice to accept an appointment to judicial or other public office does not violate the requirement that the sale be attendant to cessation of practice if the lawyer later resumes private practice upon being defeated in a contested or a retention election for the office or resigns from a judiciary position. leaving office.
[3] The requirement that the seller cease to engage in the private practice of law does not prohibit full-time employment as a lawyer on the staff of a public agency or a legal services entity that which provides legal services to the poor, or as in-house counsel to a business.or full-time employment as a lawyer by an individual or group.
[4] The Rule permits a sale of an entire practice attendant upon retirement from the private practice of law within the jurisdiction. Oklahoma. Its provisions, therefore, accommodate the lawyer who sells the a practice upon the occasion of moving to another state. Some states, like Oklahoma, are so large that a move from one locale therein to another may be tantamount to leaving the jurisdiction in which the lawyer has engaged in the practice of law. To accommodate lawyers so situated, the rule also permits the sale of the practice when the lawyer leaves the geographical area rather than the jurisdiction.
[5] This Rule also permits a lawyer or law firm to sell an area of practice. If an area of practice is sold and the lawyer remains in the active practice of law, the lawyer must cease accepting any matters in the area of practice that has been sold, either as counsel or co-counsel or by assuming joint responsibility for a matter in connection with the division of a fee with another lawyer as would otherwise be permitted by Rule 1.5(e). For example, a lawyer with a substantial number of estate planning matters and a substantial number of probate administration cases may sell the estate planning portion of the practice but remain in the practice of law by concentrating on probate administration; however, that practitioner may not thereafter accept any estate planning matters. Although a lawyer who leaves a jurisdiction or geographical area typically would sell the entire practice, this Rule permits the lawyer to limit the sale to one or more areas of the practice, thereby preserving the lawyer's right to continue practice in the areas of the practice that were not sold.
Single Purchaser Sale of Entire Practice or Entire Area of Practice
[6] The Rule requires that the seller's entire practice, or an entire area of practice, be sold. a single purchaser. The prohibition against piecemeal sale of less than an entire a practice area protects those clients whose matters are less lucrative and who might find it difficult to secure other counsel if a sale could be limited to substantial fee-generating matters. The purchasers are is required to undertake all client matters in the practice or practice area, subject to client consent. This requirement is satisfied, If, however, even if a the purchaser is unable to undertake a all particular client matters because of a conflict of interest.in a specific matter respecting which the purchaser is not permitted by Rule 1.7 or another rule to represent the client, or because the purchaser lacks the requisite knowledge and skill to handle a particular matter, the requirement that there be a single purchaser is nevertheless satisfied.

Client Confidences, Consent and Notice
[7] Negotiations between seller and prospective purchaser prior to disclosure of information relating to a specific representation of an identifiable client no more violate the confidentiality provisions of Model Rule 1.6 than do preliminary discussions concerning the possible association of another lawyer or mergers between firms, with respect to which client consent is not required. Providing the purchaser access to client-specific information relating to the representation and to the file, however, requires specific, written client consent. The Rule provides that before such information can be disclosed by the seller to the purchaser the client must be given actual written notice of the contemplated sale, including the identity of the purchaser, and must be told that the decision to consent or make other arrangements must be made within ninety (90) days. and any proposed change in the terms of future representation, and the client must signify by written consent to the transfer of representation. If nothing is heard from the client within that time, consent to the sale is presumed.
[8] A lawyer or law firm ceasing to practice cannot be required to remain in practice because some clients cannot be given actual notice of the proposed purchase. Since these those clients not receiving actual notice cannot themselves consent to the purchase or direct any other disposition of their files, the Rule also requires an order from a Court having jurisdiction authorizing their transfer or other disposition. that appropriate arrangements be made with another lawyer or law firm to assume such representation, which may or may not be the purchaser of the practice The Court can be expected to determine whether reasonable efforts to locate the client have been exhausted, and whether the absent client's legitimate interests will be served by authorizing the transfer of the file so that the purchaser may continue the representation. Preservation of client confidences requires that the petition for a court order be considered in camera. , although the Rule requires reasonable efforts to be made to locate all clients. This could include notice by publication and in any event should include notice to the Bar Association office of the sale of the practice and the identity of the purchaser.. However, in such circumstances there must also be compliance with the applicable requirements of Rule 1.16. The considerations described in Part II of ABA Formal Opinion 92-369 (Dec. 7, 1992) as applicable in the case of custodians of files of deceased sole practitioners may also have relevance in this connection. The Rule also provides for the safekeeping of inactive files for which client consent to transfer cannot be obtained.
[9] All elements of client autonomy, including the client's absolute right to discharge a lawyer and transfer the representation to another, survive the sale of the practice or area of practice.

Fee Arrangement Between Client and Purchaser
[10] The sale may not be financed by increases in fees charged the clients of the practice. Existing agreements between the seller and the client as to fees and the scope of the work must be honored by the purchaser. , unless the client consents after consultation. The purchaser may, however, advise the client that the purchaser will not undertake the representation unless the client consents to pay the higher fees the purchaser usually charges. To prevent client financing of the sale, the higher fee the purchaser may charge must not exceed the fees charged by the purchaser for substantially similar service rendered prior to the initiation of the purchase negotiations. Furthermore, the purchaser may not require a client to agree to change from a contingent fee to another fee basis or from another fee basis to a contingent fee, as a condition for accepting the representation, and "rate" as used in the Rule is intended to refer to contingent fee percentages as well as hourly, per diem, or flat fee rates.
Where a client has retained the lawyer paying in advance a set fee charged to complete the representation, the client is entitled to a refund of any unearned fee from the selling lawyer. See Rule 1.16 (d). The amount of the refund should be calculated pro rata on the basis of the remaining work to be done. In cases of doubt, the calculations should give due regard for the client's expectation of having the legal work completed for the amount originally fixed by the selling lawyer.
The purchaser may not intentionally fragment the practice which is the subject of the sale by charging significantly different fees in substantially similar matters. Doing so would make it possible for the purchaser to avoid the obligation to take over the entire practice by charging arbitrarily higher fees for less lucrative matters, thereby increasing the likelihood that those clients would not consent to the new representation.

Other Applicable Ethical Standards
[11] Lawyers participating in the sale of a law practice or a practice area are subject to the ethical standards applicable to involving another lawyer in the representation of a client. These include, for example, the seller's obligation to exercise competence in identifying a purchaser qualified to assume the practice and the purchaser's obligation to undertake the representation competently (see Rule 1.1); the obligation to avoid disqualifying conflicts, and to secure the client's informed consent after consultation for those conflicts that which can be agreed to (see Rule 1.7 regarding conflicts and Rule 1.0(e) for the definition of informed consent); and the obligation to protect information relating to the representation (see Rules 1.6 and 1.9).
[12] If approval of the substitution of the purchasing lawyer attorney for the selling lawyer attorney is required by the rules of any tribunal in which a matter is pending, such approval must be obtained before the matter can be included in the sale (see Rule 1.16).

Applicability of the Rule
[13] This Rule applies to the sale of a law practice by representatives of a deceased, disabled or disappeared lawyer. Thus, the seller may be represented by a nonlawyer representative not subject to these Rules. Since, however, no lawyer may participate in a sale of a law practice which does not conform to the requirements of this Rule, the representatives of the seller as well as the purchasing lawyer can be expected to see to it that they are met. It should also be noted that the disposition of the practice of a disappeared lawyer is subject to the provisions of Rule 9.3 of the Oklahoma Rules Governing Disciplinary Proceedings.
[14] Admission to or retirement from a law partnership or professional association, retirement plans and similar arrangements, and a sale of tangible assets of a law practice do not constitute a sale or purchase governed by this Rule.
[15] This Rule does not apply to the transfers of legal representation between lawyers when such transfers are unrelated to the sale of a practice or an area of practice.

RULE 1.18 DUTIES TO PROSPECTIVE CLIENT
(a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
(1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:
(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(ii) written notice is promptly given to the prospective client.

Comment
[1] Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice. A lawyer's discussions with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients.
[2] Not all persons who communicate information to a lawyer are entitled to protection under this Rule. A person who communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, is not a "prospective client" within the meaning of paragraph (a).
[3] It is often necessary for a prospective client to reveal information to the lawyer during an initial consultation prior to the decision about formation of a client-lawyer relationship. The lawyer often must learn such information to determine whether there is a conflict of interest with an existing client and whether the matter is one that the lawyer is willing to undertake. Paragraph (b) prohibits the lawyer from using or revealing that information, except as permitted by Rule 1.9, even if the client or lawyer decides not to proceed with the representation. The duty exists regardless of how brief the initial conference may be.
[4] In order to avoid acquiring disqualifying information from a prospective client, a lawyer considering whether or not to undertake a new matter should limit the initial interview to only such information as reasonably appears necessary for that purpose. Where the information indicates that a conflict of interest or other reason for non-representation exists, the lawyer should so inform the prospective client or decline the representation. If the prospective client wishes to retain the lawyer, and if consent is possible under Rule 1.7, then consent from all affected present or former clients must be obtained before accepting the representation.
[5] A lawyer may condition conversations with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. See Rule 1.0(e) for the definition of informed consent. If the agreement expressly so provides, the prospective client may also consent to the lawyer's subsequent use of information received from the prospective client.
[6] Even in the absence of an agreement, under paragraph (c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter.
[7] Under paragraph (c), the prohibition in this Rule is imputed to other lawyers as provided in Rule 1.10, but, under paragraph (d)(1), imputation may be avoided if the lawyer obtains the informed consent, confirmed in writing, of both the prospective and affected clients. In the alternative, imputation may be avoided if the conditions of paragraph (d)(2) are met and all disqualified lawyers are timely screened and written notice is promptly given to the prospective client. See Rule 1.0(k) (requirements for screening procedures). Paragraph (d)(2)(i) does not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified.
[8] Notice, including a general description of the subject matter about which the lawyer was consulted, and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.
[9] For the duty of competence of a lawyer who gives assistance on the merits of a matter to a prospective client, see Rule 1.1. For a lawyer's duties when a prospective client entrusts valuables or papers to the lawyer's care, see Rule 1.15.

COUNSELOR RULE 2.1 ADVISOR
In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.

Comment

Scope of Advice
[1] A client is entitled to straightforward advice expressing the lawyer's honest assessment. Legal advice often involves unpleasant facts and alternatives that a client may be disinclined to confront. In presenting advice, a lawyer endeavors to sustain the client's morale and may put advice in as acceptable a form as honesty permits. However, a lawyer should not be deterred from giving candid advice by the prospect that the advice will be unpalatable to the client.
[2] Advice couched in narrowly legal terms may be of little value to a client, especially where practical considerations, such as cost or effects on other people, are predominant. Purely technical legal advice, therefore can sometimes be inadequate. It is proper for a lawyer to refer to relevant moral and ethical considerations in giving advice. Although a lawyer is not a moral advisor as such, moral and ethical considerations impinge upon most legal questions and may decisively influence how the law will be applied.
[3] A client may expressly or impliedly ask the lawyer for purely technical advice. When such a request is made by a client experienced in legal matters, the lawyer may accept it at face value. When such a request is made by a client inexperienced in legal matters, however, the lawyer's responsibility as advisor may include indicating that more may be involved than strictly legal considerations.
[4] Matters that go beyond strictly legal questions may also be in the domain of another profession. Family matters can involve problems within the professional competence of psychiatry, clinical psychology or social work; business matters can involve problems within the competence of the accounting profession or of financial specialists. Where consultation with a professional in another field is itself something a competent lawyer would recommend, the lawyer should make such a recommendation. At the same time, a lawyer's advice at its best often consists of recommending a course of action in the face of conflicting recommendations of experts.

Offering Advice
[5] In general, a lawyer is not expected to give advice until asked by the client. However, when a lawyer knows that a client proposes a course of action that is likely to result in substantial adverse legal consequences to the client, duty to the client under Rule 1.4 may require that the lawyer offer advice act if the client's course of action is related to the representation. Similarly, when a matter is likely to involve litigation, it may be necessary under Rule 1.4 to inform the client of forms of dispute resolution that might constitute reasonable alternatives to litigation. A lawyer ordinarily has no duty to initiate investigation of a client's affairs or to give advice that the client has indicated is unwanted, but a lawyer may initiate advice to a client when doing so appears to be in the client's interest.

Rule 2.2. Intermediary
(a) A lawyer may act as intermediary between clients if:
(1) the lawyer consults with each client concerning the implications of the common representation, including the advantages and risks involved, and the effect on the attorney-client privileges, and obtains each client's consent to the common representation;
(2) the lawyer reasonably believes that the matter can be resolved on terms compatible with the clients' best interests, that each client will be able to make adequately informed decisions in the matter and that there is little risk of material prejudice to the interests of any of the clients if the contemplated resolution is unsuccessful; and
(3) the lawyer reasonably believes that the common representation can be undertaken impartially and without improper effect on other responsibilities the lawyer has to any of the clients.
(b) While acting as intermediary, the lawyer shall consult with each client concerning the decisions to be made and the considerations relevant in making them so that each client can make adequately informed decisions.
(c) A lawyer shall withdraw as intermediary if any of the clients so request, or if any of the conditions stated in paragraph (a) is no longer satisfied. Upon withdrawal, the lawyer shall not continue to represent any of the clients in the matter that was the subject of the intermediation.

Comments
A lawyer acts as intermediary under this Rule when the lawyer represents two or more parties with potentially conflicting interests. A key factor in defining the relationship is whether the parties share responsibility for the lawyer's fee, but the common representation may be inferred from other circumstances. Because confusion can arise as to the lawyer's role where each party is not separately represented, it is important that the lawyer make clear the relationship.
The Rule does not apply to a lawyer acting as arbitrator or mediator between or among parties who are not clients of the lawyer, even where the lawyer has been appointed with the concurrence of the parties. In performing such a role the lawyer may be subject to applicable codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint Committee of the American Bar Association and the American Arbitration Association.
A lawyer acts as intermediary in seeking to establish or adjust a relationship between clients on an amicable and mutually advantageous basis; for example, in helping to organize a business in which two or more clients are entrepreneurs. working out the financial reorganization of an enterprise in which two or more clients have an interest, arranging a property distribution in settlement of an estate or mediating a dispute between clients. The lawyer seeks to resolve potentially conflicting interests by developing the parties' mutual interests. The alternative can be that each party may have to obtain separate representation, with the possibility in some situations of incurring additional cost, complication or even litigation. Given these and other relevant factors, all the clients may prefer that the lawyer act as intermediary.
In considering whether to act as intermediary between clients, a lawyer should be mindful that if the intermediation fails the result can be additional cost, embarrassment and recrimination. In some situations the risk of failure is so great that intermediation is plainly impossible. For example, a lawyer cannot undertake common representation of clients between whom contentious litigation is imminent or who contemplate contentious negotiations. More generally, if the relationship between the parties has already assumed definite antagonism, the possibility that the clients' interests can be adjusted by intermediation ordinarily is not very good.
The appropriateness of intermediation can depend on its form. Forms of intermediation range from informal arbitration, where each client's case is presented by the respective client and the lawyer decides the outcome, to mediation, to common representation where the clients' interests are substantially though not entirely compatible. One form may be appropriate in circumstances where another would not. Other relevant factors are whether the lawyer subsequently will represent both parties on a continuing basis and whether the situation involves creating a relationship between the parties or terminating one.
Confidentiality and Privilege. A particularly important factor in determining the appropriateness of intermediation is the effect on client-lawyer confidentiality and the attorney-client privilege. In a common representation, the lawyer is still required both to keep each client adequately informed and to maintain confidentiality of information relating to the representation. See Rules 1.4 and 1.6. Complying with both requirements while acting as intermediary requires a delicate balance. If the balance cannot be maintained, the common representation is improper. With regard to the attorney-client privilege, the prevailing rule is that as between commonly represented clients the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.
Since the lawyer is required to be impartial between commonly represented clients, intermediation is improper when that impartiality cannot be maintained. For example, a lawyer who has represented one of the clients for a long period and in a variety of matters might have difficulty being impartial between that client and one to whom the lawyer has only recently been introduced.
Consultation. In acting as intermediary between clients, the lawyer is required to consult with the clients on the implications of doing so, and proceed only upon consent based on such a consultation. The consultation should make clear that the lawyer's role is not that of partisanship normally expected in other circumstances.
Paragraph (b) is an application of the principle expressed in Rule 1.4. Where the lawyer is intermediary, the clients ordinarily must assume greater responsibility for decisions than when each client is independently represented.
Withdrawal. Common representation does not diminish the rights of each client in the client-lawyer relationship. Each has the right to loyal and diligent representation, the right to discharge the lawyer as stated in Rule 1.16, and the protection of Rule 1.9 concerning obligations to a former client.

RULE 2.3 EVALUATION FOR USE BY THIRD PERSONS
(a) A lawyer may provide undertake an evaluation of a matter affecting a client for the use of someone other than the client if (1) the lawyer reasonably believes that making the evaluation is compatible with other aspects of the lawyer's relationship with the client.; and
(b)(2) When the lawyer knows or reasonably should know that the evaluation is likely to affect the client's interests materially and adversely, the lawyer shall not provide the evaluation unless the client gives informed consent. consents after consultation.
(c)(b) Except as disclosure is authorized required in connection with a report of an evaluation, information relating to the evaluation is otherwise protected by Rule 1.6.

Comment

Definition
[1] An evaluation may be performed at the client's direction or when impliedly authorized in order to carry out the representation. See Rule 1.2. Such an evaluation may be but for the primary purpose of establishing information for the benefit of third parties; for example, an opinion concerning the title of property rendered at the behest of a vendor for the information of a prospective purchaser, or at the behest of a borrower for the information of a prospective lender. In some situations, the evaluation may be required by a government agency; for example, an opinion concerning the legality of the securities registered for sale under the securities laws. In other instances, the evaluation may be required by a third person, such as a purchaser of a business.
Lawyers for the government may be called upon to give a formal opinion on the legality of contemplated government agency action. In making such an evaluation, the government lawyer acts at the behest of the government as the client but for the purpose of establishing the limits of the agency's authorized activity. Such an opinion is to be distinguished from confidential legal advice given agency officials. The critical question is whether the opinion is to be made public.
[2] A legal evaluation should be distinguished from an investigation of a person with whom the lawyer does not have a client-lawyer relationship. For example, a lawyer retained by a purchaser to analyze a vendor's title to property does not have a client-lawyer relationship with the vendor. So also, an investigation into a person's affairs by a government lawyer, or by special counsel employed by the government, is not an evaluation as that term is used in this Rule. The question is whether the lawyer is retained by the person whose affairs are being examined. When the lawyer is retained by that person, the general rules concerning loyalty to client and preservation of confidences apply, which is not the case if the lawyer is retained by someone else. For this reason, it is essential to identify the person by whom the lawyer is retained. This should be made clear not only to the person under examination, but also to others to whom the results are to be made available.

Duties Owed to Third Person and Client Duty to Third Person
[3] When the evaluation is intended for the information or use of a third person, a legal duty to that person may or may not arise. That legal question is beyond the scope of this Rule. However, since such an evaluation involves a departure from the normal client-lawyer relationship, careful analysis of the situation is required. The lawyer must be satisfied as a matter of professional judgment that making the evaluation is compatible with other functions undertaken in behalf of the client. For example, if the lawyer is acting as advocate in defending the client against charges of fraud, it would normally be incompatible with that responsibility for the lawyer to perform an evaluation for others concerning the same or a related transaction. Assuming no such impediment is apparent, however, the lawyer should advise the client of the implications of the evaluation, particularly the lawyer's responsibilities to third persons and the duty to disseminate the findings.

Access to and Disclosure of Information
[4] The quality of an evaluation depends on the freedom and extent of the investigation upon which it is based. Ordinarily a lawyer should have whatever latitude of investigation seems necessary as a matter of professional judgment. Under some circumstances, however, the terms of the evaluation may be limited. For example, certain issues or sources may be categorically excluded, or the scope of search may be limited by time constraints or the noncooperation of persons having relevant information. Any such limitations which are material to the evaluation should be described in the report. If after a lawyer has commenced an evaluation, the client refuses to comply with the terms upon which it was understood the evaluation was to have been made, the lawyer's obligations are determined by law, having reference to the terms of the client's agreement and the surrounding circumstances. In no circumstances is the lawyer permitted to knowingly make a false statement of material fact or law in providing an evaluation under this Rule. See Rule 4.1.

Obtaining Client's Informed Consent
[5] Information relating to an evaluation is protected by Rule 1.6. In many situations, providing an evaluation to a third party poses no significant risk to the client; thus, the lawyer may be impliedly authorized to disclose information to carry out the representation. See Rule 1.6(a). Where, however, it is reasonably likely that providing the evaluation will affect the client's interests materially and adversely, the lawyer must first obtain the client's consent after the client has been adequately informed concerning the important possible effects on the client's interests. See Rules 1.6(a) and 1.0(e).

Financial Auditors' Requests for Information
[6] When a question concerning the legal situation of a client arises at the instance of the client's financial auditor and the question is referred to the lawyer, the lawyer's response may be made in accordance with procedures recognized in the legal profession. Such a procedure is set forth in the American Bar Association Statement of Policy Regarding Lawyers' Responses to Auditors' Requests for Information, adopted in 1975.

RULE 2.4 LAWYER SERVING AS THIRD-PARTY NEUTRAL
(a) A lawyer serves as a third-party neutral when the lawyer assists two or more persons who are not clients of the lawyer to reach a resolution of a dispute or other matter that has arisen between them. Service as a third-party neutral may include service as an arbitrator, a mediator or in such other capacity as will enable the lawyer to assist the parties to resolve the matter.
(b) A lawyer serving as a third-party neutral shall inform unrepresented parties that the lawyer is not representing them. When the lawyer knows or reasonably should know that a party does not understand the lawyer's role in the matter, the lawyer shall explain the difference between the lawyer's role as a third-party neutral and a lawyer's role as one who represents a client.

Comment
[1] Alternative dispute resolution has become a substantial part of the civil justice system. Aside from representing clients in dispute-resolution processes, lawyers often serve as third-party neutrals. A third-party neutral is a person, such as a mediator, arbitrator, conciliator or evaluator, who assists the parties, represented or unrepresented, in the resolution of a dispute or in the arrangement of a transaction. Whether a third-party neutral serves primarily as a facilitator, evaluator or decisionmaker depends on the particular process that is either selected by the parties or mandated by a court.
[2] The role of a third-party neutral is not unique to lawyers, although, in some court-connected contexts, only lawyers are allowed to serve in this role or to handle certain types of cases. In performing this role, the lawyer may be subject to court rules or other law that apply either to third-party neutrals generally or to lawyers serving as third-party neutrals. Lawyer-neutrals may also be subject to various codes of ethics, such as the Code of Ethics for Arbitration in Commercial Disputes prepared by a joint committee of the American Bar Association and the American Arbitration Association or the Model Standards of Conduct for Mediators jointly prepared by the American Bar Association, the American Arbitration Association and the Society of Professionals in Dispute Resolution.
[3] Unlike nonlawyers who serve as third-party neutrals, lawyers serving in this role may experience unique problems as a result of differences between the role of a third-party neutral and a lawyer's service as a client representative. The potential for confusion is significant when the parties are unrepresented in the process. Thus, paragraph (b) requires a lawyer-neutral to inform unrepresented parties that the lawyer is not representing them. For some parties, particularly parties who frequently use dispute-resolution processes, this information will be sufficient. For others, particularly those who are using the process for the first time, more information will be required. Where appropriate, the lawyer should inform unrepresented parties of the important differences between the lawyer's role as third-party neutral and a lawyer's role as a client representative, including the inapplicability of the attorney-client evidentiary privilege. The extent of disclosure required under this paragraph will depend on the particular parties involved and the subject matter of the proceeding, as well as the particular features of the dispute-resolution process selected.
[4] A lawyer who serves as a third-party neutral subsequently may be asked to serve as a lawyer representing a client in the same matter. The conflicts of interest that arise for both the individual lawyer and the lawyer's law firm are addressed in Rule 1.12.
[5] Lawyers who represent clients in alternative dispute-resolution processes are governed by the Rules of Professional Conduct. When the dispute-resolution process takes place before a tribunal, as in binding arbitration (see Rule 1.0(m)), the lawyer's duty of candor is governed by Rule 3.3. Otherwise, the lawyer's duty of candor toward both the third-party neutral and other parties is governed by Rule 4.1.

ADVOCATE

RULE 3.1 MERITORIOUS CLAIMS AND CONTENTIONS
A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

Comment
[1] The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.
[2] The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of the clients' cases and the applicable law and determine that they can make good faith arguments in support of their client's positions. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous, however, if the client desires to have the action taken primarily for the purpose of harassing or maliciously injuring a person or if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.
[3] The lawyer's obligations under this Rule are subordinate to federal or state constitutional law that entitles a defendant in a criminal matter to the assistance of counsel in presenting a claim or contention that otherwise would be prohibited by this Rule.

RULE 3.2 EXPEDITING LITIGATION
A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

Comment
[1] Dilatory practices bring the administration of justice into disrepute. Although there will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. Delay should not be indulged merely for the convenience of the advocates, or for the purpose of frustrating an opposing party's attempt to obtain rightful redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.

RULE 3.3 CANDOR TOWARD THE TRIBUNAL
(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
(2)(3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
(3)(4) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take the reasonable following remedial measures, including, if necessary, disclosure to the tribunal. (c)A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.
(A) when a client has offered false evidence, the lawyer shall promptly call upon the client to rectify the same; if the client refuses or is unable to do so the lawyer shall promptly reveal its false character to the tribunal; or
(B) when a person other than a client has offered false evidence, the lawyer shall promptly reveal its false character to the tribunal.
(4)(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client.
(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.
(c)(b) The duties stated in paragraphs (a) and (b) continue to the conclusion of the proceeding, are continuing, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.
(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

Comment
[1] This Rule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal. See Rule 1.0(m) for the definition of "tribunal." It also applies when the lawyer is representing a client in an ancillary proceeding conducted pursuant to the tribunal's adjudicative authority, such as a deposition. Thus, for example, paragraph (a)(3) requires a lawyer to take reasonable remedial measures if the lawyer comes to know that a client who is testifying in a deposition has offered evidence that is false.
[2] This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation The advocate's task is to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal. Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to However, an advocate does not vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false.; the tribunal is responsible for assessing its probative value.

Representations by a Lawyer
[3] An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein, for litigation documents ordinarily present assertions by the client, or by someone on the client's behalf, and not assertions by the lawyer. Compare Rule 3.1. However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in Rule 1.2 (d)(c) not to counsel a client to commit or assist the client in committing a fraud applies in litigation. Regarding compliance with Rule 1.2 (d)(c), see the Comment to that Rule. See also the Comment to Rule 8.4 (b).

Misleading Legal Argument
[4] Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in paragraph (a)(2)(3), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction which has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

False Offering Evidence
When evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client's wishes.
When false evidence is offered by the client, however, a conflict may arise between the lawyer's duty to keep the client's revelations confidential and the duty of candor to the court. Upon ascertaining that material evidence is false, the lawyer should seek to persuade the client that the evidence should not be offered or, if it has been offered, that its false character should immediately be disclosed. If the persuasion is ineffective, the lawyer must take reasonable remedial measures.
[5] Paragraph (a)(3) requires that the lawyer refuse to offer evidence that the lawyer knows to be false, regardless of the client's wishes. This duty is premised on the lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence. A lawyer does not violate this Rule if the lawyer offers the evidence for the purpose of establishing its falsity.
[6] If a lawyer knows that the client intends to testify falsely or wants the lawyer to introduce false evidence, the lawyer should seek to persuade the client that the evidence should not be offered. If the persuasion is ineffective and the lawyer continues to represent the client, the lawyer must refuse to offer the false evidence. If only a portion of a witness's testimony will be false, the lawyer may call the witness to testify but may not elicit or otherwise permit the witness to present the testimony that the lawyer knows is false.
[7] The duties stated in paragraphs (a) and (b) apply to all lawyers, including defense counsel in criminal cases. In some jurisdictions, however, courts have required counsel to present the accused as a witness or to give a narrative statement if the accused so desires, even if counsel knows that the testimony or statement will be false. The obligation of the advocate under the Rules of Professional Conduct is subordinate to such requirements. See also Comment [9].
[8] The prohibition against offering false evidence only applies if the lawyer knows that the evidence is false. A lawyer's reasonable belief that evidence is false does not preclude its presentation to the trier of fact. A lawyer's knowledge that evidence is false, however, can be inferred from the circumstances. See Rule 1.0(f). Thus, although, ordinarily, a lawyer should resolve doubts about the veracity of testimony or other evidence in favor of the client, the lawyer cannot ignore known falsehoods.

Refusing to Offer Proof Believed to Be False
[9] Although paragraph (a)(3) only prohibits Generally speaking, a lawyer has authority from offering evidence that the lawyer knows to be false, it permits the lawyer to refuse to offer testimony or other proof that the lawyer reasonably believes is false. knows is untrustworthy. Offering such proof may reflect adversely on the lawyer's ability to discriminate in the quality of evidence and thus impair the lawyer's effectiveness as an advocate. In criminal cases, however, a lawyer may, in some jurisdictions, be denied this authority by constitutional requirements governing the right to counsel. See also Comment [7].
Perjury by a Criminal Defendant. Whether an advocate for a criminally accused has the same duty of disclosure has been intensely debated. While it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer's duty when that persuasion fails. If the confrontation with the client occurs before trial, the lawyer ordinarily can withdraw. Withdrawal before trial may not be possible, however, either because trial is imminent, or because the confrontation with the client does not take place until the trial itself, or because no other counsel is available.
The most difficult situation, therefore, arises in a criminal case where the accused insists on testifying when the lawyer knows that the testimony is perjurious. The lawyer's effort to rectify the situation can increase the likelihood of the client's being convicted as well as opening the possibility of a prosecution for perjury. On the other hand, if the lawyer does not exercise control over the proof, the lawyer participates, although in a merely passive way, in deception of the court.
Three resolutions of this dilemma have been proposed. One is to permit the accused to testify by a narrative without guidance through the lawyer's questioning. This compromises both contending principles; it exempts the lawyer from the duty to disclose false evidence but subjects the client to an implicit disclosure of information imparted to counsel. Another suggested resolution, of relatively recent origin, is that the advocate be entirely excused from the duty to reveal perjury if the perjury is that of the client. This is a coherent solution but makes the advocate a knowing instrument of perjury.
The other resolution of the dilemma is that the lawyer must reveal the client's perjury if necessary to rectify the situation. A criminal accused has a right to the assistance of an advocate, a right to testify and a right of confidential communication with counsel. However, an accused should not have a right to assistance of counsel in committing perjury. Furthermore, an advocate has an obligation, not only in professional ethics but under the law as well, to avoid implication in the commission of perjury or other falsification of evidence. See Rule 1.2 (c).

Remedial Measures
[10] Having offered material If perjured testimony or false evidence has been offered, in the belief that it was true, a lawyer may subsequently come to know that the evidence is false. Or, a lawyer may be surprised when the lawyer's client, or another witness called by the lawyer, offers testimony the lawyer knows to be false, either during the lawyer's direct examination or in response to cross-examination by the opposing lawyer. In such situations or if the lawyer knows of the falsity of testimony elicited from the client during a deposition, the lawyer must take reasonable remedial measures. In such situations, the advocate's proper course ordinarily is to remonstrate with the client confidentially, advise the client of the lawyer's duty of candor to the tribunal and seek the client's cooperation with respect to the withdrawal or correction of the false statements or evidence. If that fails, the advocate must take further remedial action. should seek to withdraw if that will remedy the situation. If withdrawal from the representation is not permitted or will not undo the effect of the false evidence, remedy the situation or is impossible, the advocate must should make such disclosure to the tribunal court. as is reasonably necessary to remedy the situation, even if doing so requires the lawyer to reveal information that otherwise would be protected by Rule 1.6. It is for the tribunal court then to determine what should be donemaking a statement about the matter to the trier of fact, ordering a mistrial or perhaps nothing. If the false testimony was that of the client, the client may controvert the lawyer's version of their communication when the lawyer discloses the situation to the court. If there is an issue whether the client has committed perjury, the lawyer cannot represent the client in resolution of the issue, and a mistrial may be unavoidable. An unscrupulous client might in this way attempt to produce a series of mistrials and thus escape prosecution. However, a second such encounter could be construed as a deliberate abuse of the right to counsel and as such a waiver of the right to further representation.
[11] Except in the defense of a criminal accused, the rule generally recognized is that, if necessary to rectify the situation, an advocate must disclose the existence of the client's deception to the court or to the other party. Such a The disclosure of a client's false testimony can result in grave consequences to the client, including not only a sense of betrayal but also loss of the case and perhaps a prosecution for perjury. But the alternative is that the lawyer cooperate in deceiving the court, thereby subverting the truth-finding process which the adversary system is designed to implement. See Rule 1.2
(c)(d). Furthermore, unless it is clearly understood that the lawyer will act upon the duty to disclose the existence of false evidence, the client can simply reject the lawyer's advice to reveal the false evidence and insist that the lawyer keep silent. Thus the client could in effect coerce the lawyer into being a party to fraud on the court.

Preserving Integrity of Adjudicative Process [12] Lawyers have a special obligation to protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process, such as bribing, intimidating or otherwise unlawfully communicating with a witness, juror, court official or other participant in the proceeding, unlawfully destroying or concealing documents or other evidence or failing to disclose information to the tribunal when required by law to do so. Thus, paragraph (b) requires a lawyer to take reasonable remedial measures, including disclosure if necessary, whenever the lawyer knows that a person, including the lawyer's client, intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding.
Constitutional Requirements. The general rule  that an advocate must disclose the existence of perjury with respect to a material fact, even that of a client  applies to defense counsel in criminal cases, as well as in other instances. However, the definition of the lawyer's ethical duty in such a situation may be qualified by constitutional provisions for due process and the right to counsel in criminal cases. In some jurisdictions these provisions have been construed to require that counsel present an accused as a witness if the accused wishes to testify, even if counsel knows the testimony will be false. The obligation of the advocate under these Rules is subordinate to such a constitutional requirement.

Duration of Obligation
[13] A practical time limit on the obligation to rectify false evidence or false statements of law and fact has to be established. The conclusion of the proceeding is a reasonably definite point for the termination of the obligation. A proceeding has concluded within the meaning of this Rule when a final judgment in the proceeding has been affirmed on appeal or the time for review has passed. In certain circumstances, after the conclusion of the proceeding, a lawyer still has the discretion to rectify the effects of false evidence or false statements of law and fact. See Rules 1.6 and 4.1.

Ex Parte Proceedings
[14] Ordinarily, an advocate has the limited responsibility of presenting one side of the matters that a tribunal should consider in reaching a decision; the conflicting position is expected to be presented by the opposing party. However, in any ex parte proceeding, such as an application for a temporary restraining order, there is no balance of presentation by opposing advocates. The object of an ex parte proceeding is nevertheless to yield a substantially just result. The judge has an affirmative responsibility to accord the absent party just consideration. The lawyer for the represented party has the correlative duty to make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an informed decision.
Withdrawal
[15] Normally, a lawyer's compliance with the duty of candor imposed by this Rule does not require that the lawyer withdraw from the representation of a client whose interests will be or have been adversely affected by the lawyer's disclosure. The lawyer may, however, be required by Rule 1.16(a) to seek permission of the tribunal to withdraw if the lawyer's compliance with this Rule's duty of candor results in such an extreme deterioration of the client-lawyer relationship that the lawyer can no longer competently represent the client. Also see Rule 1.16(b) for the circumstances in which a lawyer will be permitted to seek a tribunal's permission to withdraw. In connection with a request for permission to withdraw that is premised on a client's misconduct, a lawyer may reveal information relating to the representation only to the extent reasonably necessary to comply with this Rule or as otherwise permitted by Rule 1.6.

RULE 3.4 FAIRNESS TO OPPOSING PARTY AND COUNSEL
A lawyer shall not:
(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;
(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;
(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party;
(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or
(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:
(1) the person is a relative or an employee or other agent of a client; and
(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

Comment
[1] The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.
[2] Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is altered, concealed or destroyed. Applicable law in many jurisdictions makes it an offense to destroy material for purpose of impairing its availability in a pending proceeding or one whose commencement can be foreseen. Falsifying evidence is also generally a criminal offense. Paragraph (a) applies to evidentiary material generally, including computerized information. Applicable law may permit a lawyer to take temporary possession of physical evidence of client crimes for the purpose of conducting a limited examination that will not alter or destroy material characteristics of the evidence. In such a case, applicable law may require the lawyer to turn the evidence over to the police or other prosecuting authority, depending on the circumstances.
[3] With regard to paragraph (b), it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee.
[4] Paragraph (f) permits a lawyer to advise employees of a client to refrain from giving information to another party for the employees may identify their interests with those of the client. See also Rule 4.2.

RULE 3.5 IMPARTIALITY AND DECORUM OF THE TRIBUNAL
A lawyer shall not:
(a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law; decision maker except as permitted by law or the rules of a tribunal;
(b) communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order;
(c) communicate with a juror or prospective juror after discharge of the jury if:
(1) the communication is prohibited by law or court order;
(2) the juror has made known to the lawyer a desire not to communicate; or
(3) the communication involves misrepresentation, coercion, duress or harassment; or
(d) engage in conduct intended to disrupt a tribunal.
(b) in an adversary proceeding, communicate or cause another to communicate as to the merits of the cause, with a judge or an official before whom the proceeding is pending except:
(1) in the course of the official proceeding in the cause;
(2) in writing if the lawyer promptly delivers a copy of the writing to the opposing counsel or to the adverse party if not represented by a lawyer;
(3) orally upon notice to opposing counsel or to the adverse party if not represented by a lawyer; and
(4) as otherwise authorized by law; or
(c) communicate directly or through another with a juror or prospective juror except as permitted by law or the rules of court; or

Comment
[1] Many forms of improper influence upon a tribunal are proscribed by criminal law. Others are specified in the ABA Model Code of Judicial Conduct, with which an advocate should be familiar. A lawyer is required to avoid contributing to a violation of such provisions.
[2] During a proceeding a lawyer may not communicate ex parte with persons serving in an official capacity in the proceeding, such as judges, masters or jurors, unless authorized to do so by law or court order.
[3] A lawyer may on occasion want to communicate with a juror or prospective juror after the jury has been discharged. The lawyer may do so unless the communication is prohibited by law or a court order but must respect the desire of the juror not to talk with the lawyer. The lawyer may not engage in improper conduct during the communication.
[4] The advocate's function is to present evidence and argument so that the case may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants. A lawyer may stand firm against abuse by a judge but should avoid reciprocation; the judge's default is no justification for similar dereliction by an advocate. An advocate can present the cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.
[5] The duty to refrain from disruptive conduct applies to any proceeding of a tribunal, including a deposition. See Rule 1.0(m).

RULE 3.6 TRIAL PUBLICITY
(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable lawyer would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have an imminent and materially prejudicial effect on the fact-finding process in an adjudicatory proceeding relating to the matter and involving lay fact-finders or the possibility of incarceration.
(b) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client. A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.
(c) No lawyer associated in a firm or government agency with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a).

Comment
[1] Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to litigation in which incarceration may result or lay persons will serve as fact-finders. While this proposition applies in civil cases, it is particularly salient with respect to criminal prosecutions. If there were no such limits, the result would be practical nullification of the protective effect of the constitutionally-grounded presumption of innocence and the exclusionary rules of evidence. At the same time, there are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security. It also has a legitimate interest in the conduct of judicial proceedings, particularly in matters of general public concern. Furthermore, the subject matter of legal proceedings is often of direct significance in debate and deliberation over questions of public policy.
[2] Special rules of confidentiality may validly govern proceedings in juvenile, domestic relations and mental disability proceedings, and perhaps other types of litigation. Such rules may be adopted by a tribunal to be generally applicable, to apply to a specific class of litigation, or to govern a particular case, by way of special order. Rule 3.4(c) governs compliance with all such rules; however, a statement in violation of such a rule or order may constitute a violation of Rule 3.6(a), depending on the circumstances.
[3] Recognizing that the public value of informed commentary is great and the likelihood of prejudice to a proceeding by the commentary of a lawyer who is not involved in the proceeding is small, the rule applies only to lawyers who are, or who have been, involved in the investigation or litigation of a case, and their associates.
[4] Notwithstanding paragraph (a), many statements about a matter made by participating lawyers and their associates are unlikely to materially prejudice the fact-finding process in an adjudicative proceeding. While circumstances can result in an otherwise innocuous statement's having a materially prejudicial effect, accurate, factual statements of the following matters will not ordinarily violate the standard of Rule 3.6(a):
(1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved;
(2) the information contained in a public record;
(3) that an investigation of the matter is in progress;
(4) the scheduling or result of any step in litigation;
(5) a request for assistance in obtaining evidence and information necessary thereto;
(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or the public interest; and
(7) in a criminal case, in addition to items (1) through (6):
(i) the identity and occupation of the accused;
(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;
(iii) the fact, time and place of arrest; and
(iv) the identity of investigating and arresting officers or agencies and the length of the investigation.
This list is illustrative, not exhaustive.
[5] There are, on the other hand, certain subjects which are more likely than others to have a materially prejudicial effect on a proceeding, particularly when they refer to a civil matter triable to a jury, a criminal matter, or any other proceeding that could result in incarceration. These subjects relate to:
(1) the character, credibility, reputation or criminal record of a party, suspect in a criminal investigation or witness, or the identity of a witness, or the expected testimony of a party or witness;
(2) in a criminal case or other proceeding that could result in incarceration, the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission, or statement given by a defendant or suspect or that person's refusal or failure to make a statement;
(3) the performance or results of any examination or test or the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;
(4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal case or proceeding that could result in incarceration;
(5) information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and that would, if disclosed, create an imminent and material risk of prejudicing an impartial trial; or
(6) the fact that a defendant has been charged with a crime, unless there is included therein a statement explaining that the charge is merely an accusation and the defendant is presumed innocent until and unless proven guilty;
[6] The likelihood of prejudice due to a public statement is different depending on the type of proceeding and the timing of the statement. Statements which may be innocuous when not made in close proximity to an adjudicatory proceeding may be materially prejudicial if made on the eve or in the midst of the proceeding. Criminal jury trials in which laypersons serve as fact-finders and other proceedings that could result in incarceration are most sensitive to extra-judicial speech. Civil trials in which laypersons serve as fact-finder(s) may also be quite sensitive. Non-jury hearing and arbitration proceedings are far less prone to be affected by such speech. The rule places limitations on prejudicial comments only with respect to the most sensitive cases. However, regardless of the likelihood of public dissemination of a statement, regardless of the timing of the statement, regardless of the vulnerability of a proceeding to prejudice as a result of the dissemination of a particular statement, and regardless of whether a lawyer is involved in a proceeding or associated with a lawyer who is involved in it, a lawyer should aspire to refrain from making statements that pose a substantial likelihood of prejudicing the fairness of a proceeding or unjustifiably casting doubt on the fairness of the proceeding or the legal system in general. A lawyer should be especially mindful of the likelihood of such effects when the lawyer's statement is reasonably likely to be disseminated by means of public communication.
[7] Finally, extrajudicial statements that might otherwise raise a question under this Rule may be permissible when they are made in response to statements made publicly by another party, another party's lawyer, or third persons, where a reasonable lawyer would believe a public response is required in order to avoid prejudice to the lawyer's client. When prejudicial statements have been publicly made by others, responsive statements may have the salutary effect of lessening any resulting adverse impact on the adjudicative proceeding. Such responsive statements should be limited to contain only such information as is reasonably necessary to mitigate undue prejudice created by the statements made by others.

RULE 3.7 LAWYER AS WITNESS
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless except where:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Comment
[1] Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client.

Advocate-Witness Rule
[2] The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate an witness. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof
[3] To protect the tribunal, paragraph (a) prohibits a lawyer from simultaneously serving as advocate and necessary witness except in those circumstances specified in paragraphs (a)(1) through (a)(3). Paragraph (a)(1) recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical. Paragraph (a)(2) recognizes that where the testimony concerns the extent and value of legal services rendered in the action in which the testimony is offered, permitting the lawyers to testify avoids the need for a second trial with new counsel to resolve that issue. Moreover, in such a situation the judge has first hand knowledge of the matter in issue; hence, there is less dependence on the adversary process to test the credibility of the testimony.
[4] Apart from these two exceptions, paragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. The conflict of interest principles stated in Rules 1.7, 1.9, and 1.10 have The principle of imputed disqualification stated in Rule 1.10 has no application to this aspect of the problem.
[5] Because the tribunal is not likely to be misled when a lawyer acts as advocate in a trial in which another lawyer in the lawyer's firm will testify as a necessary witness, paragraph (b) permits the lawyer to do so except in situations involving a conflict of interest.

Conflict of Interest
[6] In determining if it is permissible to act as advocate in a trial in which the lawyer will be a necessary witness, the lawyer must also consider that the dual role may give rise to a conflict of interest that will require compliance with Rules 1.7 or 1.9. Whether the combination of roles involves an improper conflict of interest with respect to the client is determined by Rule 1.7 or 1.9. For example, if there is likely to be substantial conflict between the testimony of the client and that of the lawyer or a member of the lawyer's firm, the representation involves a conflict of interest that requires compliance with Rule 1.7.is improper. This would be true even though the lawyer might not be prohibited by paragraph (a) from simultaneously serving as advocate and witness because the lawyer's disqualification would work a substantial hardship on the client. Similarly, a lawyer who might be permitted to simultaneously serve as an advocate and a witness by paragraph (a)(3) might be precluded from doing so by Rule 1.9. The problem can arise whether the lawyer is called as a witness on behalf of the client or is called by the opposing party. Determining whether or not such a conflict exists is primarily the responsibility of the lawyer involved. If there is a conflict of interest, the lawyer must secure the client's informed consent, confirmed in writing. In some cases, the lawyer will be precluded from seeking the client's consent. See Rule 1.7. See Rule 1.0(b) for the definition of "confirmed in writing" and Rule 1.0(e) for the definition of "informed consent".See Comment to Rule 1.7. If a lawyer who is a member of a firm may not act as both advocate and witness by reason of conflict of interest, Rule 1.10 disqualifies the firm also.
[7] Paragraph (b) provides that a lawyer is not disqualified from serving as an advocate because a lawyer with whom the lawyer is associated in a firm is precluded from doing so by paragraph (a). If, however, the testifying lawyer would also be disqualified by Rule 1.7 or Rule 1.9 from representing the client in the matter, other lawyers in the firm will be precluded from representing the client by Rule 1.10 unless the client gives informed consent under the conditions stated in Rule 1.7.

RULE 3.8 SPECIAL RESPONSIBILITIES OF A PROSECUTOR
The prosecutor in a criminal case shall:
(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;
(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;
(c) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;
(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal;
(e)(g) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless the prosecutor reasonably believes:
(1) the information sought is not protected from disclosure by any applicable privilege;
(2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and
(3) there is no other feasible alternative to obtain the information;
(f) except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused and (e) exercise reasonable care efforts to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 or this Rule; and
(g) The lawyer upon whom a subpoena is served shall be afforded a reasonable time to file a motion to quash compulsory process of his/her attendance. Whenever a subpoena is issued for a lawyer who then moves to quash it by invoking attorney/client privilege, the prosecutor may not press further in any proceeding for the subpoenaed lawyer's appearance as a witness until an adversary in camera hearing has resulted in a judicial ruling which resolves all the challenges advanced in the lawyer's motion to quash.

Comment
[1] A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence. Precisely how far the prosecutor is required to go in this direction is a matter of debate and varies in different jurisdictions. Many jurisdictions have adopted the ABA Standard of Criminal Justice Relating to Prosecution Function, which in turn are the product of prolonged and careful deliberation by lawyers experienced in both criminal prosecution and defense. See also Rule 3.3(d), governing ex parte proceedings, among which grand jury proceedings are included. Applicable law may require other measures by the prosecutor, and knowing disregard of those obligations or a systematic abuse of prosecutorial discretion could constitute a violation of Rule 8.4.
[2] In some jurisdictions, a defendant may waive a preliminary hearing and thereby lose a valuable opportunity to challenge probable cause. Accordingly, prosecutors should not seek to obtain waivers of preliminary hearings or other important pretrial rights from unrepresented accused persons. Paragraph (c) does not apply, however, to an accused appearing pro se with the approval of the tribunal. Nor does it forbid the lawful questioning of an uncharged suspect who has knowingly waived the rights to counsel and silence.
[3] The exception in paragraph (d) recognizes that a prosecutor may seek an appropriate protective order from the tribunal if disclosure of information to the defense could result in substantial harm to an individual or to the public interest.
[4] Paragraphs (e) and (g) are is intended to limit the issuance of lawyer subpoenas in grand jury and other criminal proceedings to those situations in which there is a genuine need to intrude into the client-lawyer relationship. It ensures that a subpoena caused to be issued by a prosecutor to the lawyer requesting evidence about a past or present client of a lawyer will be subject to judicial review upon a timely challenge by the subpoenaed lawyer.
[5] Paragraph (f) supplements Rule 3.6, which prohibits extrajudicial statements that have a substantial likelihood of prejudicing an adjudicatory proceeding. In the context of a criminal prosecution, a prosecutor's extrajudicial statement can create the additional problem of increasing public condemnation of the accused. Although the announcement of an indictment, for example, will necessarily have severe consequences for the accused, a prosecutor can, and should, avoid comments which have no legitimate law enforcement purpose and have a substantial likelihood of increasing public opprobrium of the accused. Paragraph (f) prohibits such comments. Nothing in this Comment is intended to restrict the statements which a prosecutor may make which comply with Rule 3.6(b) or 3.6(c).
[6] Like other lawyers, prosecutors are subject to Rules 5.1 and 5.3, which relate to responsibilities regarding lawyers and nonlawyers who work for or are associated with the lawyer's office. Paragraph (f) reminds the prosecutor of the importance of these obligations in connection with the unique dangers of improper extrajudicial statements in a criminal case. In addition, under paragraph (f), Rule 3.8 applies to all government lawyers. The prosecuting attorney a prosecutor has an affirmative duty to make reasonable efforts to prevent law enforcement personnel and others associated with or assisting the prosecution from making extrajudicial statements, even when such persons are not under the direct supervision of the prosecutor.

RULE 3.9 ADVOCATE IN NONADJUDICATIVE PROCEEDINGS
A lawyer representing a client before a legislative body or administrative agency body or tribunal in a nonadjudicative proceeding shall disclose that the appearance is in a representative capacity and shall conform to the provisions of Rules 3.3 (a) through (c), 3.4 (a) through (c), and 3.5.

Comment
[1] In representation before bodies such as legislatures, municipal councils, and executive and administrative agencies acting in a rule-making or policy-making capacity, lawyers present facts, formulate issues and advance argument in the matters under consideration. The decision-making body, like a court, should be able to rely on the integrity of the submissions made to it. A lawyer appearing before such a body must should deal with the it tribunal honestly and in conformity with applicable rules of procedure. See Rules 3.3(a) through (c), 3.4(a) through (c) and 3.5.
[2] Lawyers have no exclusive right to appear before nonadjudicative bodies, as they do before a court. The requirements of this Rule therefore may subject lawyers to regulations inapplicable to advocates who are not lawyers. However, legislatures and administrative agencies have a right to expect lawyers to deal with them as they deal with courts.
[3] This Rule only applies when a lawyer represents a client in connection with an official hearing or meeting of a governmental agency or a legislative body to which the lawyer or the lawyer's client is presenting evidence or argument. It This Rule does not apply to representation of a client in a negotiation or other bilateral transaction with a governmental agency or in connection with an application for a license or other privilege or the client's compliance with generally applicable reporting requirements, such as the filing of income-tax returns. Nor does it apply to the representation of a client in connection with an investigation or examination of the client's affairs conducted by government investigators or examiners. Representation in such matters a transaction is governed by Rules 4.1 through 4.4.

TRANSACTIONS WITH PERSONS OTHER THAN CLIENTS

RULE 4.1 TRUTHFULNESS IN STATEMENTS TO OTHERS
In the course of representing a client a lawyer shall not knowingly:
(a) make a false statement of material fact or law to a third person; or
(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

Comment

Misrepresentation
[1] A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false. Misrepresentations can also occur by failure to act partially true but misleading statements or omissions that are the equivalent of affirmative false statements. For dishonest conduct that does not amount to a false statement or for misrepresentations by a lawyer other than in the course of representing a client, see Rule 8.4.

Statements of Fact
[2] This Rule refers to statements of fact. Whether a particular statement should be regarded as one of fact can depend on the circumstances. Under generally accepted conventions in negotiation, certain types of statements ordinarily are not taken as statements of material fact. Estimates of price or value placed on the subject of a transaction and a party's intentions as to an acceptable settlement of a claim are ordinarily in this category, and so is the existence of an undisclosed principal except where nondisclosure of the principal would constitute fraud. Lawyers should be mindful of their obligations under applicable law to avoid criminal and tortious misrepresentation.

Crime or Fraud by Client
[3] Under Rule 1.2(d), a lawyer is prohibited from counseling or assisting a client in conduct that the lawyer knows is criminal or fraudulent. Paragraph (b) recognizes that states a specific application of the principle set forth in Rule 1.2(d) and addresses the situation where a client's crime or fraud takes the form of a lie or misrepresentation. Ordinarily, a lawyer can avoid assisting a client's crime or fraud by withdrawing from the representation. Sometimes it may be necessary for the lawyer to give notice of the fact of withdrawal and to disaffirm an opinion, document, affirmation or the like. In extreme cases, substantive law may require a lawyer to disclose certain information relating to the representation to avoid being deemed to have assisted the client's crime or fraud. The requirement of If the lawyer can avoid assisting a client's crime or fraud only by disclosing the information, then under paragraph (b) the lawyer is required to do, unless the disclosure created by this paragraph is, however, subject to the obligations created is prohibited by Rule 1.6.

RULE 4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL
In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order. to do so.

Comment
[1] This Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounselled disclosure of information relating to the representation.
[2] This Rule applies to communications with any person, whether or not a party to a formal adjudicative proceeding, contract or negotiation or transaction, who is represented by counsel concerning the matter to which the communication relates.
[3] The Rule applies even though the represented person initiates or consents to the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule.
[4] This Rule does not prohibit communication with a representedperson, party or an employee or agent of such a person, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with non-lawyer representatives of the other regarding a separate matter. Nor does this Rule preclude communication with a represented person who is seeking advice from a lawyer who is not otherwise representing a client in the matter. A lawyer may not make a communication prohibited by this Rule through the acts of another. See Rule 8.4(a).Also, Parties to a matter may communicate directly with each other, and a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make. and a Also, a lawyer having independent justification or legal authorization for communicating with a represented person is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
[5] Communications authorized by law may include communications by a lawyer on behalf of a client who is exercising a constitutional or other legal right to communicate with the government. Communications authorized by law may also include constitutionally permissible investigative activities of lawyers representing governmental entities, directly or through investigative agents, prior to the commencement of criminal or civil enforcement proceedings. , when there is applicable judicial precedent that either has found the activity permissible under this Rule or has found this Rule inapplicable. When communicating with the accused in a criminal matter, a government lawyer must comply with this Rule in addition to honoring the constitutional rights of the accused. The fact that a communication does not violate a state or federal constitutional right is insufficient to establish that the communication is permissible under this Rule.
[6] A lawyer who is uncertain whether a communication with a represented person is permissible may seek a court order. A lawyer may also seek a court order in exceptional circumstances to authorize a communication that would otherwise be prohibited by this Rule, for example, where communication with a person represented by counsel is necessary to avoid reasonably certain injury.
[7] In the case of an represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or by a lawyer for another person or entity concerning the matter in representation with persons having managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with the that matter may be imputed to the organization for purposes of civil or criminal liability. or whose statement may constitute an admission on the part of the organization. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4.
[8]The prohibition on of communications with a represented person only applies, however, in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed. This means that the a lawyer has actual knowledge of the fact of the representation; but such actual knowledge may be inferred from the circumstances. See Rule 1.0(f). See Terminology. Thus, the a lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious.
[9] In the event the person with whom the lawyer communicates is not known to be represented by counsel in the matter, the lawyer's communications are subject to Rule 4.3.

RULE 4.3 DEALING WITH UNREPRESENTED PERSON
In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. A The lawyer shall not give legal advice to an unrepresented such a person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

Comment
[1] An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client. In order to avoid a misunderstanding, a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person. For misunderstandings that sometimes arise when a lawyer for an organization deals with an unrepresented constituent, see Rule 1.13(f).When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. Rule 4.3 is substantially identical to DR 7-104 (A)(2).
[2] The Rule distinguishes between situations involving unrepresented persons whose interests may be adverse to those of the lawyer's client and those in which the person's interests are not in conflict with the client's. In the former situation, the possibility that the lawyer will compromise the unrepresented person's interests is so great that the Rule prohibits the giving of any advice, apart from the advice to obtain counsel. Whether a lawyer is giving impermissible advice may depend on the experience and sophistication of the unrepresented person, as well as the setting in which the behavior and comments occur. This Rule does not prohibit a lawyer from negotiating the terms of a transaction or settling a dispute with an unrepresented person. So long as the lawyer has explained that the lawyer represents an adverse party and is not representing the person, the lawyer may inform the person of the terms on which the lawyer's client will enter into an agreement or settle a matter, prepare documents that require the person's signature and explain the lawyer's own view of the meaning of the document or the lawyer's view of the underlying legal obligations.

RULE 4.4 RESPECT FOR RIGHTS OF THIRD PERSONS
(a) In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.
(b) A lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender.

Comment
[1] Responsibility to a client requires a lawyer to subordinate the interests of others to those of the client, but that responsibility does not imply that a lawyer may disregard the rights of third persons. It is impractical to catalogue all such rights, but they include legal restrictions on methods of obtaining evidence from third persons and unwarranted intrusions into privileged relationships, such as the client-lawyer relationship.
[2] Paragraph (b) recognizes that lawyers sometimes receive documents that were mistakenly sent or produced by opposing parties or their lawyers. If a lawyer knows or reasonably should know that such a document was sent inadvertently, then this Rule requires the lawyer to promptly notify the sender in order to permit that person to take protective measures. Whether the lawyer is required to take additional steps, such as returning the original document, is a matter of law beyond the scope of these Rules, as is the question of whether the privileged status of a document has been waived. Similarly, this Rule does not address the legal duties of a lawyer who receives a document that the lawyer knows or reasonably should know may have been wrongfully obtained by the sending person. For purposes of this Rule, "document" includes e-mail or other electronic modes of transmission subject to being read or put into readable form.
[3] Some lawyers may choose to return a document unread, for example, when the lawyer learns before receiving the document that it was inadvertently sent to the wrong address. Where a lawyer is not required by applicable law to do so, the decision to voluntarily return such a document is a matter of professional judgment ordinarily reserved to the lawyer. See Rules 1.2 and 1.4.

LAW FIRMS AND ASSOCIATIONS

Rule 5.1 RESPONSIBILITIES OF PARTNERS, MANAGERS, AND A PARTNER OR SUPERVISORY LAWYERS
(a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.
(b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.
(c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if:
(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Comment
[1] Paragraphs (a) and (b) refer applies to lawyers who have managerial supervisory authority over the professional work of a firm. See Rule 1.0(c). or legal department of a government agency. This includes members of a partnership, and the shareholders in a law firm organized as a professional corporation, and members of other associations authorized to practice law; lawyers having comparable managerial authority in a legal services organization or a lawyers having supervisory authority in the law department of an enterprise or government agency; and lawyers who have intermediate managerial responsibilities in a firm. Paragraph (b) applies to lawyers who have supervisory authority over the work of other lawyers in a firm.
[2] Paragraph (a) requires lawyers with managerial authority within a firm to make reasonable efforts to establish internal policies and procedures designed to provide reasonable assurance that all lawyers in the firm will conform to the Rules of Professional Conduct. Such policies and procedures include those designed to detect and resolve conflicts of interest, identify dates by which actions must be taken in pending matters, account for client funds and property and ensure that inexperienced lawyers are properly supervised.
[3] Other The measures that may be required to fulfill the responsibility prescribed in paragraphs (a) and (b) can depend on the firm's structure and the nature of its practice. In a small firm of experienced lawyers, informal supervision and periodic review of compliance with the required systems ordinarily will suffice. occasional admonition ordinarily might be sufficient. In a large firm, or in practice situations in which intensely difficult ethical problems frequently arise, more elaborate measures procedures may be necessary. Some firms, for example, have a procedure whereby junior lawyers can make confidential referral of ethical problems directly to a designated senior partner or special committee. See Rule 5.2. Firms, whether large or small, may also rely on continuing legal education in professional ethics. In any event, the ethical atmosphere of a firm can influence the conduct of all its members and the partners may not assume that all lawyers associated with the firm will inevitably conform to the Rules.
[4] Paragraph (c)(1) expresses a general principle of personal responsibility for acts of another. See also Rule 8.4(a).
[5] Paragraph (c)(2) defines the duty of a partner or other lawyer having comparable managerial authority in a law firm, as well as a lawyer who has direct supervisory authority over performance of specific legal work by another lawyer. Whether a lawyer has such supervisory authority in particular circumstances is a question of fact. Partners and lawyers with comparable authority of a private firm have at least indirect responsibility for all work being done by the firm, while a partner or manager in charge of a particular matter ordinarily also has supervisory responsibility for the work of has direct authority over other firm lawyers engaged in the matter. Appropriate remedial action by a partner or managing lawyer would depend on the immediacy of the lawyer's partner's involvement and the seriousness of the misconduct. A The supervisor is required to intervene to prevent avoidable consequences of misconduct if the supervisor knows that the misconduct occurred. Thus, if a supervising lawyer knows that a subordinate misrepresented a matter to an opposing party in negotiation, the supervisor as well as the subordinate has a duty to correct the resulting misapprehension.
[6] Professional misconduct by a lawyer under supervision could reveal a violation of paragraph (b) on the part of the supervisory lawyer even though it does not entail a violation of paragraph (c) because there was no direction, ratification or knowledge of the violation.
[7] Apart from this Rule and Rule 8.4(a), a lawyer does not have disciplinary liability for the conduct of a partner, associate or subordinate. Whether a lawyer may be liable civilly or criminally for another lawyer's conduct is a question of law beyond the scope of these Rules.
[8] The duties imposed by this Rule on managing and supervising lawyers do not alter the personal duty of each lawyer in a firm to abide by the Rules of Professional Conduct. See Rule 5.2(a).

RULE 5.2 RESPONSIBILITIES OF A SUBORDINATE LAWYER
(a) A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person.
(b) A subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty.

Comment
[1] Although a lawyer is not relieved of responsibility for a violation by the fact that the lawyer acted at the direction of a supervisor, that fact may be relevant in determining whether a lawyer had the knowledge required to render conduct a violation of the Rules. For example, if a subordinate filed a frivolous pleading at the direction of a supervisor, the subordinate would not be guilty of a professional violation unless the subordinate knew of the document's frivolous character.
[2] When lawyers in a supervisor-subordinate relationship encounter a matter involving professional judgment as to ethical duty, the supervisor may assume responsibility for making the judgment. Otherwise a consistent course of action or position could not be taken. If the question can reasonably be answered only one way, the duty of both lawyers is clear and they are equally responsible for fulfilling it. However, if the question is reasonably arguable, someone has to decide upon the course of action. That authority ordinarily reposes in the supervisor, and a subordinate may be guided accordingly. For example, if a question arises whether the interests of two clients conflict under Rule 1.7, the supervisor's reasonable resolution of the question should protect the subordinate professionally if the resolution is subsequently challenged.

RULE 5.3 RESPONSIBILITIES REGARDING NONLAWYER ASSISTANTS
With respect to a nonlawyer employed or retained by or associated with a lawyer:
(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Comment
[1] Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals. Such assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services. A lawyer must assure that should give such assistants receive appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and should be responsible for their work product. The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.
[2] Paragraph (a) requires lawyers with managerial authority within a law firm to make reasonable efforts to establish internal policies and procedures designed to provide reasonable assurance that nonlawyers in the firm will act in a way compatible with the Rules of Professional Conduct. See Comment [1] to Rule 5.1. Paragraph (b) applies to lawyers who have supervisory authority over the work of a nonlawyer. Paragraph (c) specifies the circumstances in which a lawyer is responsible for conduct of a nonlawyer that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer.

RULE 5.4 PROFESSIONAL INDEPENDENCE OF A LAWYER
(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:
(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;
(2)(3) a lawyer who or law firm which purchases the practice of a deceased, disabled, or disappeared lawyer may, pursuant to the provisions of Rule 1.17, may pay to the estate or other lawyer or representative of that lawyer the agreed-upon purchase price; and
(2A) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer;
(3)(4) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement; and
(4) [The concept of this subsection of the ABA Model Rule is addressed in the Comment.]
(b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.
(c) A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.
(d) A lawyer shall not practice with or in the form of a professional corporation or association authorized to practice law for a profit, if:
(1) a nonlawyer owns any interest therein, except that a fiduciary representative of the estate of a lawyer may hold the stock or interest of the lawyer for a reasonable time during administration;
(2) a nonlawyer, except the corporate secretary, is a corporate director or officer thereof or occupies the position of similar responsibility in any form of association other than a corporation; or
(3) a nonlawyer has the right to direct or control the professional judgment of a lawyer.

Comment
[1] The provisions of this Rule express traditional limitations on sharing fees. These limitations are to protect the lawyer's professional independence of judgment. Where someone other than the client pays the lawyer's fee or salary, or recommends employment of the lawyer, that arrangement does not modify the lawyer's obligation to the client. As stated in paragraph (c), such arrangements should not interfere with the lawyer's professional judgment.
[1A] Subsection (a) does not prohibit a lawyer from voluntarily sharing court-awarded legal fees with a nonprofit organization that employed, retained or recommended employment of the lawyer in the matter. This shall not be deemed a sharing of attorneys fees.
[2]This Rule also expresses traditional limitations on permitting a third party to direct or regulate the lawyer's professional judgment in rendering legal services to another. See also Rule 1.8(f) (lawyer may accept compensation from a third party as long as there is no interference with the lawyer's independent professional judgment and the client gives informed consent.)

RULE 5.5 UNAUTHORIZED PRACTICE OF LAW; MULTI JURISDICTIONAL PRACTICE OF LAW
A lawyer shall not:
(a) A lawyer shall not practice law in a jurisdiction in violation of where doing so violates the regulation of the legal profession in that jurisdiction, or assist another in doing so.
(b) A lawyer who is not admitted to practice in this jurisdiction shall not: assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.
(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or
(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.
(c) Subject to the provisions of 5.5(a), a lawyer admitted in a United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in a jurisdiction where not admitted to practice that:
(1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter;
(2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;
(3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission; or
(4) are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.
(d) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that:
(1) are provided to the lawyer's employer or its organizational affiliates in connection with the employer's matters, provided the employer does not render legal services to third persons and are not services for which the forum requires pro hac vice admission; or
(2) are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.

Comment
[1] A lawyer may practice law only in a jurisdiction in which the lawyer is authorized to practice. A lawyer may be admitted to practice law in a jurisdiction on a regular basis or may be authorized by court rule or order or by law to practice for a limited purpose or on a restricted basis. Paragraph (a) applies to unauthorized practice of law by a lawyer, whether through the lawyer's direct action or by the lawyer assisting another person.
[2] The definition of the practice of law is established by law and varies from one jurisdiction to another. Whatever the definition, limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons. This Rule Paragraph (b) does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work. See Rule 5.3.
[3] Likewise, A lawyer may provide it does not prohibit lawyers from providing professional advice and instruction to nonlawyers whose employment requires knowledge of law; for example, claims adjusters, employees of financial or commercial institutions, social workers, accountants and persons employed in government agencies. In addition, a lawyer may counsel nonlawyers who wish to proceed pro se.
[4] Admission to practice law in Oklahoma is controlled by the Rules Governing Admission to the Practice of Law in the State of Oklahoma (Oklahoma Statutes Title 5, chapter 1, appendix 5 (2005)) and is administered by the Oklahoma Board of Bar Examiners. Other than as authorized by law or this Rule, a lawyer who is not admitted to practice generally in this jurisdiction violates paragraph (b) if the lawyer establishes an office or other systematic and continuous presence in this jurisdiction for the practice of law. Presence may be systematic and continuous even if the lawyer is not physically present here. Such a lawyer must not hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction. See also Rules 7.1(a) and 7.5(b).
[5] There are occasions in which a lawyer admitted to practice in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in a jurisdiction where not admitted under circumstances that do not create an unreasonable risk to the interests of their clients, the public or the courts. Paragraph (c) identifies four such circumstances. The fact that conduct is not so identified does not imply that the conduct is or is not authorized. With the exception of paragraphs (d)(1) and (d)(2), this Rule does not authorize a lawyer to establish an office or other systematic and continuous presence in this jurisdiction without being admitted to practice generally here.
[6] There is no single test to determine whether a lawyer's services are provided on a "temporary basis" in a jurisdiction where not admitted and may therefore be permissible under paragraph (c). Services may be "temporary" even though the lawyer provides services in a jurisdiction where not admitted on a recurring basis, or for an extended period of time, as when the lawyer is representing a client in a single lengthy negotiation or litigation. Paragraph (c) applies to both lawyers admitted in this jurisdiction and lawyers admitted to other jurisdictions. However, since temporary practice involves more than one jurisdiction, paragraph (c) contemplates that any temporary practice must consider the applicable rules or law relating to the unauthorized practice of law of both jurisdictions. See also Rule 8.5.
[7] Paragraphs (c) and (d) apply to lawyers who are admitted to practice law in any United States jurisdiction, which includes the District of Columbia and any state, territory or commonwealth of the United States. The word "admitted" in paragraph (c) contemplates that the lawyer is authorized to practice in the jurisdiction in which the lawyer is admitted and excludes a lawyer who while technically admitted is not authorized to practice, because, for example, the lawyer is on inactive status.
[8] Paragraph (c)(1) recognizes that the interests of clients and the public are protected if a lawyer admitted only in another jurisdiction associates with a lawyer licensed to practice in this jurisdiction. For this paragraph to apply, however, the lawyer admitted to practice in this jurisdiction must actively participate in and share responsibility for the representation of the client.
[9] Lawyers not admitted to practice generally in a jurisdiction may be authorized by law or order of a tribunal or an administrative agency to appear before the tribunal or agency. This authority may be granted pursuant to formal rules governing admission pro hac vice or pursuant to informal practice of the tribunal or agency. Under paragraph (c)(2), a lawyer does not violate this Rule when the lawyer appears before a tribunal or agency pursuant to such authority. To the extent that a court rule or other law of this jurisdiction requires a lawyer who is not admitted to practice in this jurisdiction to obtain admission pro hac vice before appearing before a tribunal or administrative agency, this Rule requires the lawyer to obtain that authority.
[10] Paragraph (c)(2) provides that a lawyer rendering services in a jurisdiction where not admitted and on a temporary basis does not violate this Rule when the lawyer engages in conduct in anticipation of a proceeding or hearing in a jurisdiction in which the lawyer is authorized to practice law or in which the lawyer reasonably expects to be admitted pro hac vice. Examples of such conduct include meetings with the client, interviews of potential witnesses and the review of documents. Similarly, a lawyer admitted only in another jurisdiction may engage in conduct temporarily in a jurisdiction where not admitted in connection with pending litigation in another jurisdiction in which the lawyer is or reasonably expects to be authorized to appear, including taking depositions in this jurisdiction.
[11] When a lawyer has been or reasonably expects to be admitted to appear before a court or administrative agency, paragraph (c)(2) also permits conduct by lawyers who are associated with that lawyer in the matter, but who do not expect to appear before the court or administrative agency. For example, subordinate lawyers may conduct research, review documents, and attend meetings with witnesses in support of the lawyer responsible for the litigation.
[12] Paragraph (c)(3) permits a lawyer admitted to practice law in another jurisdiction to perform services on a temporary basis in a jurisdiction where not admitted if those services are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice. The lawyer, however, must obtain admission pro hac vice in the case of a court-annexed arbitration or mediation or otherwise if court rules or law so require.
[13] Paragraph (c)(4) permits a lawyer admitted in another jurisdiction to provide certain legal services on a temporary basis in a jurisdiction where not admitted that arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted but are not within paragraphs (c)(2) or (c)(3). These services include both legal services and services that nonlawyers may perform but that are considered the practice of law when performed by lawyers.
[14] Paragraphs (c)(3) and (c)(4) require that the services arise out of or be reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted. A variety of factors evidence such a relationship. The lawyer's client may have been previously represented by the lawyer, or may be resident in or have substantial contacts with the jurisdiction in which the lawyer is admitted. The matter, although involving other jurisdictions, may have a significant connection with that jurisdiction. In other cases, significant aspects of the lawyer's work might be conducted in that jurisdiction or a significant aspect of the matter may involve the law of that jurisdiction. The necessary relationship might arise when the client's activities or the legal issues involve multiple jurisdictions, such as when the officers of a multinational corporation survey potential business sites and seek the services of their lawyer in assessing the relative merits of each. In addition, the services may draw on the lawyer's recognized expertise developed through the regular practice of law on behalf of clients in matters involving a particular body of federal, nationally-uniform, foreign, or international law.
[15] Paragraph (d) identifies two circumstances in which a lawyer who is admitted to practice in another United States jurisdiction, and is not disbarred or suspended from practice in any jurisdiction, may establish an office or other systematic and continuous presence in this jurisdiction for the practice of law. Except as provided in paragraphs (d)(1) and (d)(2), a lawyer who is admitted to practice law in another jurisdiction and who establishes an office or other systematic or continuous presence in this jurisdiction must become admitted to practice law generally in this jurisdiction. See Rules Governing Admission to the Practice of Law in the State of Oklahoma, Supra.
[16] Paragraph (d)(1) applies to a lawyer who is employed to provide legal services to the employer or its organizational affiliates, i.e., entities that control, are controlled by, or are under common control with the employer provided the employer does not render legal service to third persons. This paragraph does not authorize the provision of personal legal services to the employer's officers, employees, or other third persons. The paragraph applies to in-house corporate lawyers, government lawyers and others who are employed to render legal services to the employer provided, the employer does not render legal services to third parties. The lawyer's ability to represent the employer outside the jurisdiction in which the lawyer is licensed generally serves the interests of the employer and does not create an unreasonable risk to the client and others because the employer is well situated to assess the lawyer's qualifications and the quality of the lawyer's work.
[17] If an employed lawyer establishes an office or other systematic presence in this jurisdiction for the purpose of rendering legal services to the employer, the lawyer may be subject to registration or other requirements, including assessments for client protection funds and mandatory continuing legal education.
[18] Paragraph (d)(2) recognizes that a lawyer may provide legal services in a jurisdiction in which the lawyer is not licensed when authorized to do so by federal or other law, which includes statute, court rule, executive regulation or judicial precedent.
[19] A lawyer who practices law in a jurisdiction where not admitted to practice pursuant to paragraphs (c) or (d) or otherwise is subject to the disciplinary authority of this jurisdiction. See Rule 8.5(a).
[20] In some circumstances, a lawyer who practices law in a jurisdiction where not admitted to practice pursuant to paragraphs (c) or (d) may have to inform the client that the lawyer is not licensed to practice law in the jurisdiction where not admitted to practice. For example, that may be required when the representation occurs primarily in this jurisdiction and requires knowledge of the law of this jurisdiction. See Rule 1.4(b).
[21] Paragraphs (c) and (d) do not authorize communications advertising legal services to prospective clients in a jurisdiction by lawyers who are not admitted to practice in such jurisdiction. Whether and how lawyers may communicate the availability of their services to prospective clients in this jurisdiction is governed by Rules 7.1 to 7.5.

RULE 5.6 RESTRICTIONS ON RIGHT TO PRACTICE
A lawyer shall not participate in offering or making:
(a) a partnership, shareholders, operating, employment, or other similar type of or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy between private parties.

Comment
[1] An agreement restricting the right of lawyers partners or associates to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer. Paragraph (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.
[2] Paragraph (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client.
[3] This Rule does not apply to prohibit restrictions that may be included in the terms of the sale of a law practice pursuant to Rule 1.17.

RULE 5.7 RESPONSIBILITIES REGARDING LAW-RELATED SERVICES
(a) A lawyer shall be subject to the Rules of Professional Conduct with respect to the provision of law-related services, as defined in paragraph (b), if the law-related services are provided:
(1) By the lawyer in circumstances that are not distinct from the lawyer's provision of legal services to clients; or
(2) In other circumstances by an entity controlled by the lawyer individually or with others if the lawyer fails to take reasonable measures to assure that a person obtaining the law-related services knows that the services are not legal services and that the protections of the client-lawyer relationship do not exist.
(b) The term "law-related services" denotes services that might reasonably be performed in conjunction with and in substance are related to the provision of legal services, and that are not prohibited as unauthorized practice of law when provided by a non-lawyer.

Comment
[1] When a lawyer performs law-related services or controls an organization that does so, there exists the potential for ethical problems. Principal among these is the possibility that the person for whom the law-related services are performed fails to understand that the services may not carry with them the protections normally afforded as part of the client-lawyer relationship. The recipient of the law-related services may expect, for example, that the protection of client confidences, prohibitions against representation of persons with conflicting interests, and obligations of a lawyer to maintain professional independence apply to the provision of law-related services when that may not be the case.
[2] Rule 5.7 applies to the provision of law-related services by a lawyer even when the lawyer does not provide any legal services to the person for whom the law-related services are performed and whether the law-related services are performed through a law firm or a separate entity. The Rule identifies the circumstances in which all of the Rules of Professional Conduct apply to the provision of law-related services. Even when those circumstances do not exist, however, the conduct of a lawyer involved in the provision of law-related services is subject to those Rules that apply generally to lawyer conduct, regardless of whether the conduct involves the provision of legal services. See, e.g., Rule 8.4.
[3] When, law-related services are provided by a lawyer, under circumstances that are not distinct from the lawyer's provision of legal services to clients the lawyer in providing the law-related services must adhere to the requirements of the Rules of Professional Conduct as provided in paragraph (a)(1). Even when the law-related and legal services are provided in circumstances that are distinct from each other, for example through separate entities or different support staff with the law firm, the Rules of Professional Conduct apply to the lawyer as provided in paragraph (a)(2) unless the lawyer takes reasonable measures to assure that the recipient of the law-related services knows that the services are not legal services and the protections of the client-lawyer relationship do not apply.
[4] Law-related services also may be provided through an entity that is distinct from that through which the lawyer provides legal services. If the lawyer individually or with others has control of such an entity's operations, the Rule requires the lawyer to take reasonable measures to assure that each person using the services of the entity knows that the services provided by the entity are not legal services and that the Rules of Professional Conduct that relate to the client-lawyer relationship do not apply. A lawyer's control of an entity extends to the ability to direct its operation. Whether a lawyer has such control will depend upon the circumstances of the particular case.
[5] When a client-lawyer relationship exists with a person who is referred by a lawyer to a separate law-related service entity controlled by the lawyer, individually or with others, the lawyer must comply with Rule 1.8(a).
[6] In taking the reasonable measures referred to in paragraph (a)(2) to assure that a person using law-related services understands the practical effect or significance of the inapplicability of the Rules of Professional Conduct, the lawyer should communicate to the person receiving the law-related services, in a manner sufficient to assure that the person understands the significance of the fact, that the relationship of the person to the business entity will not be a client-lawyer relationship. The nature and scope of such measures will depend upon the facts and may include, but not be limited to, the following:
(1) Providing written notice of the lawyer's interest in the entity before providing the law-related services, with written acknowledgment of the notice by the person;
(2) Keeping the offices of the lawyer and the law-related business physically separate;
(3) Providing disclaimers in any marketing or advertising; and
(4) Maintaining separate letterhead, or providing clear notices of the relationship between the lawyer and the entity. See OBA Adv. Op. 316.
[7] The burden is upon the lawyer to show that the lawyer has taken reasonable measures under the circumstances to communicate the desired understanding. For instance, a sophisticated user of law-related services, such as a publicly held corporation, may require a lesser explanation than someone unaccustomed to making distinctions between legal services and law-related services, such as an individual seeking tax advice from a lawyer-accountant or investigative services in connection with a lawsuit.
[8] Regardless of the sophistication of potential recipients of law-related services, a lawyer should take special care to keep separate the provision of law-related and legal services in order to minimize the risk that the recipient will assume that the law-related services are legal services. The risk of such confusion is especially acute when the lawyer renders both types of services with respect to the same matter. Under some circumstances the legal and law-related services may be so closely entwined that they cannot be distinguished from each other, and the requirement of disclosure and consultation imposed by paragraph (a)(2) of the Rule cannot be met. In such a case a lawyer will be responsible for assuring that both the lawyer's conduct and, to the extent required by Rule 5.3, that of non-lawyer employees in the distinct entity that the lawyer controls, complies in all respects with the Rules of Professional Conduct.
[9] A broad range of economic and other interests of clients may be served by lawyers engaging in the delivery of law-related services. Examples of law-related services include providing title insurance, financial planning, accounting, trust services, real estate counseling, legislative lobbying, economic analysis, social work, psychological counseling, tax preparation, and patent, medical or environmental consulting.
[10] When a lawyer is obliged to accord the recipients of such services the protections of those Rules that apply to the client-lawyer relationship, the lawyer must take special care to heed the proscriptions of the Rules addressing conflict of interest (Rules 1.7 through 1.11, especially Rules 1.7(b) and 1.8(a), (b) and (f)), and to scrupulously adhere to the requirements of Rule 1.6 relating to disclosure of confidential information. The promotion of the law-related services must also in all respects comply with Rules 7.1 through 7.3, dealing with advertising and solicitation. In that regard, lawyers should take special care to identify the obligations that may be imposed as a result of a jurisdiction's law.
[11] When the full protections of all of the Rules of Professional Conduct do not apply to the provision of law-related services, principles of law external to the Rules, for example, the law of principal and agent, govern the legal duties owed to those receiving the services. Those other legal principles may establish a different degree of protection for the recipient with respect to confidentiality of information, conflicts of interest and permissible business relationships with clients. See also Rule 8.4 (Misconduct). However, even if the Rules' protections do not fully apply to the delivery of law-related services, the lawyer should remember that the rules still apply to the lawyer's activities as a lawyer, most notably when interacting with the law-related business. For example, the lawyer is prohibited from disclosing to the law-related business information relating to the representation of a client without the client's consent, even though the client is also a customer or client of the law-related business (see Rule 1.6), except where otherwise authorized or required by the rules.

PUBLIC SERVICE RULE 6.1 PRO BONO PUBIC SERVICE
A lawyer should render public interest legal service.
A lawyer may discharge this responsibility by:
(a) providing professional services at no fee or a reduced fee to persons of limited means or to public service or charitable groups or organizations;
(b) serving without compensation in public interest activities that improve the law, the legal system, or the legal profession; or
(c) financial support for organizations that provide legal services to persons of limited means.

Comment
[1] The ABA House of Delegates has formally acknowledged "the basic responsibility of each lawyer engaged in the practice of law to provide public interest legal services" without fee, or at a substantially reduced fee, in one or more of the following areas: poverty law, civil rights law, public rights law, charitable organization representation and the administration of justice. This Rule expresses that policy but is not intended to be enforced through disciplinary process.
[2] The rights and responsibilities of individuals and organizations in the United States are increasingly defined in legal terms. As a consequence, legal assistance in coping with the web of statutes, rules and regulations is imperative for persons of modest and limited means, as well as for the relatively well-to-do.
[3] The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in or otherwise support the provisions of legal services to the disadvantaged. The provision of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer as well as the profession generally, but the efforts of individual lawyers are often not enough to meet the need. Thus, it has been necessary for the profession and government to institute additional programs to provide legal services. Accordingly, legal aid offices, lawyer referral services and other related programs have been developed, and others will be developed by the profession and government. Every lawyer should support all proper efforts to meet this need for legal services.

RULE 6.2 ACCEPTING APPOINTMENTS
A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:
(a) representing the client is likely to result in violation of the Rules of Professional Conduct or other law;
(b) representing the client is likely to result in an unreasonable financial burden on the lawyer; or
(c) the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client.

Comment
[1] A lawyer ordinarily is not obliged to accept a client whose character or cause the lawyer regards as repugnant. The lawyer's freedom to select clients is, however, qualified. All lawyers have a responsibility to assist in providing pro bono publico service. See Rule 6.1. An individual lawyer fulfills this responsibility by accepting a fair share of unpopular matters of indigent or unpopular clients. A lawyer may also be subject to appointment by a court to serve unpopular clients or persons unable to afford legal services.

Appointed Counsel
[2] For good cause a lawyer may seek to decline an appointment to represent a person who cannot afford to retain counsel or whose cause is unpopular. Good cause exists if the lawyer could not handle the matter competently, see Rule 1.1, or if undertaking the representation would result in an improper conflict of interest, for example, when the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client. A lawyer may also seek to decline an appointment if acceptance would be unreasonably burdensome, for example, when it would impose a financial sacrifice so great as to be unjust.
[3]An appointed lawyer has the same obligations to the client as retained counsel, including the obligations of loyalty and confidentiality, and is subject to the same limitations on the client-lawyer relationship, such as the obligation to refrain from assisting the client in violation of the Rules.

RULE 6.3 MEMBERSHIP IN LEGAL SERVICES ORGANIZATION
A lawyer may serve as a director, officer or member of a legal services organization, apart from the law firm in which the lawyer practices, notwithstanding that the organization serves persons having interests adverse to a client of the lawyer. The lawyer shall not knowingly participate in a decision or action of the organization:
(a) if participating in the decision or action would be incompatible with the lawyer's obligations to a client under Rule 1.7; or
(b) where the decision or action could have a material adverse effect on the representation of a client of the organization whose interests are adverse to a client of the lawyer.

Comment
[1] Lawyers should be encouraged to support and participate in legal service organizations. A lawyer who is an officer or a member of such an organization does not thereby have a client-lawyer relationship with persons served by the organization. However, there is potential conflict between the interests of such persons and the interests of the lawyer's clients. If the possibility of such conflict disqualified a lawyer from serving on the board of a legal services organization, the profession's involvement in such organizations would be severely curtailed.
[2] It may be necessary in appropriate cases to reassure a client of the organization that the representation will not be affected by conflicting loyalties of a member of the board. Established, written policies in this respect can enhance the credibility of such assurances.

RULE 6.4 LAW REFORM ACTIVITIES AFFECTING CLIENT INTERESTS
A lawyer may serve as a director, officer or member of an organization involved in reform of the law or its administration notwithstanding that the reform may affect the interests of a client of the lawyer. When the lawyer knows that the interests of a client may be materially affected by a decision in which the lawyer participates, the lawyer shall disclose that fact but need not identify the client.

Comment
[1] Lawyers involved in organizations seeking law reform generally do not have a client-lawyer relationship with the organization. Otherwise, it might follow that a lawyer could not be involved in a bar association law reform program that might indirectly affect a client. See also Rule 1.2 (b). For example, a lawyer specializing in antitrust litigation might be regarded as disqualified from participating in drafting revisions of rules governing that subject. In determining the nature and scope of participation in such activities, a lawyer should be mindful of obligations to clients under other Rules, particularly Rule 1.7. A lawyer is professionally obligated to protect the integrity of the program by making an appropriate disclosure within the organization when the lawyer knows a private client might be materially affected.

Oklahoma Modification
Oklahoma substituted the word "affected" instead of "benefitted" because of its broader scope and consistency with the Rule Title.

RULE 6.5 NONPROFIT AND COURT-ANNEXED LIMITED LEGAL SERVICES PROGRAMS
(a) A lawyer who, under the auspices of a program sponsored by a nonprofit organization or court, provides short-term limited legal services to a client without expectation by either the lawyer or the client that the lawyer will provide continuing representation in the matter:
(1) is subject to Rules 1.7 and 1.9(a) only if the lawyer knows that the representation of the client involves a conflict of interest; and
(2) is subject to Rule 1.10 only if the lawyer knows that another lawyer associated with the lawyer in a law firm is disqualified by Rule 1.7 or 1.9(a) with respect to the matter.
(b) Except as provided in paragraph (a)(2), Rule 1.10 is inapplicable to a representation governed by this Rule.

Comment
[1] Legal services organizations, courts and various nonprofit organizations have established programs through which lawyers provide short-term limited legal services  such as advice or the completion of legal forms  that will assist persons to address their legal problems without further representation by a lawyer. In these programs, such as legal-advice hotlines, advice-only clinics or pro se counseling programs, a client-lawyer relationship is established, but there is no expectation that the lawyer's representation of the client will continue beyond the limited consultation. Such programs are normally operated under circumstances in which it is not feasible for a lawyer to systematically screen for conflicts of interest as is generally required before undertaking a representation. See, e.g., Rules 1.7, 1.9 and 1.10.
[2] A lawyer who provides short-term limited legal services pursuant to this Rule must secure the client's informed consent to the limited scope of the representation. See Rule 1.2(c). If a short-term limited representation would not be reasonable under the circumstances, the lawyer may offer advice to the client but must also advise the client of the need for further assistance of counsel. Except as provided in this Rule, the Rules of Professional Conduct, including Rules 1.6 and 1.9(c), are applicable to the limited representation.
[3] Because a lawyer who is representing a client in the circumstances addressed by this Rule ordinarily is not able to check systematically for conflicts of interest, paragraph (a) requires compliance with Rules 1.7 or 1.9(a) only if the lawyer knows that the representation presents a conflict of interest for the lawyer, and with Rule 1.10 only if the lawyer knows that another lawyer in the lawyer's firm is disqualified by Rules 1.7 or 1.9(a) in the matter.
[4] Because the limited nature of the services significantly reduces the risk of conflicts of interest with other matters being handled by the lawyer's firm, paragraph (b) provides that Rule 1.10 is inapplicable to a representation governed by this Rule except as provided by paragraph (a)(2). Paragraph (a)(2) requires the participating lawyer to comply with Rule 1.10 when the lawyer knows that the lawyer's firm is disqualified by Rules 1.7 or 1.9(a). By virtue of paragraph (b), however, a lawyer's participation in a short-term limited legal services program will not preclude the lawyer's firm from undertaking or continuing the representation of a client with interests adverse to a client being represented under the program's auspices. Nor will the personal disqualification of a lawyer participating in the program be imputed to other lawyers participating in the program.
[5] If, after commencing a short-term limited representation in accordance with this Rule, a lawyer undertakes to represent the client in the matter on an ongoing basis, Rules 1.7, 1.9(a) and 1.10 become applicable.

INFORMATION ABOUT LEGAL SERVICES RULE 7.1 COMMUNICATIONS CONCERNING A LAWYER'S SERVICES
A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it is: (1) a communication which contains a material misrepresentation of fact or law, or omits a fact information necessary to make the communication considered as a whole not materially misleading.
(2) a communication which is likely to create an unjustified expectation about the results the lawyer can achieve;
(3) a communication which states or implies the lawyer can achieve results by means that violate a law, rule, regulation or judicial, executive or administrative order or the Rules of Professional Conduct; or
(4) a communication which compares the lawyer's services with other lawyer's services when the comparison cannot be factually substantiated.

Comment
[1] This Rule governs all communications about a lawyer's services, including advertising permitted by Rule 7.2. Whatever means are used to make known a lawyer's services, statements about them must should be truthful.
[2] Truthful statements that are misleading are also prohibited by this Rule. A truthful statement is misleading if it omits a fact necessary to make the lawyer's communication considered as a whole not materially misleading. A truthful statement is also misleading if there is a substantial likelihood that it will lead a reasonable person to formulate a specific conclusion about the lawyer or the lawyer's services for which there is no reasonable factual foundation.
[3] An advertisement that truthfully reports a lawyer's achievements on behalf of clients or former clients may be misleading if presented so as to lead a reasonable person to form an unjustified expectation that the same results could be obtained for other clients in similar matters without reference to the specific factual and legal circumstances of each client's case. Similarly, an unsubstantiated comparison of the lawyer's services or fees with the services or fees of other lawyers may be misleading if presented with such specificity as would lead a reasonable person to conclude that the comparison can be substantiated. The inclusion of an appropriate disclaimer or qualifying language may preclude a finding that a statement is likely to create unjustified expectations or otherwise mislead a prospective client.
[4] See also Rule 8.4(e) for the prohibition against stating or implying an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct.
The prohibition in paragraph (a)(2) of statements that may create "unjustified expectations" would ordinarily preclude advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer's record in obtaining favorable verdicts, and advertisements containing client endorsements. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.

RULE 7.2 ADVERTISING
(a) Subject to the requirements of Rules 7.1 and 7.3, a lawyer may advertise services through written, recorded or electronic communication, including public media. such as a telephone directory, legal directory, newspaper or other periodical, outdoor advertising, radio or television or through written or recorded communication.
(b) A lawyer shall not give anything of value, directly or indirectly, to a person for recommending the lawyer's services except that a lawyer may
(1) pay the reasonable costs of advertisements or communications permitted by this Rule;
(2) pay the usual charges of a legal service plan or a not-for-profit or qualified lawyer referral service. A qualified lawyer referral service is a lawyer referral service that has been approved by an appropriate regulatory authority:
(3) pay for a law practice in accordance with Rule 1.17; and
(4) without paying anything solely for the referral, refer clients to another lawyer or a nonlawyer professional pursuant to an agreement not otherwise prohibited under these Rules that provides for the other person to refer clients or customers to the lawyer, if
(i) the reciprocal referral agreement is not exclusive, and
(ii) the client is informed of the existence and nature of the agreement.
(b) A copy or recording of an advertisement or communication shall be kept for three (3) years after its dissemination along with a record of where and when it was used.
(c) If an advertisement is mailed, the lawyer shall maintain those records necessary to determine the names of those persons to whom the advertisement is mailed for a period of three (3) years.
(c) Any communication made pursuant to this rule shall include the name and office address of at least one lawyer or law firm responsible for its content.
(e) Direct mail solicitations sent to targeted recipients (i.e., written or recorded communications from a lawyer soliciting professional employment from a prospective client known to be in need of legal services in a particular matter) are permitted, subject to the conditions set forth in this rule and in Rules 7.1 and 7.3, provided that:
(1) Each such communication shall contain at the end thereof the statement: "If you find anything in this communication to be inaccurate or misleading, you may report the same by writing to the General Counsel of the Oklahoma Bar Association, P.O. Box 53036, Oklahoma City, Oklahoma 73152, or by calling 1-800-522-8065." In the case of a written communication, such statement shall be in a type size as large as the largest print contained in the communication.
(2) The conditions of subparagraph (e)(1) above shall not be applicable if the written communication is directed to a person with whom direct contact would be permitted by Rule 7.3 (b).
(f) Every written or recorded communication from a lawyer soliciting professional employment from a prospective client shall include the words: "This is an advertisement." These words shall appear on the front of each envelope in which an advertisement of a lawyer is mailed or on the front of each post card, and at the top of any written communication contained in an envelope, printed in a type size as large as the largest print appearing on the face of the envelope, post card or container, and, in case of a recorded communication, the words "This is an advertisement" shall appear both on the container (and label, if any), as well as at the beginning and end of the communication. No such written or recorded communication shall be sent by registered or certified mail or by other forms of restricted delivery.
(g) Advertisements containing fee information shall state whether the client remains responsible for the expenses of litigation and describe whether any contingent fee advertised is determined before or after the deduction of costs and expenses.
(h) If a lawyer renders legal services for which a fee has been advertised, the lawyer must render that service for no more than the advertised fee plus expenses incurred. The lawyer is bound by the advertised fees for the time limits provided for in Rule 7.2 (i) and (j), unless a different time period for the availability of such fees is provided in the advertisement itself.
(i) If a lawyer publishes fee information by means of a radio or television, or other electronic media advertisement, the lawyer shall be bound by any representation made therein for a period from the date of first broadcast to thirty (30) days after the last broadcast.
(j) If a lawyer publishes any fee information in a print media publication that is published more frequently than one time per month, the lawyer shall be bound by any representation made therein for a period of not less than thirty (30) days after such publication. If a lawyer publishes any fee information in a print media publication that is published once a month or less frequently, such lawyer shall be bound by any representation made therein until the publication of the succeeding issue. If a lawyer publishes any fee information in a print media publication which has no fixed date for publication of a succeeding issue, or if a lawyer mails an advertisement containing fee information, the lawyer shall be bound by any representation made therein for a reasonable period of time after publication or mailing but in no event less than one (1) year in the case of a print media publication, or six (6) months in the case of a mailed advertisement. If a lawyer disseminates fee information by outdoor advertising, such lawyer shall be bound by any representation made therein until the replacement or removal of such advertisement.
(k) A lawyer shall not give anything of value, either directly or indirectly, to a person for recommending the lawyer's services, except that a lawyer may
(1) pay the reasonable costs of advertising or written communication permitted by this Rule;
(2) pay the usual charges of a not-for-profit lawyer referral service or legal service organization; and
(3) pay for a law practice in accordance with Rule 1.17.
(l) A lawyer shall not compensate or give anything of value to representatives of the press, radio, television, or other communication medium in anticipation of or in return for professional publicity in a news item.

Comment
[1] To assist the public in obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. Advertising involves an active quest for clients, contrary to the tradition that a lawyer should not seek clientele. However, the public's need to know about legal services can be fulfilled in part through advertising. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. The interest in expanding public information about legal services ought to prevail over considerations of tradition. Nevertheless, advertising by lawyers entails the risk of practices that are misleading or overreaching.
[2] This Rule permits public dissemination of information concerning a lawyer's name or firm name, address and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; a lawyer's foreign language ability; names of references and, with their consent, names of clients regularly represented; and other information that might invite the attention of those seeking legal assistance. In the case of radio or television advertisements, the name of the town or city in which the lawyer's office is located is a sufficient address for the purposes of Rule 7.2 (d).
[3] Questions of effectiveness and taste in advertising are matters of speculation and subjective judgment. Some jurisdictions have had extensive prohibitions against television advertising, against advertising going beyond specified facts about a lawyer, or against "undignified" advertising. Television is now one of the most powerful media for getting information to the public, particularly persons of low and moderate income; prohibiting television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. Limiting the information that may be advertised has a similar effect and assumes that the bar can accurately forecast the kind of information that the public would regard as relevant. Similarly, electronic media, such as the Internet, can be an important source of information about legal services, and lawful communication by electronic mail is permitted by this Rule. But see Rule 7.3(a) for the prohibition against the solicitation of a prospective client through a real-time electronic exchange that is not initiated by the prospective client.
[4] Neither this Rule nor Rule 7.3 prohibits communications authorized by law, such as notice to members of a class in class action litigation.
Record of Advertising. Paragraph (b) requires that a record of the content and use of advertising be kept in order to facilitate enforcement of this Rule. It does not require that advertising be subject to review prior to dissemination. Such a requirement would be burdensome and expensive relative to its possible benefits, and may be of doubtful constitutionality.
Targeted Recipients. Direct mail solicitations sent to targeted recipients (i.e., written or recorded communications from a lawyer soliciting professional employment from a prospective client known to be in need of legal services in a particular matter) are permitted, subject to compliance with Rule 7.1 and 7.3 and additional conditions imposed in Rule 7.2. (All in-person and telephone solicitations for pecuniary gain, whether or not "targeted," are forbidden by Rule 7.3 (a) except under the circumstances described in 7.3 (b).) The conditions provided in Rule 7.2 (e) are self-explanatory and substantially track those specifically recognized as permissible in order to reduce the potential for misrepresentation or over-reaching in connection with such communications by the opinion in Shapero v. Kentucky Bar Ass'n, 486 U.S. 466, 108 S.Ct. 1916, 1923-24 (1988). The notification prescribed by Rule 7.2 (e)(2) need only appear in the letter or recording addressed to the targeted recipient and not in other materials of a general informational nature which may be included in the mailing.
Description of Material as Advertising. The requirement in Rule 7.2 (f) that certain communications include the words "This is an Advertisement" does not apply to communications sent in response to requests of potential clients or their spokespersons or sponsors. General announcements by lawyers, including changes in personnel or office location, do not constitute communications soliciting professional employment from a client within the meaning of this Rule.
Rule 7.2 (f) does not apply to radio or television advertising. However, such electronic media advertising, as well as any other type of advertising, which is presented in a format which does not make clear that it is in fact paid advertising may constitute a violation of Rule 7.1.
Fee Information. The requirement in Rule 7.2 (g) that the advertisement state whether the client is responsible for the expenses of litigation (pursuant to Rule 1.8 (e)) is needed to prevent fee advertisement from being misleading. The requirement that a contingent fee advertisement describe whether it is calculated before or after the deduction of costs and expenses applies where a particular percentage is stated.

Paying Others to Recommend a Lawyer
[5] A Lawyers are is allowed to pay for advertising permitted by this Rule and for the purchase of a law practice in accordance with the provisions of Rule 1.17, but otherwise is not permitted to pay others another person for channeling professional work. Paragraph (b)(1), however, allows a lawyer to pay for advertising and communications permitted by this Rule, including the costs of print directory listings, on-line directory listings, newspaper ads, television and radio air time, domain-name registrations, sponsorship fees, banner ads, and group advertising. A lawyer may compensate employees, agents and vendors who are engaged to provide marketing or client-development services, such as publicists, public-relations personnel, business-development staff and website designers. See Rule 5.3 for the duties of lawyers and law firms with respect to the conduct of nonlawyers who prepare marketing materials for them. This restriction does not prevent an organization or person other than the lawyer from advertising or recommending the lawyer's services. Thus, a legal aid agency or prepaid legal service plan may pay to advertise legal services provided under its auspices. Likewise a lawyer may participate in not-for-profit lawyer referral programs and pay the usual fees charged by such programs. Paragraph (k) does not prohibit paying regular compensation to an assistant, such as a secretary, to prepare communications permitted by this Rule.
[6] A lawyer may pay the usual charges of a legal service plan or a not-for-profit or qualified lawyer referral service. A legal service plan is a prepaid or group legal service plan or a similar delivery system that assists prospective clients to secure legal representation. A lawyer referral service, on the other hand, is any organization that holds itself out to the public as a lawyer referral service. Such referral services are understood by laypersons to be consumer-oriented organizations that provide unbiased referrals to lawyers with appropriate experience in the subject matter of the representation and afford other client protections, such as complaint procedures or malpractice insurance requirements. Consequently, this Rule only permits a lawyer to pay the usual charges of a not-for-profit or qualified lawyer referral service. A qualified lawyer referral service is one that is approved by an appropriate regulatory authority as affording adequate protections for prospective clients. See, e.g., the American Bar Association's Model Supreme Court Rules Governing Lawyer Referral Services and Model Lawyer Referral and Information Service Quality Assurance Act (requiring that organizations that are identified as lawyer referral services (i) permit the participation of all lawyers who are licensed and eligible to practice in the jurisdiction and who meet reasonable objective eligibility requirements as may be established by the referral service for the protection of prospective clients; (ii) require each participating lawyer to carry reasonably adequate malpractice insurance; (iii) act reasonably to assess client satisfaction and address client complaints; and (iv) do not refer prospective clients to lawyers who own, operate or are employed by the referral service.)
[7] A lawyer who accepts assignments or referrals from a legal service plan or referrals from a lawyer referral service must act reasonably to assure that the activities of the plan or service are compatible with the lawyer's professional obligations. See Rule 5.3. Legal service plans and lawyer referral services may communicate with prospective clients, but such communication must be in conformity with these Rules. Thus, advertising must not be false or misleading, as would be the case if the communications of a group advertising program or a group legal services plan would mislead prospective clients to think that it was a lawyer referral service sponsored by a state agency or bar association. Nor could the lawyer allow in-person, telephonic, or real-time contacts that would violate Rule 7.3.
[8] A lawyer also may agree to refer clients to another lawyer or a nonlawyer professional, in return for the undertaking of that person to refer clients or customers to the lawyer. Such reciprocal referral agreements must not interfere with the lawyer's professional judgment as to making referrals or as to providing substantive legal services. See Rules 2.1 and 5.4(c). Except as provided in Rule 1.5(e), a lawyer who receives referrals from a lawyer or nonlawyer professional must not pay anything solely for the referral, but the lawyer does not violate paragraph (b) of this Rule by agreeing to refer clients to the other lawyer or nonlawyer professional, so long as the reciprocal referral agreement is not exclusive and the client is informed of the referral agreement. For the purposes of Rule 7.2(b)(4), such reciprocal referral agreements do not constitute a prohibited thing of value. Conflicts of interest created by such agreements are governed by Rule 1.7. Reciprocal referral agreements should not be of indefinite duration and should be reviewed periodically to determine whether they comply with these Rules. This Rule does not restrict referrals or divisions of revenues or net income among lawyers within firms comprised of multiple entities.

Oklahoma Modification
The Oklahoma version of Rule 7.2(b)(4) adds language to the text and Comment to underscore that reciprocal referral agreements do not constitute a prohibited thing of value. The Oklahoma version retains the preexisting Oklahoma formulation extending the prohibition of Rule 7.2(b) to both direct and indirect things of value.

RULE 7.3 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
(a) A lawyer shall not by in-person, or live telephone or real-time electronic contact solicit professional employment from a prospective client under circumstances not described in Rule 7.3
(b), when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:
(1) is a lawyer, or
(2) has a family, close personal, or prior professional relationship with the lawyer.
(b) Except under the circumstances described in Rule 7.3 (c), a lawyer may solicit professional employment if the prospective client is a close friend, relative, former client if the contact pertains to the former employment, or one whom the lawyer reasonably believes to be a client.
(b) A lawyer shall not solicit professional employment from a prospective client by contact or cause to be contacted or send a written, or recorded or electronic communication or by in-person, telephone or real-time electronic contact even when not otherwise prohibited by paragraph (a), if: to a prospective client for the purpose of obtaining professional employment, even when not otherwise prohibited by these Rules, if:
(1) the prospective client has made known to the lawyer a desire not to be solicited by receive communications from the lawyer; or
(2) the solicitation communication involves coercion, duress or harassment.
(c) Every written, recorded or electronic communication from a lawyer soliciting professional employment from a prospective client known to be in need of legal services in a particular matter shall include the words "Advertising Material" on the outside of the envelope, if any, and at the beginning and ending of any recorded or electronic communication, unless the recipient of the communication is a person specified in paragraphs (a)(1) or (a)(2).
(d) Notwithstanding the prohibitions in paragraph (a), a lawyer may participate with a prepaid or group legal service plan operated by an organization not owned or directed by the lawyer that which uses in-person or telephone contact to solicit memberships or subscriptions for the plan from persons who are not known to need legal services in a particular matter covered by the plan.

Comment
[1] There is a potential for abuse inherent in direct in-person, or live telephone or real-time electronic contact by a lawyer with a prospective client known to need legal services. These forms of contact between a lawyer and a prospective client subject the layperson to the private importuning of the trained advocate in a direct interpersonal encounter. The prospective client, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately. The situation is fraught with the possibility of undue influence, intimidation, and over-reaching.
[2] This potential for abuse inherent in direct in-person, live telephone or real-time electronic solicitation of prospective clients justifies its prohibition, particularly since lawyer advertising and written and recorded communication permitted under Rule 7.2 offer alternative means of conveying necessary information to those who may be in need of legal services. Advertising and written and recorded communications which may be mailed or autodialed make it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client to direct in-person, telephone or real-time electronic persuasion that may overwhelm the client's judgment.
[3] The use of general advertising and written, and recorded or electronic communications to transmit information from lawyer to prospective client, rather than direct in-person, or live telephone or real-time electronic contact, will help to assure that the information flows cleanly as well as freely. The contents of advertisements and communications permitted under Rule 7.2 can be are permanently recorded so that they cannot be disputed and may be shared with others who know the lawyer. This potential for informal review is itself likely to help guard against statements and claims that might constitute false and misleading communications, in violation of Rule 7.1. The contents of direct in-person, or live telephone or real-time electronic conversations between a lawyer and a prospective client can be disputed and may are not be subject to third-party scrutiny. Consequently, they are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.
[4] There is far less likelihood that a lawyer would engage in abusive practices against an individual who is a former client, or with whom the lawyer has close personal or family relationship, or in situations in which with whom the lawyer has a prior personal or professional relationship or where the lawyer is motivated by considerations other than the lawyer's pecuniary gain. Nor is there a serious potential for abuse when the person contacted is a lawyer. Consequently, the general prohibition in Rule 7.3(a) and the requirements of 7.3(c) are is not applicable in those situations. Also, paragraph (a) is not intended to prohibit a lawyer from participating in constitutionally protected activities of public or charitable legal-service organizations or bona fide political, social, civic, fraternal. employee or trade organizations whose purposes include providing or recommending legal services to its members or beneficiaries.
[5] But even permitted forms of solicitation can be abused. Thus, any solicitation which contains information which is false or misleading within the meaning of Rule 7.1, which involves coercion, duress or harassment within the meaning of Rule 7.3(c)(2), or which involves contact with a prospective client who has made known to the lawyer a desire not to be solicited by the lawyer within the meaning of Rule 7.3(b)(1) is prohibited. Moreover, if after sending a letter or other communication to a prospective client as permitted by Rule 7.2 the lawyer receives no response, any further effort to communicate with the prospective client may violate the provisions of Rule 7.3(b).
[6] This Rule is not intended to prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for their members, insureds, beneficiaries or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which the lawyer or lawyer's firm is willing to offer. This form of communication is not directed to a prospective client. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under Rule 7.2.
[7] The requirement in 7.3(c) that certain communications be marked "Advertising Material" does not apply to communications sent in response to requests of potential clients or their spokespersons or sponsors. General announcements by lawyers, including changes in personnel or office location, do not constitute communications soliciting professional employment from a client known to be in need of legal services within the meaning of this Rule.
[8] Paragraph (d) of this Rule would permits a lawyer an attorney to participate with an organization which uses personal contact to solicit members for its group or prepaid legal service plan, provided that the personal contact is not undertaken by any lawyer who would be a provider of legal services through the plan. The organization referred to in paragraph (d) must not be owned by or directed (whether as manager or otherwise) by any lawyer or law firm that participates in the plan. For example, paragraph (d) would not permit a lawyer to create an organization controlled directly or indirectly by the lawyer and use the organization for the in-person or telephone solicitation of legal employment of the lawyer through memberships in the plan or otherwise. The communication permitted by these organizations also must not be directed to a person known to need legal services in a particular matter (which would make Rule 7.2(e) applicable), but is to be designed to inform potential plan members generally of another means of obtaining affordable legal services. Lawyers who participate in a legal service plan must reasonably assure that the plan sponsors are in compliance with Rules 7.1, 7.2 and 7.3(b). See 8.4(a).

RULE 7.4 COMMUNICATION OF FIELDS OF PRACTICE AND CERTIFICATION
(a) A lawyer may, by advertisement or otherwise, communicate the fact that the lawyer does or does not practice in particular fields of law or limits his practice to or concentrates in particular fields of law.
(b) A lawyer shall not state or imply that the lawyer is certified as a specialist in a particular field of law except as follows:
(1) a lawyer admitted to engage in patent practice before the United States Patent and Trademark Office may use the designation "Patent Attorney" or a substantially similar designation;
(2) a lawyer engaged in admiralty practice may use the designation "Admiralty," "Proctor in Admiralty" or a substantially similar designation; and
(3) a lawyer who is certified as a specialist in a particular field of law or law practice by the Supreme Court of the State of Oklahoma may communicate that fact, but only in accordance with the rules prescribed by that Court; and
(4) a lawyer who is certified as a specialist in a particular field of law or law practice by the official licensing authority of another state in which the lawyer is licensed may communicate that fact, but only in accordance with all rules and requirements of such state's licensing authority, and provided that the lawyer also communicates that such certification is not recognized by the Supreme Court of the State of Oklahoma.

Comment
The heading of this Rule has been modified to reflect the related issues addressed by this Rule.
[1] Paragraph (a) of this Rule deals with identifying the substantive areas in which a lawyer does or does not practice. This paragraph generally permits a lawyer to state those areas in advertising and other communications about the lawyer's services. For example, if a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted to so indicate. While this Rule contains no per se prohibition against a lawyer stating that the lawyer is a "specialist," practices a "specialty," or "specializes in" particular fields, statements to this effect (like all communications concerning a lawyer's services) are subject to the "false or misleading" standards set out in Rule 7.1. In this connection, it must be recognized that a lawyer who asserts himself or herself as a specialist is not merely identifying the fields of the lawyer's practice, but is also claiming to have a more than average level of knowledge, skill, and experience in those fields. Moreover, a lawyer's claim to specialist status may affect the standard of care or reasonableness against which the lawyer's conduct or performance is measured in civil, administrative or criminal proceedings.
[2] Paragraph (b) deals with specialty certification. The term "certification" and its variations, when used in connection with an assertion of specialist status, may be misleading because it conveys that the lawyer does not merely claim to be a specialist, but that the lawyer acquired official recognition as a specialist by means of some formal, objective process. Therefore, a lawyer may not communicate, state, suggest or imply that the lawyer has been certified as a specialist in a particular field of law unless expressly permitted by this paragraph. Subparagraph (1) permits the use of patent attorney designations because recognition of specialization in patent matters is a matter of long-established policy of the Patent and Trademark Office. Designation of admiralty practice, as permitted by subparagraph (2), likewise has long historical tradition associated with maritime commerce and the federal courts. Subparagraph (3) permits a lawyer, if certified by the Oklahoma Supreme Court as a specialist in a particular field or practice of law, to communicate that fact in such a manner as the Oklahoma Supreme Court may prescribe by rule. Subparagraph (4) permits a lawyer, if certified as a specialist in a particular field or practice of law by the official licensing authority of another state in which the lawyer is licensed, to communicate that fact in accordance with the rules and requirements of the official licensing authority of such other state. However, in order to prevent any communication made under the permission granted by subparagraph (4) from being misleading, it must also be communicated that the certification granted by the official licensing authority of the other state is not recognized by the Oklahoma Supreme Court.

RULE 7.5 FIRM NAMES AND LETTERHEAD
(a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.
(b) A law firm with offices in more than one jurisdiction may use the same name or other professional designation in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
(c) The name of a lawyer holding a public office shall not be used in the name of a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.
(d) Lawyers may shall not state or imply that they practice in a partnership or other organization only when unless that is the fact.

Comment
[1] A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm's identity or by a trade name such as the "ABC Legal Clinic." A lawyer or law firm may also be designated by a distinctive website address or comparable professional designation. Although the United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm uses a trade name that includes a geographical name such as "Springfield Legal Clinic," an express disclaimer that it is a public legal aid agency may be required to avoid a misleading implication. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm, or the name of a nonlawyer.
[2] With regard to paragraph (d), lawyers sharing office facilities, but who are not in fact associated with each other in a law firm partners, may not denominate themselves as, for example, "Smith and Jones", for that title suggests that they are practicing law together in a firm.partnership in the practice of law.

MAINTAINING THE INTEGRITY OF THE PROFESSION

RULE 8.1 BAR ADMISSION AND DISCIPLINARY MATTERS
An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

Comment
[1] The duty imposed by this Rule extends to persons seeking admission to the bar as well as to lawyers. Hence, if a person makes a material false statement in connection with an application for admission, it may be the basis for subsequent disciplinary action if the person is admitted, and in any event may be relevant in a subsequent admission application. The duty imposed by this Rule applies to a lawyer's own admission or discipline as well as that of others. Thus, it is a separate professional offense for a lawyer to knowingly make a misrepresentation or omission in connection with a disciplinary investigation of the lawyer's own conduct. Paragraph (b) of this Rule also requires correction of any prior misstatement in the matter that the applicant or lawyer may have made and affirmative clarification of any misunderstanding on the part of the admissions or disciplinary authority of which the person involved becomes aware.
[2] This Rule is subject to the provisions of the Fifth Amendment of the United States Constitution and corresponding provisions of state constitutions. A person relying on such a provision in response to a question, however, should do so openly and not use the right of nondisclosure as a justification for failure to comply with this Rule.
[3] A lawyer representing an applicant for admission to the bar, or representing a lawyer who is the subject of a disciplinary inquiry or proceeding, is governed by the rules applicable to the client-lawyer relationship, including Rule 1.6 and, in some cases, Rule 3.3.

RULE 8.2 JUDICIAL AND LEGAL OFFICIALS
(a) A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office.
(b) A lawyer who is a candidate for judicial office shall comply with the applicable provisions of the Code of Judicial Conduct.

Comment
[1] Assessments by lawyers are relied on in evaluating the professional or personal fitness of persons being considered for election or appointment to judicial office and to public legal offices, such as attorney general, prosecuting attorney and public defender. Expressing honest and candid opinions on such matters contributes to improving the administration of justice. Conversely, false statements by a lawyer can unfairly undermine public confidence in the administration of justice.
[2] When a lawyer seeks judicial office, the lawyer should be bound by applicable limitations on political activity.
[3] To maintain the fair and independent administration of justice, lawyers are encouraged to continue traditional efforts to defend judges and courts unjustly criticized.

RULE 8.3 REPORTING PROFESSIONAL MISCONDUCT
(a) A lawyer who knows having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority.
(b) A lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office shall inform the appropriate authority.
(c) This rule does not require disclosure of information otherwise protected by Rule 1.6.
(d) The provisions of Rule 8.3(a) shall not apply to lawyers who obtain such knowledge or evidence while acting as Ethics Counsel or as a member, investigator, agent, employee, or as a designee of the Oklahoma Bar Association Lawyers Helping Lawyers Committee, Judges Helping Judges, or the Oklahoma Bar Association Management Assistance Program in the course of assisting another lawyer or judge. Any such knowledge or evidence received by a lawyers acting in such capacity shall enjoy the same confidence as information protected by the attorney-client privilege under applicable rule and Rule 1.6.

Comment
[1] Self-regulation of the legal profession requires that members of the profession initiate a disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover. Reporting a violation is especially important where the victim is unlikely to discover the offense.
[2] A report about misconduct is not required where it would involve violation of Rule 1.6. However, a lawyer should encourage a client to consent to disclosure where prosecution would not substantially prejudice the client's interests.
[3] If a lawyer were obliged to report every violation of the Rules, the failure to report any violation would itself be a professional offense. Such a requirement existed in many jurisdictions but proved to be unenforceable. This Rule limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent. A measure of judgment is, therefore, required in complying with the provisions of this Rule. The term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware. A report should be made to the bar disciplinary agency unless some other agency, such as a peer review agency, is more appropriate in the circumstances. Similar considerations apply to the reporting of judicial misconduct.
[4] The duty to report professional misconduct does not apply to a lawyer retained to represent a lawyer whose professional conduct is in question. Such a situation is governed by the rules applicable to the client-lawyer relationship.
[5] Information about a lawyer's or judge's misconduct or fitness may be received by a lawyer in the course of that lawyer's participation in an approved lawyer's or judge's assistance program. In that circumstance, providing for an exception to the reporting requirements of paragraphs (a) and (b) of this Rule encourages lawyers and judges to seek treatment through such a program. Conversely, without such an exception, lawyers and judges may hesitate to seek assistance from these programs, which may then result in additional harm to their professional careers and additional injury to the welfare of the clients and the public. These Rules do not otherwise address the confidentiality of information received by a lawyer or judge participating in an approved lawyer's or judge's assistance program; such an obligation, however, may be imposed by the rules of the program or other law.

RULE 8.4 MISCONDUCT
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice;
(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law; or
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

Comment
[1] Lawyers are subject to discipline when they violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another, as when they request or instruct an agent to do so on the lawyer's behalf. Paragraph (a), however, does not prohibit a lawyer from advising a client concerning action the client is legally entitled to take.
[2] Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
[3] Deleted.
[4] A lawyer may refuse to comply with an obligation imposed by law upon good faith belief that no valid obligation exists. The provisions of Rule 1.2(d) concerning a good faith challenge to the validity, scope, meaning or application of the law apply to challenges of legal regulation of the practice of law.
[5] Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer's abuse of public office can suggest an inability to fulfill the professional role of lawyers. attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, agent and officer, director or manager of a corporation or other organization.

RULE 8.5 JURISDICTION DISCIPLINARY AUTHORITY; CHOICE OF LAW
(a) Disciplinary Authority. A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, although engaged in practice elsewhere. regardless of where the lawyer's conduct occurs. A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal service in this jurisdiction. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.
(b) Choice of Law. In any exercise of the disciplinary authority of this jurisdiction, the rules of professional conduct to be applied shall be as follows:
(1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise; and
(2) for any other conduct, the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in a different jurisdiction, the rules of that jurisdiction shall be applied to the conduct. A lawyer shall not be subject to discipline if the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect of the lawyer's conduct will occur.

Comment

Disciplinary Authority
[1] It is longstanding law that the conduct of a lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction. Extension of the disciplinary authority of this jurisdiction to other lawyers who provide or offer to provide legal services in this jurisdiction is for the protection of the citizens of this jurisdiction. Reciprocal enforcement of a jurisdiction's disciplinary findings and sanctions will further advance the purposes of this Rule. See, Rules 6 and 22, ABA Model Rules for Lawyer Disciplinary Enforcement. A lawyer who is subject to the disciplinary authority of this jurisdiction under Rule 8.5(a) appoints an official to be designated by this Court to receive service of process in this jurisdiction. The fact that the lawyer is subject to the disciplinary authority of this jurisdiction may be a factor in determining whether personal jurisdiction may be asserted over the lawyer for civil matters.

Choice of Law
[2] A lawyer may be potentially subject to more than one set of rules of professional conduct which impose different obligations. The lawyer may be licensed to practice in more than one jurisdiction with differing rules, or may be admitted to practice before a particular court with rules that differ from those of the jurisdiction or jurisdictions in which the lawyer is licensed to practice. Additionally, the lawyer's conduct may involve significant contacts with more than one jurisdiction.
[3] Paragraph (b) seeks to resolve such potential conflicts. Its premise is that minimizing conflicts between rules, as well as uncertainty about which rules are applicable, is in the best interest of both clients and the profession (as well as the bodies having authority to regulate the profession). Accordingly, it takes the approach of (i) providing that any particular conduct of a lawyer shall be subject to only one set of rules of professional conduct, (ii) making the determination of which set of rules applies to particular conduct as straightforward as possible, consistent with recognition of appropriate regulatory interests of relevant jurisdictions, and (iii) providing protection from discipline for lawyers who act reasonably in the face of uncertainty.
[4] Paragraph (b)(1) provides that as to a lawyer's conduct relating to a proceeding pending before a tribunal, the lawyer shall be subject only to the rules of the jurisdiction in which the tribunal sits unless the rules of the tribunal, including its choice of law rule, provide otherwise. As to all other conduct, including conduct in anticipation of a proceeding not yet pending before a tribunal, paragraph (b)(2) provides that a lawyer shall be subject to the rules of the jurisdiction in which the lawyer's conduct occurred, or, if the predominant effect of the conduct is in another jurisdiction, the rules of that jurisdiction shall be applied to the conduct. In the case of conduct in anticipation of a proceeding that is likely to be before a tribunal, the predominant effect of such conduct could be where the conduct occurred, where the tribunal sits or in another jurisdiction.
[5] When a lawyer's conduct involves significant contacts with more than one jurisdiction, it may not be clear whether the predominant effect of the lawyer's conduct will occur in a jurisdiction other than the one in which the conduct occurred. So long as the lawyer's conduct conforms to the rules of a jurisdiction in which the lawyer reasonably believes the predominant effect will occur, the lawyer shall not be subject to discipline under this Rule.
[6] If two admitting jurisdictions were to proceed against a lawyer for the same conduct, they should, applying this rule, identify the same governing ethics rules. They should take all appropriate steps to see that they do apply the same rule to the same conduct, and in all events should avoid proceeding against a lawyer on the basis of two inconsistent rules.
[7] The choice of law provision applies to lawyers engaged in transnational practice, unless international law, treaties or other agreements between competent regulatory authorities in the affected jurisdictions provide otherwise.
In modern practice lawyers frequently act outside the territorial limits of the jurisdiction in which they are licensed to practice, either in another state or outside the United States. In doing so, they remain subject to the governing authority of the jurisdiction in which they are licensed to practice. If their activity in another jurisdiction is substantial and continuous, it may constitute practice of law in that jurisdiction. See Rule 5.5. If the rules of professional conduct in the two jurisdictions differ, principles of conflict of laws may apply. Similar problems can arise when a lawyer is licensed to practice in more than one jurisdiction. Where the lawyer is licensed to practice law in two jurisdictions which impose conflicting obligations, applicable rules of choice of law may govern the situation. A related problem arises with respect to practice before a federal tribunal, where the general authority of the states to regulate the practice of law must be reconciled with such authority as federal tribunals may have to regulate practice before them.

Rules Governing Disciplinary Proceedings.

Chapter 1, App. 1-A

Rule 1. JURISDICTION OF THE COURT IN THE DISCIPLINE OF LAWYERS AND THE UNAUTHORIZED PRACTICE OF LAW

RULE 1.4. MONETARY TRANSACTIONS CONTROVERSIES REGARDING FEES
(a) All members of the Bar who are required under the Oklahoma Rules of Professional Conduct, Rule 1.15, to maintain a trust account for the deposit of clients' funds entrusted to said attorney, shall do so and furnish evidence thereof as hereinafter provided. The Executive Director of the Oklahoma Bar Association shall annually mail a card to each lawyer requesting the name of the bank or banks in which the lawyer carries any trust account, the name under which the account is carried and the account number. Provision will be made on the card for a response by lawyers who do not maintain a trust account and the reason for not maintaining said account. Lawyers shall have thirty days from the receipt of said inquiry to respond. Information received by the Association as a result of such inquiry shall remain confidential unless a grievance is filed against a lawyer which, in the opinion of the Professional Responsibility Commission, may warrant disciplinary action in regard to the handling of said trust account. Failure of any lawyer to respond giving the information requested will be grounds for appropriate discipline.
(b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.
(c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment.
(d) (b) Controversies as to the amount of fees shall not be considered a basis for charges in a disciplinary proceeding unless it is made to appear that the amount demanded is extortionate or fraudulent.